ROBBINS GELLER RUDMAN
   & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
   – and –
DARREN J. ROBBINS (168593)
TRAVIS E. DOWNS III (148274)
BENNY C. GOODMAN III (211302)
ERIK W. LUEDEKE (249211)
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
travisd@rgrdlaw.com
eluedeke@rgrdlaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PATRICIA M. McKENNA, Derivatively on Behalf of GOOGLE INC., | ) No. CV 11 4248 |
| | ) |
| Plaintiff, | ) VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY OF LOYALTY, ABUSE OF CONTROL, CORPORATE WASTE AND UNJUST ENRICHMENT |
| vs. | ) |
| LARRY PAGE, SERGEY BRIN, ERIC E. SCHMIDT, L. JOHN DOERR, JOHN L. HENNESSY, PAUL S. OTELLINI, K. RAM SHRIRAM, SHIRLEY M. TILGHMAN, NIKESH ARORA and PATRICK PICHETTE, | ) |
| Defendants. | ) |
| – and – | ) |
| GOOGLE INC., a Delaware corporation, | ) |
| Nominal Party. | ) DEMAND FOR JURY TRIAL |

E-filing

HRL

**OVERVIEW OF THE ACTION**

1.      In this shareholder derivative action, plaintiff seeks to recover damages and other relief for nominal party Google Inc. ("Google" or the "Company") against defendants for breach of loyalty (and candor and good faith), abuse of control, corporate waste and unjust enrichment.

2.      Defendants are members of Google's Board of Directors -- defendants Larry Page, Sergey Brin, Eric E. Schmidt, L. John Doerr, John L. Hennessy, Paul S. Otellini, K. Ram Shriram and Shirley M. Tilghman (together, the "Google Board"); and Google's top officers – defendants Nikesh Arora and Patrick Pichette (together, "defendants").

3.      Defendants breached their fiduciary duty of loyalty by failing to adopt and maintain the internal controls and policies necessary for Google to ensure compliance with the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §331(a) and (d) (Introduction into Interstate Commerce of Misbranded or Unapproved Drugs), and the Controlled Substances Act, 21 U.S.C. §952 (Importation of Controlled Substances) (together, "the Acts"). As a result, the Company has been damaged by the violations of the Acts that transpired as a result of the absence of the aforementioned internal systems and controls.

**SUMMARY OF THE ALLEGATIONS**

4.      Google is an Internet search and technology corporation based in Mountain View, California. Google offers various advertising services that permit advertisers to post their advertising message, and a link to their website, above and next to search results in response to search queries relevant to the advertiser. In turn, advertisers pay fees to the Company for each advertisement.

5.      Enacted by the U.S. Congress in 1938, the Federal Food, Drug, and Cosmetic Act gives authority to the U.S. Food and Drug Administration ("FDA") to oversee the safety of food, drugs, and cosmetics. Among other things, §331 of the Act prohibits the introduction or delivery for introduction of any drug into interstate commerce, or the causing thereof. Similarly, enacted by U.S. Congress in 1970, the Controlled Substances Act prohibits such conduct with regard to controlled substances. Compliance with these Acts is not elective, but rather mandatory. Further, compliance

1  with the Acts is a legal duty known and readily knowable by sophisticated executives of U.S.

2  companies doing business internationally.

3         6.     Although facilitating improper advertisements temporarily helped Google secure

4  millions in profits, the Company violated federal law by doing so and has now been exposed to

5  significant damages. On August 24, 2010, it was announced that Google had in fact settled with the

6  United States Department of Justice ("DOJ") and entered into a non-prosecution agreement in which

7  the Company agreed to forfeit $500 million for facilitating the placement of advertisements from

8  online Canadian pharmacies that resulted in the unlawful importation of controlled and non-

9  controlled prescription drugs into the United States. This forfeiture – $500 million – is one of the

10 largest ever in the United States, and is a massive burden for any company to shoulder, even one the

11 size of Google.

12        7.     As corporate directors and officers, defendants owe Google fiduciary duties – the

13 highest duties known to the law. These duties include a fiduciary duty of loyalty (and its subsidiary

14 duties of candor and good faith). As one court cogently explained recently, "The affairs of Delaware

15 corporations are managed by their board of directors, who owe to shareholders duties of *unremitting*

16 loyalty. This means that their actions must be taken in the good faith belief that they are in the best

17 interests of the corporation and its stockholders, especially where conflicts with the individual

18 interests of directors are concerned. . . . When those same directors communicate with shareholders,

19 they also must do so with *complete candor*. Loyalty. Good faith. Independence. Candor. These

20 are words pregnant with obligation. The Supreme Court did not adorn them with half-hearted

21 adjectives. Directors should not take a seat at the board table prepared to offer only conditional

22 loyalty, tolerable good faith, reasonable disinterest or formalistic candor." *In re Tyson Foods, Inc.,*

23 *Consolidated Shareholder Litigation*, No. 1106-CC, 2007 Del. Ch. LEXIS 120, at *10-*11 (Del. Ch.

24 Aug. 15, 2007) (emphasis in original, footnotes omitted).

25        8.     In relation to the aforementioned Acts, Google's directors and officers had a known

26 duty to act, *i.e.*, to implement and maintain internal controls and policies to prevent violations of

27 these Acts. Nevertheless, defendants failed to act, *i.e.*, did not implement and maintain such controls

28 and policies at the Company, as evidenced by the fact that Google continued to facilitate the illegal

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY OF
LOYALTY, ABUSE OF CONTROL, CORPORATE WASTE AND UNJUST ENRICHMENT          - 2 -

1  importation of prescription drugs by Canadian pharmacies until it became aware of the DOJ

2  investigation and the fact that Google recently resolved the investigation by consenting to non-

3  prosecution agreement with the DOJ under which it is required to maintain policies that forbid the

4  Company from accepting advertisements from Canadian pharmacies.

5     9.  Had the Google Board implemented and maintained the appropriate controls and

6  policies, as their fiduciary duty of loyalty required, these improper advertisements most likely would

7  not have occurred in the first place. Nor would the unlawful activity likely have continued for the

8  better part of the decade, without detection by Google executives. The Google Board's failure to act,

9  when faced with a known duty to act, breached their fiduciary duty of loyalty (and good faith) owed

10  to Google. As a result, these defendants are personally liable to Google for the damages resulting

11  from their misconduct.

12     10.  The Google Board also breached its fiduciary duty of loyalty (and candor) by making

13  false and misleading statements to Google shareholders in the Company's shareholder reports. For

14  example, Google's Annual Reports on SEC Form 10-K for 2004-2009 artificially inflated Google's

15  publicly reported financial results because they failed to disclose: (i) that a significant portion of

16  Google's reported total revenues were being derived from illegal advertising by Canadian

17  pharmacies; and (ii) that such advertising revenue was being mischaracterized on Google's books as

18  legitimate income.

19     11.  Although the facilitation of the illegal advertising increased Google's total revenues,

20  the lack of internal controls and policies ultimately damaged Google in a far greater amount. In

21  addition to including the illicit profit Google received from the Canadian pharmacies, the

22  $500 million settlement includes the revenue the pharmacies gained from their sales through Google.

23  Further still, Google has been exposed to millions in investigative costs and expenses, and will likely

24  incur additional legal and professional fees and expenses related to further implementation of

25  remedial measures designed to correct the problems arising from the Google Board's failure to

26  implement and maintain internal controls and policies sufficient for compliance with the Acts.

27     12.  Although Google has been severely injured, defendants have not fared nearly so

28  badly. During the relevant time period, defendants collectively pocketed millions in salary, fees,

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY OF
LOYALTY, ABUSE OF CONTROL, CORPORATE WASTE AND UNJUST ENRICHMENT     - 3 -

1  stock options, and other payments that were not justified in light of the violations of federal law at

2  Google that occurred during their watch.  These payments wasted valuable corporate assets and

3  unjustly enriched defendants.

4         13.  Notwithstanding the enormous damage to Google arising from the violations of

5  federal law, the Google Board has not, and will not commence suit against defendants for breach of

6  loyalty, abuse of control, corporate waste and/or unjust enrichment, let alone vigorously prosecute

7  such claims.  By this action, plaintiff seeks to vindicate Google's rights against its wayward

8  fiduciaries.

9  <center>**INTRADISTRICT ASSIGNMENT**</center>

10         14.  A substantial part of the events or omissions which give rise to the claims in this

11  action occurred in the county of Santa Clara, and as such this action is properly assigned to the San

12  Jose division of this Court.

13  <center>**JURISDICTION AND VENUE**</center>

14         15.  This Court has jurisdiction pursuant to 28 U.S.C. §1332(a)(1), because plaintiff and

15  defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive

16  of interest and costs.  This action is not a collusive action designed to confer jurisdiction on a court

17  of the United States that it would not otherwise have.

18         16.  This Court has jurisdiction over each defendant named herein because each defendant

19  is either a corporation that conducts business in and maintains operations in this District, or is an

20  individual who has sufficient minimum contacts with this District so as to render the exercise of

21  jurisdiction by the courts of this District permissible under traditional notions of fair play and

22  substantial justice.

23         17.  Venue is proper in this Court under 28 U.S.C. §1391(a) because: (i) Google maintains

24  its executive offices and principal place of business in this District; (ii) one or more of the defendants

25  either resides in or maintains offices in this District; (iii) a substantial portion of the transactions and

26  wrongs complained of herein, including the defendants' primary participation in the wrongful acts

27  detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to

28

1  Google, occurred in this District; and (iv) defendants have received substantial compensation in this

2  District by doing business here and engaging in numerous activities that had an effect in this District.

3  <div align="center">**THE PARTIES**</div>

4      18.     Plaintiff Patricia M. McKenna is a Google shareholder and has been continuously

5  since 2005.  Plaintiff is a citizen of the State of Pennsylvania.

6      19.     Nominal party Google is a Delaware corporation, with its executive offices located at

7  1600 Amphitheatre Parkway, Mountain View, CA 94043.  Google is the world's largest Internet

8  search engine that generates revenue primarily by delivering relevant, cost-effective online

9  advertising.  Google is a citizen of the State of California.

10     20.     Defendant Larry Page ("Page"), a Google founder, has been a Google director since

11 the Company's inception in September 1998. He has also served as the Company's CEO since April

12 4, 2011.  Page previously served as Google's President, Products, from 2001 to April 3, 2011, CEO

13 from 1998 to 2001, and Chief Financial Officer ("CFO") from 1998 to 2002.  As an experienced

14 business professional, Page knew or should have known that it was illegal under the Federal Food,

15 Drug and Cosmetic Act and/or the Controlled Substances Act for pharmacies outside the United

16 States to ship prescription drugs into the United States.  Nonetheless, Page failed to cause Google to

17 implement and maintain internal controls and policies for compliance with these federal mandates.

18 This breached Page's fiduciary duty of loyalty (and good faith), and exposed Google to significant

19 damages and risks of loss.  Page also breached his duty of loyalty (and candor) by falsely

20 representing to Google shareholders in the Company's 2004-2009 Annual Reports on SEC Form 10-

21 K that Google's financial results were accurately and fairly stated.  In fact, these shareholder reports

22 were false and misleading because, among other things, they failed to disclose that material amounts

23 of Google's total revenues were being derived by improperly assisting Canadian online pharmacy

24 advertisers in running advertisements that targeted the United States.  Page signed Google's false

25 and misleading 2004-2009 Annual Reports on SEC Form 10-K.  Page is a citizen of the State of

26 California.

27     21.     Defendant Sergey Brin ("Brin"), a Google founder, has been a Google director since

28 the Company's inception in September 1998.  Brin previously served as Google's President,

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY OF
LOYALTY, ABUSE OF CONTROL, CORPORATE WASTE AND UNJUST ENRICHMENT            - 5 -

1   Technology, from 2001 to April 3, 2011, and as the Company's President and Chairman from 1998

2   to 2001.  As an experienced business professional, Brin knew or should have known that it was

3   illegal under the Federal Food, Drug and Cosmetic Act and/or the Controlled Substances Act for

4   pharmacies outside the United States to ship prescription drugs into the United States.  Nonetheless,

5   Brin failed to cause Google to implement and maintain internal controls and policies for compliance

6   with these federal mandates.  This breached Brin's fiduciary duty of loyalty (and good faith), and

7   exposed Google to significant damages and risks of loss.  Brin also breached his duty of loyalty (and

8   candor) by falsely representing to Google shareholders in the Company's 2004-2009 Annual Reports

9   on SEC Form 10-K that Google's financial results were accurately and fairly stated.  In fact, these

10  shareholder reports were false and misleading because, among other things, they failed to disclose

11  that material amounts of Google's total revenues were being derived by improperly assisting

12  Canadian online pharmacy advertisers in running advertisements that targeted the United States.

13  Brin signed Google's false and misleading 2004-2007 and 2009 Annual Reports on SEC Form 10-K.

14  Brin is a citizen of the State of California.

15      22.     Defendant Eric E. Schmidt ("Schmidt") has been a Google director since 2001.  He

16  has also been the Executive Chairman of the Google Board since April 2011.  Schmidt previously

17  served as Google's CEO from 2001 to 2011, and Chairman of the Google Board from 2001 to 2004

18  and 2007 to April 2011.  Schmidt also serves or served as an executive or on the board of directors

19  of Novell and Sun Microsystems, Inc.  As an experienced business professional, Schmidt knew or

20  should have known that it was illegal under the Federal Food, Drug and Cosmetic Act and/or the

21  Controlled Substances Act for pharmacies outside the United States to ship prescription drugs into

22  the United States.  Nonetheless, Schmidt failed to cause Google to implement and maintain internal

23  controls and policies for compliance with these federal mandates.  This breached Schmidt's fiduciary

24  duty of loyalty (and good faith), and exposed Google to significant damages and risks of loss.

25  Schmidt also breached his duty of loyalty (and candor) by falsely representing to Google

26  shareholders in the Company's 2004-2009 Annual Reports on SEC Form 10-K that Google's

27  financial results were accurately and fairly stated.  In fact, these shareholder reports were false and

28  misleading because, among other things, they failed to disclose that material amounts of Google's

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY OF
LOYALTY, ABUSE OF CONTROL, CORPORATE WASTE AND UNJUST ENRICHMENT          - 6 -

1 total revenues were being derived by improperly assisting Canadian online pharmacy advertisers in

2 running advertisements that targeted the United States. Schmidt signed Google's false and

3 misleading 2004-2009 Annual Reports on SEC Form 10-K. Schmidt is a citizen of the State of

4 California.

5       23. Defendant L. John Doerr ("Doerr") has been a Google director since 1999. Doerr

6 also serves or served as an executive or on the board of directors of Amyris, Inc., Amazon.com, Inc.,

7 Move, Inc. and Sun Microsystems, Inc. As an experienced business professional, Doerr knew or

8 should have known that it was illegal under the Federal Food, Drug and Cosmetic Act and/or the

9 Controlled Substances Act for pharmacies outside the United States to ship prescription drugs into

10 the United States. Nonetheless, Doerr failed to cause Google to implement and maintain internal

11 controls and policies for compliance with these federal mandates. This breached Doerr's fiduciary

12 duty of loyalty (and good faith), and exposed Google to significant damages and risks of loss. Doerr

13 also breached his duty of loyalty (and candor) by falsely representing to Google shareholders in the

14 Company's 2004-2009 Annual Reports on SEC Form 10-K that Google's financial results were

15 accurately and fairly stated. In fact, these shareholder reports were false and misleading because,

16 among other things, they failed to disclose that material amounts of Google's total revenues were

17 being derived by improperly assisting Canadian online pharmacy advertisers in running

18 advertisements that targeted the United States. Doerr signed Google's false and misleading 2004-

19 2005 and 2007-2008 Annual Reports on SEC Form 10-K. Doerr is a citizen of the State of

20 California.

21       24. Defendant John L. Hennessy ("Hennessy") has been a Google director since 2004.

22 He has also been the Lead Independent Director of the Google Board since April 2007. Hennessy

23 also serves or served as the President of Stanford University and as an executive or on the board of

24 directors of Cisco Systems, Inc. and Atheros Communications, Inc. As an experienced business

25 professional, Hennessy knew or should have known that it was illegal under the Federal Food, Drug

26 and Cosmetic Act and/or the Controlled Substances Act for pharmacies outside the United States to

27 ship prescription drugs into the United States. Nonetheless, Hennessy failed to cause Google to

28 implement and maintain internal controls and policies for compliance with these federal mandates.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY OF
LOYALTY, ABUSE OF CONTROL, CORPORATE WASTE AND UNJUST ENRICHMENT     

1   This breached Hennessy's fiduciary duty of loyalty (and good faith), and exposed Google to

2   significant damages and risks of loss. Hennessy also breached his duty of loyalty (and candor) by

3   falsely representing to Google shareholders in the Company's 2004-2009 Annual Reports on SEC

4   Form 10-K that Google's financial results were accurately and fairly stated. In fact, these

5   shareholder reports were false and misleading because, among other things, they failed to disclose

6   that material amounts of Google's total revenues were being derived by improperly assisting

7   Canadian online pharmacy advertisers in running advertisements that targeted the United States.

8   Hennessy signed Google's false and misleading 2004-2009 Annual Reports on SEC Form 10-K.

9   Hennessy is a citizen of the state of California.

10         25.    Defendant Paul S. Otellini ("Otellini") has been a Google director since 2004.

11  Otellini also serves or served as an executive or on the board of directors of Intel Corporation. As an

12  experienced business professional, Otellini knew or should have known that it was illegal under the

13  Federal Food, Drug and Cosmetic Act and/or the Controlled Substances Act for pharmacies outside

14  the United States to ship prescription drugs into the United States. Nonetheless, Otellini failed to

15  cause Google to implement and maintain internal controls and policies for compliance with these

16  federal mandates. This breached Otellini's fiduciary duty of loyalty (and good faith), and exposed

17  Google to significant damages and risks of loss. Otellini also breached his duty of loyalty (and

18  candor) by falsely representing to Google shareholders in the Company's 2004-2009 Annual Reports

19  on SEC Form 10-K that Google's financial results were accurately and fairly stated. In fact, these

20  shareholder reports were false and misleading because, among other things, they failed to disclose

21  that material amounts of Google's total revenues were being derived by improperly assisting

22  Canadian online pharmacy advertisers in running advertisements that targeted the United States.

23  Otellini signed Google's false and misleading 2004-2009 Annual Reports on SEC Form 10-K.

24  Otellini is a citizen of the State of California.

25         26.    Defendant K. Ram Shriram ("Ram") has been a Google director since 1998. Ram

26  also is on the Stanford University board of trustees and serves or served as an executive or on the

27  board of directors of Amazon.com, Inc., Junglee Corporation and Netscape Communications

28  Corporation. As an experienced business professional, Ram knew or should have known that it was

1   illegal under the Federal Food, Drug and Cosmetic Act and/or the Controlled Substances Act for

2   pharmacies outside the United States to ship prescription drugs into the United States. Nonetheless,

3   Ram failed to cause Google to implement and maintain internal controls and policies for compliance

4   with these federal mandates. This breached Ram's fiduciary duty of loyalty (and good faith), and

5   exposed Google to significant damages and risks of loss. Ram also breached his duty of loyalty (and

6   candor) by falsely representing to Google shareholders in the Company's 2004-2009 Annual Reports

7   on SEC Form 10-K that Google's financial results were accurately and fairly stated. In fact, these

8   shareholder reports were false and misleading because, among other things, they failed to disclose

9   that material amounts of Google's total revenues were being derived by improperly assisting

10  Canadian online pharmacy advertisers in running advertisements that targeted the United States.

11  Ram signed Google's false and misleading 2004-2009 Annual Reports on SEC Form 10-K. Ram is

12  a citizen of the State of California.

13         27.    Defendant Shirley M. Tilghman ("Tilghman") has been a Google director since 2005.

14  Tilghman also serves or served as the President of Princeton University. As an experienced business

15  professional, Tilghman knew or should have known that it was illegal under the Federal Food, Drug

16  and Cosmetic Act and/or the Controlled Substances Act for pharmacies outside the United States to

17  ship prescription drugs into the United States. Nonetheless, Tilghman failed to cause Google to

18  implement and maintain internal controls and policies for compliance with these federal mandates.

19  This breached Tilghman's fiduciary duty of loyalty (and good faith), and exposed Google to

20  significant damages and risks of loss. Tilghman also breached her duty of loyalty (and candor) by

21  falsely representing to Google shareholders in the Company's 2005-2009 Annual Reports on SEC

22  Form 10-K that Google's financial results were accurately and fairly stated. In fact, these

23  shareholder reports were false and misleading because, among other things, they failed to disclose

24  that material amounts of Google's total revenues were being derived by improperly assisting

25  Canadian online pharmacy advertisers in running advertisements that targeted the United States.

26  Tilghman signed Google's false and misleading 2005-2009 Annual Reports on SEC Form 10-K.

27  Tilghman is a citizen of the State of New Jersey.

28

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY OF
LOYALTY, ABUSE OF CONTROL, CORPORATE WASTE AND UNJUST ENRICHMENT                    - 9 -

28.     Defendant Nikesh Arora ("Arora") has been Google's Senior Vice President and Chief Business Officer since January 2011. Arora previously served as Google's President, Global Sales Operations & Business Development from April 2009 to December 2010 and as President, International Operations prior to that. As an experienced business professional, Arora knew or should have known that it was illegal under the Federal Food, Drug and Cosmetic Act and/or the Controlled Substances Act for pharmacies outside the United States to ship prescription drugs into the United States. Nonetheless, Arora failed to cause Google to implement and maintain internal controls and policies for compliance with these federal mandates. This breached Arora's fiduciary duty of loyalty (and good faith), and exposed Google to significant damages and risks of loss. Arora also breached his duty of loyalty (and candor) by falsely representing to Google shareholders in the Company's 2004-2009 Annual Reports on SEC Form 10-K that Google's financial results were accurately and fairly stated. In fact, these shareholder reports were false and misleading because, among other things, they failed to disclose that material amounts of Google's total revenues were being derived by improperly assisting Canadian online pharmacy advertisers in running advertisements that targeted the United States. Arora is a citizen of the State of California.

29.     Defendant Patrick Pichette ("Pichette") has been Google's Senior Vice President and CFO since 2008. As an experienced business professional, Pichette knew or should have known that it was illegal under the Federal Food, Drug and Cosmetic Act and/or the Controlled Substances Act for pharmacies outside the United States to ship prescription drugs into the United States. Nonetheless, Pichette failed to cause Google to implement and maintain internal controls and policies for compliance with these federal mandates. This breached Pichette's fiduciary duty of loyalty (and good faith), and exposed Google to significant damages and risks of loss. Pichette also breached his duty of loyalty (and candor) by falsely representing to Google shareholders in the Company's 2008-2009 Annual Reports on SEC Form 10-K that Google's financial results were accurately and fairly stated. In fact, these shareholder reports were false and misleading because, among other things, they failed to disclose that material amounts of Google's total revenues were being derived by improperly assisting Canadian online pharmacy advertisers in running

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY OF
LOYALTY, ABUSE OF CONTROL, CORPORATE WASTE AND UNJUST ENRICHMENT          - 10 -

1 | advertisements that targeted the United States. Pichette signed Google's false and misleading 2008-

2 | 2009 Annual Reports on SEC Form 10-K. Pichette is a citizen of the State of California.

3 | ### AIDING AND ABETTING AND CONCERTED ACTION

4 |     30.    In committing the wrongful acts particularized herein, defendants have pursued or

5 | joined in the pursuit of a common course of conduct, and have acted in concert with one another in

6 | furtherance of their common plan or design. In addition to the wrongful conduct particularized

7 | herein as giving rise to primary liability, defendants further aided and abetted and/or assisted each

8 | other in breach of their respective duties.

9 |     31.    Each of the defendants aided and abetted and rendered substantial assistance in the

10 | wrongs detailed herein. In taking such actions to substantially assist the commission of the

11 | wrongdoing detailed herein, each defendant acted with knowledge of the primary wrongdoing,

12 | substantially assisted the accomplishment of that wrongdoing, and was aware of his, her, or its

13 | overall contribution to and furtherance of the wrongdoing.

14 | ### FACTUAL ALLEGATIONS

15 |     32.    Based in Mountain View, California, Google is the world's largest Internet search and

16 | technology company. Google offers various advertising services that permit advertisers, including

17 | Canadian online pharmacies, to post their advertising message and a link to their website above and

18 | next to search results in response to search queries relevant to the advertiser. The Company's largest

19 | advertising program, AdWords, displays sponsored advertisements in response to queries by the

20 | Company's search engine users. In addition, advertisers are able to geo-target their advertising

21 | campaigns, selecting the countries where the advertisements will display. In return for these

22 | services, advertisers pay fees to Google for each advertisement.

23 |     33.    Due to its status as a U.S. company, Google is subject to federal laws, including the

24 | Federal Food, Drug, and Cosmetic Act and the Controlled Substances Act, which prohibit the

25 | shipment of prescription drugs from pharmacies outside the United States to customers in the United

26 | States, or the causing thereof.

27

28

**Google's Violations of Federal Law**

34.   On August 19, 2011, Google entered into a non-prosecution agreement with the DOJ resulting from its "investigation into the Company's acceptance of advertisements placed by online pharmacy advertisers that did not comply with United States law regarding the importation and dispensation of prescription drugs." According to the Company and federal authorities, as set forth in the non-prosecution agreement, Google was aware of the illegality associated with the importation of prescription drugs into the United States.  In fact, the parties to the non-prosecution agreement agreed upon the following:

> (f)   As early as 2003, the Company was aware that in most circumstances it was illegal for pharmacies to ship controlled and non-controlled prescription drugs into the United States from Canada.  For example, in March 2003 and again in December 2008, the National Association of Boards of Pharmacy advised the Company that the importation of prescription drugs from foreign countries is illegal.

> (g)   The Company was aware that importation of prescription drugs to consumers in the United States is almost always unlawful because the United States Food and Drug Administration ("FDA") cannot ensure the safety and effectiveness of foreign prescription drugs that are not FDA-approved and because the drugs may not meet FDA's labeling requirements, may not have been manufactured, stored, and distributed under proper conditions, and may not have been dispensed pursuant to a valid prescription.  While Canada had its own regulatory regime for prescription drugs, Canadian pharmacies that ship prescription drugs to U.S. residents are not subject to Canadian regulatory authority, and many sell drugs obtained from countries other than Canada, which lack adequate pharmacy regulations.

35.   Despite defendants' knowledge of the federal mandates regulating the importation of prescription drugs, between 2003 and 2009 Google repeatedly accepted and/or assisted in optimizing advertisements placed by online Canadian pharmacy advertisers that did not comply with the Federal Food, Drug, and Cosmetic Act and the Controlled Substances Act.  As the non-prosecution agreement provides:

> (h)   As early as 2003, the Company was on notice that online Canadian pharmacies were advertising prescription drugs to the Company's users in the United States through the Company's AdWords advertising program.  Although the Company took steps to block pharmacies in countries other than Canada from advertising in the United States through AdWords, the Company continued to allow Canadian pharmacy advertisers to geo-target the United States in their AdWords advertising campaigns.  The Company knew that U.S. consumers were making online purchases of prescription drugs from these Canadian online pharmacies.  For example, in a November 18, 2003 email, a Company employee discussed the advertising budgets of several Canadian online pharmacy advertisers and noted that "[a]ll ship from Canada into the US via Express Mail." In an August 23, 2005 email, an employee in the Company's policy group stated, "the majority of Canadian

1   Pharmacies are in business to drive pharmacy traffic from the United States to
    Canada" and "target the US in their geo-targeting."

2                          *          *          *

3
        (k)    From 2003 through 2009, the Company provided customer support to
4   some of these Canadian online pharmacy advertisers to assist them in placing and
    optimizing their AdWords advertisements and improving the effectiveness of their
5   websites. For example, on or about April 23, 2004, a Google employee based in
    Canada reported in an email concerning the advertisements of a large Canadian
6   pharmacy advertiser that "the Google team is proactively adjusting creative and
    optimizing with Square Trade policy in mind." On or about June 4, 2004, the same
7   employee emailed a member of the Company's policy group and stated, "The Max
    team and [customer support] are sort of furiously working on creative to appease our
8   new policy before approvals gets to them and disapproves."

9       36.    Defendants also knew that many of their Canadian pharmacy advertisers distributed

10  prescription drugs based on an online consultation rather than a valid prescription from a treating

11  medical practitioner and that many of these pharmacies charged a premium for doing so, because

12  individuals seeking to obtain prescription drugs without a valid prescription were willing to pay

13  higher prices for the drugs.

14      37.    Google's unlawful advertising practices continued unabated until 2011. Then, on

15  May 10, 2011, in its first quarter 2011 Quarterly Report on Form 10-Q, Google revealed that it had

16  set aside $500 million for a possible resolution of a DOJ investigation. Specifically, the Company

17  provided:

18              In May 2011, in connection with a potential resolution of an investigation by
        the United States Department of Justice into the use of Google advertising by certain
19      advertisers, we accrued $500 million for the three month period ended March 31,
        2011. Although we cannot predict the ultimate outcome of this matter, we believe it
20      will not have a material adverse effect on our business, consolidated financial
        position, results of operations, or cash flows.
21
22      38.    In announcing its settlement with Google, the DOJ stated:

23      Online search engine Google Inc. has agreed to forfeit $500 million for allowing
        online Canadian pharmacies to place advertisements through its AdWords program
        targeting consumers in the United States, resulting in the unlawful importation of
24      controlled and non-controlled prescription drugs into the United States, announced
        Deputy Attorney General James M. Cole; Peter F. Neronha, U.S. Attorney for the
25      District of Rhode Island; and Kathleen Martin-Weis, Acting Director of the U.S.
        Food and Drug Administration's Office of Criminal Investigations (FDA/OCI). The
26      forfeiture, one of the largest ever in the United States, represents the gross revenue
        received by Google as a result of Canadian pharmacies advertising through Google's
27      AdWords program, plus gross revenue made by Canadian pharmacies from their
        sales to U.S. consumers.
28

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY OF
LOYALTY, ABUSE OF CONTROL, CORPORATE WASTE AND UNJUST ENRICHMENT          - 13 -

The shipment of prescription drugs from pharmacies outside the United States to customers in the United States typically violates the Federal Food, Drug and Cosmetic Act and in the case of controlled prescription drugs, the Controlled Substances Act. Google was aware as early as 2003, that generally, it was illegal for pharmacies to ship controlled and non-controlled prescription drugs into the United States from Canada.

<div align="center">*     *     *</div>

"The Department of Justice will continue to hold accountable companies who in their bid for profits violate federal law and put at risk the health and safety of American consumers," said Deputy Attorney General Cole. "This settlement ensures that Google will reform its improper advertising practices with regard to these pharmacies while paying one of the largest financial forfeiture penalties in history."

"This investigation is about the patently unsafe, unlawful, importation of prescription drugs by Canadian on-line pharmacies, with Google's knowledge and assistance, into the United States, directly to U.S. consumers," said U.S. Attorney Neronha. "It is about taking a significant step forward in limiting the ability of rogue on-line pharmacies from reaching U.S. consumers, by compelling Google to change its behavior. It is about holding Google responsible for its conduct by imposing a $500 million forfeiture, the kind of forfeiture that will not only get Google's attention, but the attention of all those who contribute to America's pill problem."

<div align="center">*     *     *</div>

In 2009, after Google became aware of the investigation by the Rhode Island U.S. Attorney's Office and the FDA/OCI Rhode Island Task Force of its advertising practices in the online pharmacy area, and as a result of that investigation, Google took a number of steps to prevent the unlawful sale of prescription drugs by online pharmacies to U.S. consumers. Among other things, Google began requiring online pharmacy advertisers to be certified by the National Association of Boards of Pharmacy's *Verified Internet Pharmacy Practices Sites* program, which conducts site visits; has a stringent standard against the issuance of prescriptions based on online consultations; and, most significantly, does not certify Canadian online pharmacies. In addition, Google retained an independent company to enhance detection of pharmacy advertisers exploiting flaws in the Google's screening systems.

Under the terms of an agreement signed by Google and the government, Google acknowledges that it improperly assisted Canadian online pharmacy advertisers to run advertisements that targeted the United States through AdWords, and the company accepts responsibility for this conduct. In addition to requiring Google to forfeit $500 million, the agreement also sets forth a number of compliance and reporting measures which must be taken by Google in order to insure that the conduct described in the agreement does not occur in the future.

39.     Thereafter, on August 23, 2011, Google paid $500 million to federal authorities to resolve the DOJ's probe into Google's advertising practices. Due to defendants' fiduciary failures, Google has been severely damaged. Accordingly, Google is entitled to damages.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY OF LOYALTY, ABUSE OF CONTROL, CORPORATE WASTE AND UNJUST ENRICHMENT          - 14 -

**Defendants' Breach of Loyalty**
**(and Candor and Good Faith)**

40.    As the directors and officers of Google, defendants owed Google a fiduciary duty to implement and maintain internal controls and policies to ensure compliance with the Federal Food, Drug, and Cosmetic Act and the Controlled Substances Act.  This is because compliance with the statutes, laws, rules and regulations applicable to Google's business and affairs was not an option for the Google Board.  Instead, they were duty bound to implement and maintain the internal controls and policies that Google needed to discharge its legal obligations under federal law.

41.    Moreover, defendants were fully aware that the advertising done by Canadian pharmacies on AdWords triggered compliance obligations under the Acts.  Defendants knew this because they are, for the most part, seasoned business professionals with extensive experience overseeing the business and affairs of U.S. companies.   In addition, as the non-prosecution agreement makes clear, the Company was aware as early as 2003 that the importation of prescription drugs to consumers in the United States is almost always illegal; that Canadian pharmacies were advertising prescription drugs to the Company's users in the United States; and that many of these Canadian pharmacies distributed prescription drugs to consumers without a prescription and at a premium.

42.    Thus, defendants knew that, pursuant to federal mandates, they faced a known duty to act, *i.e.*, to implement and maintain internal controls and policies to ensure compliance with federal law.  However, defendants did not proactively manage Google's risk and/or compliance associated with the importation of prescription drugs.  As a result, Google has been severely injured by the violations of the Federal Food, Drug, and Cosmetic Act and the Controlled Substances Act that arose in the absence of the aforementioned internal systems and policies.  To date, Google has incurred more than $500 million in damages due to defendants' fiduciary failures.

43.    Defendants' failure to implement and maintain the required internal controls and policies is not in serious doubt either.  First, the government and Google entered into a non-prosecution agreement under which Google acknowledged that it improperly assisted Canadian online pharmacy advertisers in running advertisements that geo-targeted the United Stated through

1  AdWords and accepted responsibility for the Company's conduct. Moreover, "Company policy now

2  forbids accepting advertisements from pharmacies located in Canada, or elsewhere outside the

3  United States, to run in the United States on AdWords." These admissions and remediation

4  measures would not have existed if, after investigating, federal authorities had found evidence

5  showing that Google had, in fact, adopted internal controls and policies needed to prevent violations

6  of federal law. Taken together, they present *prima facie* evidence that defendants did not implement

7  the required controls and policies at Google during the time period involved in this case.

8  Alternatively, these facts support an inference that such internal controls and policies for compliance

9  did not exist at Google during the Google Board's watch.

10       44.    Corporate directors may be held personally liable to the corporation for damages

11  arising from their failure to timely act when faced with a known duty to act, such as the

12  corporation's obligation to comply with the statutes, laws, rules and regulations applicable to its

13  business and affairs. The duty to implement internal systems and policies for compliance with the

14  Federal Food, Drug, and Cosmetic Act and the Controlled Substances Act fell squarely upon the

15  Google Board; yet, they failed to act. Accordingly, defendants breached their duty of loyalty to

16  Google and are liable for the resulting damages.

17  **Defendants' False and Misleading**
   **Statements to Shareholders**

18

19       45.    During the course of Google's long-standing scheme to generate revenue by allowing,

20  and assisting, its advertisers to violate federal laws related to the importation and dispensation of

21  prescription drugs, defendants issued a number of reports to Google shareholders regarding the

22  status of the Company's business and financial condition. For example, between 2003 and 2009,

23  Google filed Annual Reports on SEC Form 10-K, reporting, among other things, the Company's

24  financial results for the then-current fiscal year and updating the status of the Company's business

25  and operations. These reports were signed by defendants, as indicated below, and consistently

26  represented that the Form 10-Ks fairly and accurately presented the Company's business and

27  financial condition. In fact, the 2004-2009 Form 10-K reports were false and misleading when

28  issued, because defendants failed to disclose that Google had derived significant revenues and profits

1   (ultimately estimated to be $500 million when combined with proceeds Canadian online pharmacies

2   generated from advertising through Google's AdWords program) resulting from improper

3   advertising by Canadian pharmacies  Nor did the Form 10-Ks disclose that such advertising revenue

4   was being mischaracterized on Google's books as legitimate income.  The dates and authors of each

5   of the specific false and misleading annual reports on SEC Form 10-K follow below:

6        •   2004 Form 10-K filed with the SEC on March 30, 2005, and authored by defendants
             Page, Brin, Schmidt, Doerr, Hennessy, Otellini, and Ram;
7
         •   2005 Form 10-K filed with the SEC on March 16, 2006, and authored by defendants
8            Page, Brin, Schmidt, Doerr, Hennessy, Otellini, Ram and Tilghman;

9        •   2006 Form 10-K filed with the SEC on March 1, 2007, and authored by defendants
             Page, Brin, Schmidt, Hennessy, Otellini, Ram and Tilghman;
10
         •   2007 Form 10-K filed with the SEC on February 15, 2008, and authored by
11           defendants Page, Brin, Schmidt, Doerr, Hennessy, Otellini, Ram and Tilghman;

12       •   2008 Form 10-K filed with the SEC on February 13, 2009, and authored by
             defendants Page, Schmidt, Doerr, Hennessy, Otellini, Ram, Tilghman and Pichette;
13           and

14       •   2009 Form 10-K filed with the SEC on February 12, 2010, and authored by
             defendants Page, Brin, Schmidt, Hennessy, Otellini, Ram, Tilghman and Pichette.
15
         46.    Defendants also caused Google to issue false and misleading proxy statements to
16
    Google shareholders.  In each of the proxy statements, defendants described, among other things, the
17
    compensation being paid to Google's directors and top officers, as well as provided information in
18
    support of the election or re-election of certain defendants to the Google Board.  The 2005-2009
19
    proxy statements were false and misleading when issued to Google shareholders.  This is because the
20
    proxy statements systematically failed to disclose the existence of the long-standing scheme to
21
    generate revenue by allowing, and assisting, Google advertisers to violate federal laws related to the
22
    importation and dispensation of prescription drugs and/or the false reporting of the Company's
23
    revenues and expenses as a result of the improper revenue Google was generating as a result.  The
24
    specific false and misleading proxy statements are identified by date below:
25
         •   2005 Proxy Statement, filed with the SEC on April 8, 2005;
26
         •   2006 Proxy Statement, filed with the SEC on March 31, 2006;
27
         •   2007 Proxy Statement, filed with the SEC on April 4, 2007;
28

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY OF
LOYALTY, ABUSE OF CONTROL, CORPORATE WASTE AND UNJUST ENRICHMENT          - 17 -

1      • 2008 Proxy Statement, filed with the SEC on March 25, 2008; and

2      • 2009 Proxy Statement, filed with the SEC on March 24, 2009.

3                                **DAMAGE TO GOOGLE**

4      47.   Google has been, and will continue to be, severely damaged and injured by

5   defendants' misconduct. Further, as a direct and proximate result of defendants' breach of loyalty,

6   Google has expended and will continue to expend significant sums of money. These expenditures

7   include, but are not limited to: (i) costs incurred from the investigations into the Company's

8   acceptance of advertisements placed by online pharmacy advertisers that violated federal law;

9   (ii) costs incurred from the compensation and benefits paid to the defendants that breached their

10  fiduciary duties to the Company; (iii) the fines, penalties and disgorgement resulting from the

11  Company's violations of the federal law; and (iv) the cost of implementing the settlements with the

12  DOJ.

13     48.   In addition, Google's business, goodwill, and reputation with its business partners,

14  regulators, and shareholders have been gravely impaired. Moreover, these actions have irreparably

15  damaged Google's corporate image and goodwill. For at least the foreseeable future, Google will

16  suffer from what is known as the "liar's discount," a term applied to the stocks of companies who

17  have been implicated in improper behavior and have misled the investing public, such that Google's

18  ability to raise equity capital or debt on favorable terms in the future is now impaired.

19     49.   Nevertheless, the Google Board has taken no action against the directors and officers

20  responsible for the damage and injury to the Company, including themselves. By this action,

21  plaintiff seeks redress for and vindication of Google's rights against its wayward fiduciaries.

22           **DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS**

23     50.   Plaintiff incorporates ¶¶1-49.

24     51.   Pursuant to Rule 23.1 of the Federal Rules of Civil Procedures, plaintiff brings this

25  action for the benefit of Google to redress injuries suffered, and to be suffered, by Google as a result

26  of the defendants' breaches of fiduciary duty, abuse of control, corporate waste and unjust

27  enrichment. Google is named as a nominal party in this action.

28

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY OF
LOYALTY, ABUSE OF CONTROL, CORPORATE WASTE AND UNJUST ENRICHMENT          - 18 -

52.     Plaintiff will adequately and fairly represent the interests of Google in enforcing and prosecuting its rights.

53.     A pre-suit demand on the Google Board to commence this action is excused as a useless and futile act for several reasons.  First, a pre-suit demand is excused because defendants ignored, consciously disregarded and/or were reckless in failing to establish and maintain internal controls and policies at Google that complied with the requirements of the federal law.   On defendants' watch, a long-standing scheme, involving millions of dollars in improper revenue generated from advertising done in violation of federal law, occurred.  This scheme could not have succeeded and endured for as long as it did had the Google Board caused internal controls and policies to be adopted.  As a result of the Google Board's failure to act, when faced with a known duty to act, *i.e.*, Google's compliance with the legal requirements of federal laws related to the importation of prescription drugs, the members of the Google Board breached their fiduciary duty of loyalty owed to Google.  As a result, under the circumstances of the case, the Google Board faces a substantial likelihood of liability for breach of loyalty.  Therefore, a pre-suit demand on the Google Board is excused as futile.

54.     A presuit demand upon the Google Board is also excused because the entire Google Board breached its fiduciary duty of loyalty (and candor) by making false and misleading statements in Google's shareholder reports.  In particular, Google's Annual Reports on SEC Form 10-K for 2004-2009 were false and misleading when issued, because they did not disclose: (i) that a significant portion of Google's reported total revenues were being derived from illegal advertising by Canadian pharmacies; and (ii) that such advertising revenue was being mischaracterized on Google's books as legitimate income.

55.     Moreover, a majority of the Google Board issued false and misleading proxy statements to Google shareholders between 2005 and 2009.  These proxy statements failed to disclose that the Google Board had not implemented internal controls for Google's compliance with the federal laws related to the importation of prescription drugs. These false and misleading proxy statements breached the Google Board's fiduciary duty of loyalty (and candor).  Accordingly, a presuit demand upon the Google Board is excused on this basis as well.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY OF
LOYALTY, ABUSE OF CONTROL, CORPORATE WASTE AND UNJUST ENRICHMENT              - 19 -

## COUNT I

### Against All Defendants for Breach of Fiduciary Duty of Loyalty
### (and Candor and Good Faith)

56. Plaintiff incorporates ¶¶1-55.

57. Defendants owed Google and its shareholders a fiduciary duty of loyalty (and candor and good faith). Under this duty, defendants, when faced with a known duty to act, here Google's legal duty to comply with the federal laws related to the importation of prescription drugs, were duty bound to proactively implement internal controls and policies designed to ensure Google's compliance with these laws.

58. However, defendants failed to implement and maintain the aforementioned systems and controls.

59. As a result of defendants' disloyalty, Google has been injured. Accordingly, Google is entitled to damages.

## COUNT II

### Against All Defendants for Abuse of Control

60. Plaintiff incorporates ¶¶1-59.

61. Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Google, for which they are legally responsible.

62. As a direct and proximate result of defendants' abuse of control, Google has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, defendants are liable to the Company.

## COUNT III

### Against All Defendants for Corporate Waste

63. Plaintiff incorporates ¶¶1-62.

64. As a result of the foregoing misconduct, defendants have caused Google to waste valuable corporate assets.

1       65.    As a direct and proximate result of defendants' corporate waste, Google has sustained

2  and continues to sustain significant damages.   As a result of the misconduct alleged herein,

3  defendants are liable to the Company.

### COUNT IV

### Against All Defendants for Unjust Enrichment

6       66.    Plaintiffs incorporate ¶¶1-65.

7       67.    By their wrongful acts and omissions, defendants were unjustly enriched at the

8  expense of and to the detriment of Google.  Defendants were unjustly enriched as a result of the

9  salary, fees, stock options and other payments they received while breaching their fiduciary duty

10  owed to Google.

11      68.    Plaintiffs, as shareholders of Google, seek restitution from defendants, and each of

12  them, and seek an order of this Court disgorging all profits, benefits, and other improper payments

13  obtained by defendants, and each of them, from their wrongful conduct and fiduciary breaches.

14      69.    As a result of defendants' unjust enrichment, Google has been injured and is entitled

15  to damages.

### PRAYER FOR RELIEF

17      WHEREFORE, plaintiff demands judgment in the Company's favor against all defendants as

18  follows:

19      A.    Declaring that plaintiff may maintain this action on behalf of Google and that plaintiff

20  is an adequate representative of the Company;

21      B.    Declaring that the defendants have breached and/or aided and abetted the breach of

22  their fiduciary duties to Google;

23      C.    Determining and awarding to Google the damages sustained by it as a result of the

24  violations set forth above from each of the defendants, jointly and severally, together with interest

25  thereon;

26      D.    Determining and awarding to Google exemplary damages in an amount necessary to

27  punish defendants and to make an example of defendants to the community according to proof at

28  trial;

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY OF
LOYALTY, ABUSE OF CONTROL, CORPORATE WASTE AND UNJUST ENRICHMENT      - 21 -

1    E.    Awarding Google restitution from defendants, and each of them;

2    F.    Awarding plaintiff the costs and disbursements of this action, including reasonable

3    attorneys' and experts' fees, costs and expenses; and

4    G.    Granting such other and further equitable relief as this Court may deem just and

5    proper.

6                          **JURY DEMAND**

7          Plaintiff demands a trial by jury.

8    DATED: August 29, 2011          ROBBINS GELLER RUDMAN
                                        & DOWD LLP
9                                    SHAWN A. WILLIAMS

10

11                                   _____
                                        SHAWN A. WILLIAMS

12
                                     Post Montgomery Center
13                                   One Montgomery Street, Suite 1800
                                     San Francisco, CA  94104
14                                   Telephone:  415/288-4545
                                     415/288-4534 (fax)
15
                                     ROBBINS GELLER RUDMAN
16                                      & DOWD LLP
                                     DARREN J. ROBBINS
17                                   TRAVIS E. DOWNS III
                                     BENNY C. GOODMAN III
18                                   ERIK W. LUEDEKE
                                     655 West Broadway, Suite 1900
19                                   San Diego, CA  92101-3301
                                     Telephone:  619/231-1058
20                                   619/231-7423 (fax)

21                                   Attorneys for Plaintiff

22   S:\CptDraft\Derivative\Cpt Google.doc

23

24

25

26

27

28

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY OF
LOYALTY, ABUSE OF CONTROL, CORPORATE WASTE AND UNJUST ENRICHMENT            - 22 -

## VERIFICATION

I, Patricia H. McKenna, hereby declare as follows:

I am a shareholder of Google Inc.   I was a shareholder at the time of the wrongdoing complained of and I remain a shareholder.   I have retained competent counsel and I am ready, willing and able to pursue this action vigorously on behalf of Google Inc.   I have reviewed the Verified Shareholder Derivative Complaint.   Based upon discussions with and reliance upon my counsel, and as to those facts of which I have personal knowledge, the Complaint is true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: August 27, 2011

_Patricia H McKenna_
Patricia H. McKenna

I:\ELuedeke\DERIVATIVES\GOOGLE\Verification - Google - Draft 1.doc