1  BORIS FELDMAN, State Bar No. 128838
   Email: boris.feldman@wsgr.com
2  ELIZABETH C. PETERSON, State Bar No. 194561
   Email: epeterson@wsgr.com
3  CHERYL W. FOUNG, State Bar No. 108868
   Email: cfoung@wsgr.com
4  DIANE M. WALTERS, State Bar No. 148136
   Email: dwalters@wsgr.com
5  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
6  650 Page Mill Road
   Palo Alto, CA 94304-1050
7  Telephone: (650) 493-9300
   Facsimile: (650) 565-5100
8
   Attorneys for Defendants
9  Larry Page, Sergey Brin,
   Eric E. Schmidt, L. John Doerr, John L.
10 Hennessy, Paul S. Otellini, K. Ram Shriram,
   Shirley M. Tilghman,
11 and Nominal Party Google Inc.

12

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15                          OAKLAND DIVISION

16

17  In re GOOGLE INC. SHAREHOLDER        )   Master File No. CV-11-04248-PJH
    DERIVATIVE LITIGATION                )
18                                       )   DEFENDANTS' REPLY RE: MOTION
                                         )   TO DISMISS AMENDED VERIFIED
19  This Document Relates To:            )   CONSOLIDATED SHAREHOLDER
                                         )   DERIVATIVE COMPLAINT
20  ALL ACTIONS                          )
                                         )   DATE:
21                                       )   TIME:        .
                                         )   JUDGE:   Hon. Phyllis J. Hamilton
22                                       )
                                         )
23                                       )
                                         )
24  _____)

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...............................................................................................................1

ARGUMENT .....................................................................................................................2

I.     PLAINTIFFS FAIL TO SATISFY THE OWNERSHIP REQUIREMENTS OF RULE 23.1 .............................................................................................................2

II.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE DEMAND IS NOT EXCUSED ....................................................................................................5

A.    The Complaint Fails to Raise a Reasonable Doubt that Any Director Is Disinterested ..................................................................................................5

    1.    Plaintiffs' Persistent Lack of Particularity Fails to Meet the Order's Requirements ...............................................................................................5

    2.    Plaintiffs Concede that They No Longer Allege that the Outside Directors Are Interested or Approved Third Party Verification Providers ...............6

    3.    Plaintiffs Do Not Adequately Plead that Any Inside Director Faces a Substantial Likelihood of Liability ....................................................6

        Plaintiffs Fail to Address Their Mischaracterization of Mr. Schmidt's Senate Testimony ..............................................................6

        The Opposition Repeats Allegations About Mr. Page That The Court Explicitly Rejected ................................................................8

B.    The Complaint Fails to Raise a Reasonable Doubt that Any Director is Independent ......10

    1.    Under Delaware Law, Without an Interested Director, the Independence of Remaining Directors Is Irrelevant................................................11

    2.    The Burden Was Incorrectly Shifted to the Four Outside Directors to Prove Their Independence ..........................................................12

    3.    The Inside Directors Are Not Dependent on One Another.......................14

    4.    The Law of the Case Doctrine Is Inapplicable .........................................15

III.    THE COMPLAINT FAILS TO STATE A CLAIM ............................................16

        No Claim for Breach of Fiduciary Duty .....................................................17

        No Claim for Waste ......................................................................................18

        No Claim for Unjust Enrichment ................................................................19

CONCLUSION .................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aronson v. Lewis*,
  473 A.2d 805 (Del. 1984), *overruled on other grounds by Brehm v.
  Eisner*, 746 A.2d 244 (Del. 2000) ................................................................ 12, 14

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*,
  845 A.2d 1040 (Del. 2004)..................................................................2, 12, 15

*Benefore v. Cha*,
  C.A. No. 14614, 1998 Del. Ch. LEXIS 28 (Del. Ch. Feb. 20, 1998) ................... 12

*Braddock v. Zimmerman*,
  906 A.2d 776 (Del. 2006)............................................................................... 2

*Brehm v. Eisner*,
  746 A.2d 244 (Del. 2000) .......................................................................11, 12

*Cadle v. Hicks*,
  272 F. App'x 676 (10th Cir. 2008)................................................................... 4

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
  254 F.3d 882 (9th Cir. 2001) ....................................................................... 15

*Desimone v. Barrows*,
  924 A.2d 908 (Del. Ch. 2007) ....................................................................... 4

*DiLorenzo v. Norton*,
  No. 07-144 (RJL), 2009 WL 2381327 (D.D.C. July 31, 2009) ............................. 4

*Dupris v. McDonald*,
  No. 08-8132-PCT-PGR, 2011 WL 2533696 (D. Ariz. June 27,
  2011) ...................................................................................................... 15

*Fosbre v. Matthews*,
  No. 09-cv-0467-ECR, 2010 WL 2696615 (D. Nev. July 2, 2010),
  *aff'd sub nom. Israni v. Bittman*, No. 10-16726, 2012 WL 1074266
  (9th Cir. Apr. 2, 2012) ............................................................................... 12

*Gonzalez v. State of Ariz.*,
  677 F.3d 383 (9th Cir. 2012) *(en banc)* ........................................................ 16

*Goodrich & Pennington Mortg. Fund, Inc. v. Chase Home Fin., LLC*,
  No. 05cv636 JLS, 2008 WL 698464 (S.D. Cal. Mar. 14, 2008)....................... 15, 16

*Guttman v. Huang*,
  823 A.2d 492 (Del. Ch. 2003) ....................................................................... 11

*Hiraide v. Vast Sys. Tech. Corp.*,
  No. C-08-04714 RMW, 2009 WL 2390352
  (N.D. Cal. Aug. 3, 2009) ............................................................................. 17

*In re Abbott Labs. Deriv. S'holders Litig.*,
   325 F.3d 795 (7th Cir. 2003) ..................................................................9, 10

*In re Accuray, Inc. S'holder Deriv. Litig.*,
   757 F. Supp. 2d 919 (N.D. Cal. 2010) ........................................4, 17, 19

*In re Autodesk, Inc., S'holder Deriv. Litig.*,
   No. C-06-7185-PJH, 2008 WL 5234264 (N.D. Cal. Dec. 15, 2008) ...................... 14

*In re Bank of New York Deriv. Litig.*,
   320 F.3d 291 (2d Cir. 2003) ................................................................. 4

*In re Countrywide Fin. Corp. Deriv. Litig.*,
   554 F. Supp. 2d 1044 (C.D. Cal. 2008) ................................................. 15

*In re Cray Inc. Deriv. Litig.*,
   431 F. Supp. 2d 1114 (W.D. Wash. 2006) .........................................17, 19

*In re The Dow Chem. Co. Deriv. Litig.*,
   No. 4349-CC, 2010 WL 66769 (Del. Ch. Jan. 11, 2010) .........................11, 12

*In re Fed. Nat'l Mortg. Ass'n Sec., Deriv. & ERISA Litig.*,
   503 F. Supp. 2d 9 (D.D.C. 2007), *aff'd sub nom. Pirelli Armstrong
   Tire Corp. Retiree Med. Benefits Trust ex rel. Fed. Nat'l Mortg.
   Ass'n v. Raines*, 534 F.3d 779 (D.C. Cir. 2008) .................................13, 14

*In re Goldman Sachs Grp. Inc., S'holder Litig.*,
   No. 5215-VCG, 2011 WL 4826104 (Del. Ch. Oct. 12, 2011) ........................... 13

*In re Intel Corp. Deriv. Litig.*,
   621 F. Supp. 2d 165 (D. Del. 2009) ...................................................... 10

*In re ITT Corp. Deriv. Litig.*,
   588 F. Supp. 2d 502 (S.D.N.Y. 2008) ..................................................5, 8

*In re J.P. Morgan Chase & Co. S'holder Litig.*,
   906 A.2d 808 (Del. Ch. 2005), *aff'd*, 906 A.2d 766 (Del. 2006) ................. 13

*In re Massey Energy Co. Deriv. & Class Action Litig.*,
   C.A. No. 5430-VCS, 2011 WL 2176479 (Del. Ch. May 31, 2011) ...................... 18

*In re Oracle Corp. Deriv. Litig.*,
   No. C10-3392 RS, 2011 WL 5444262 (N.D. Cal. Nov. 9, 2011) .................10, 11

*In re Pfizer Inc. S'holder Deriv. Litig.*,
   722 F. Supp. 2d 453 (S.D.N.Y. 2010) ...............................................8, 9, 10

*In re SFBC Int'l, Inc. Sec. & Deriv. Litig.*,
   495 F. Supp. 2d 477 (D.N.J. 2007) ...................................................... 10

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) ..........................................................12, 14

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV
   Television Litig.*,
   758 F. Supp. 2d 1077 (S.D. Cal. 2010) ..............................................15, 16

*In re Stac Elecs. Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996) ................................................................................... 7

*In re Syntex Corp. Sec. Litig.*,
    95 F.3d 922 (9th Cir. 1996) ..................................................................................... 7

*In re Taser Int'l S'holder Deriv. Litig.*,
    No. CV-05-123-PHX-SRB, 2006 WL 687033
    (D. Ariz. Mar. 17, 2006) ........................................................................................ 10

*In re Veeco Instruments, Inc. Sec. Litig.*,
    434 F. Supp. 2d 267 (S.D.N.Y. 2006) .................................................................. 10

*In re VeriSign, Inc. Deriv. Litig.*,
    531 F. Supp. 2d 1173 (N.D. Cal. 2007) ............................................................... 17

*In re VISX, Inc. Sec. Litig.*,
    No. C-00-0649-CRB, 2001 WL 210481 (N.D. Cal. Feb. 27, 2001),
    *aff'd*, 298 F.3d 893 (9th Cir. 2002) ........................................................................ 7

*In re Zoran Corp. Deriv. Litig.*,
    511 F. Supp. 2d 986 (N.D. Cal. 2007) .................................................................... 4

*Jacobs v. Yang*,
    No. 206-N, 2004 WL 1728521 (Del. Ch. Aug. 2, 2004), *aff'd mem.*,
    867 A.2d 902 (Del. 2005) ...................................................................................... 14

*Jones ex rel. CSK Auto Corp. v. Jenkins*,
    503 F. Supp. 2d 1325 (D. Ariz. 2007) .................................................................. 14

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ............................................................................... 17

*King v. Baldino*,
    648 F. Supp. 2d 609 (D. Del. 2009), *aff'd*, 409 F. App'x 535
    (3d Cir. 2010) ......................................................................................................... 12

*Levitt v. Yelp! Inc.*,
    No. C-10-1321 EMC, 2011 WL 5079526 (N.D. Cal. Oct. 26, 2011) ................... 16

*Lynch v. Rawls*,
    429 F. App'x 641 (9th Cir. 2011) ............................................................................ 7

*McCall v. Scott*,
    239 F.3d 808 (6th Cir.), *amended*, 250 F.3d 997 (6th Cir. 2001) ........................ 10

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ................................................................................. 7

*Nach v. Baldwin*,
    No. C 07-0740-SI, 2008 WL 410261 (N.D. Cal. Feb. 12, 2008) ......................... 12

*Phillips v. New Century Fin. Corp.*,
    No. SACV050692DOCRNBX, 2006 WL 517653 (C.D. Cal. Mar. 1,
    2006) ....................................................................................................................... 15

*Potter v. Hughes*,
    546 F.3d 1051 (9th Cir. 2008) ..................................................................5

*Rales v. Blasband*,
    634 A.2d 927 (Del. 1993) ...............................................................11, 12

*Reyes v. Rodriguez*,
    No. 1:07-cv-00547-LJO, 2010 WL 3463946 (E.D. Cal. Sept. 1,
    2010) ........................................................................................................7

*Rocky Mountain Farmers Union v. Goldstene*,
    843 F. Supp. 2d 1042 (E.D. Cal. 2011) ...............................................15

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ..................................................................7

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998) ................................................................7

*Vess v. Ciba-Geigy Corp. USA.*,
    317 F.3d 1097 (9th Cir. 2003) ..............................................................17

**RULES**

Fed. R. Civ. P. Civ. P. 9(b) .............................................................................17

Fed. R. Civ. P. 23.1 .....................................................................................2, 3

**INTRODUCTION**

Defendants' Opening Brief showed that the Amended Complaint fails to address the deficiencies that the Court outlined in its May 8, 2012 dismissal Order. The Opposition Brief repeatedly ignores defendants' numerous examples of material pleading defects, as well as defendants' arguments. Defective assumptions and allegations do not provide a basis for the Court to hold that plaintiffs have demonstrated that demand on Google's Board should be excused or that plaintiffs have stated claims against any of the defendants.

Plaintiffs, concededly, abandoned their theory that the five outside director defendants face a substantial likelihood of liability. Plaintiffs therefore must show that one or more inside directors (Messrs. Page, Brin, or Schmidt) is interested. The Opposition, however, simply repeats the same allegations against Mr. Page that the Court explicitly rejected, making manifest that plaintiffs have nothing new. The Opposition does not even attempt to plead specific allegations against Mr. Brin.

With respect to the primary new factual allegation concerning Mr. Schmidt's Senate testimony, plaintiffs fail to address the fact that they excluded the complete Senate report from their Complaint, which report contains statements and clarifications that belie plaintiffs' characterization of Mr. Schmidt's testimony. Plaintiffs also ignore that Mr. Schmidt never stated that he knew of illegal advertising practices, and never even mentioned Mr. Page or Mr. Brin, or indeed any of the defendants to this action. Nevertheless, the Opposition parrots the same conclusory assumption that Mr. Schmidt, and the other defendants, knew of an "illegal ad strategy" at Google. The Court may neither ignore the contradictions of plaintiffs' theory, nor indulge in unwarranted inferences about Mr. Schmidt and the other inside directors. Yet that is precisely what plaintiffs, again, ask the Court to do.

Because plaintiffs have failed to plead that any director faces a substantial likelihood of liability, any director's "independence" is irrelevant. The Delaware courts have repeatedly so held, as have courts within this District. Even if the Court does consider the independence of the outside directors, the only conclusion is that plaintiffs have not overcome the presumption that Google's directors are independent. Plaintiffs have never pleaded a single fact to show that contributions to Stanford and Princeton were material. Public records establish that they were not, and plaintiffs do

not dispute those facts.  Similarly, plaintiffs have never pleaded a single fact to show that Google's investments with Kleiner Perkins were material to Mr. Doerr.  Because plaintiffs have not established that demand is excused as to five directors,[1] the Complaint must be dismissed.

Finally, the Complaint's failure to differentiate the directors, to describe their conduct on a director-by-director basis, and to show misconduct also precludes plaintiffs from stating claims against the defendants.  For these reasons, the Complaint should be dismissed in its entirety, with prejudice.

## ARGUMENT

### I.  PLAINTIFFS FAIL TO SATISFY THE OWNERSHIP REQUIREMENTS OF RULE 23.1

The Complaint alleges misconduct that purportedly commenced in 2003.  *See, e.g.*, AC ¶37 ("As early as 2003, Google knew about the risks of sponsoring ads by pharmacies outside the United States, yet it refused to take any precautions to prevent liability for the ads and in fact consciously chose to permit ads from Canadian pharmacies.").[2]  The first purchase of Google shares by one of the plaintiffs, however, is not alleged to have taken place until May 18, 2005.  ¶19.  Because plaintiffs have not alleged – and cannot allege – that any of the plaintiffs owned Google stock "at the time of the transaction complained of," the Complaint should be dismissed for failure to comply with the share ownership requirements of Rule 23.1.  Fed. R. Civ. P. 23.1(b)(1); Defendants' Opening Brief ("DOB") at 5-6.

Apparently recognizing that neither the allegations in the Complaint nor the plaintiffs'

---

[1] Google's Board grew from nine directors to ten after the Consolidated Complaint and before the Amended Complaint ("AC").  Plaintiffs must still demonstrate demand excusal as to five directors.  *See Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1046 n.8 (Del. 2004) (a majority of an even-numbered board of ten directors for demand futility is five directors); *Braddock v. Zimmerman*, 906 A.2d 776, 786 (Del. 2006) (where complaint is amended with leave following dismissal, demand futility is measured against the board in existence at the time the amended complaint is filed).

[2] *See also e.g.*, ¶41 (alleging that "Google knew in *2003*") (emphasis added); ¶43 (alleging "warnings" in *2003*); ¶46 (alleging that the "policy" was put into practice in *2004*); ¶48 (alleging that "Google's sponsorship of Canadian pharmacy ads brought widespread criticism," citing a June 9, *2004* WALL STREET JOURNAL article); ¶51 (alleging that "in *July 2004*, Defendants learned that online pharmacies were circumventing SquareTrade's certification process") (emphasis added).

verifications demonstrate the requisite contemporaneous ownership, plaintiffs concede that they

cannot challenge any conduct that occurred prior to May 18, 2005. *See* Plaintiffs' Opposition Brief

("Opp.") at 7 ("[T]o the extent that the AC details defendants' actions prior to May 18, 2005, it is

. . . not to challenge actions taken (or not taken) prior to plaintiffs' purchases."); Order at 16 ("A

derivative plaintiff has no standing to challenge conduct that occurred prior to the time that

plaintiff owned company stock.") (citations omitted).[3]  Plaintiffs nevertheless attempt to establish

standing by recasting the allegations in the Complaint.  Opp. at 5-7.  Thus, plaintiffs now seek to

transform their allegations of a purportedly longstanding corporate "policy" into a series of discrete

"transactions."  *Id.*  In particular, plaintiffs argue that the "***transactions*** plaintiffs challenge include

defendants' conscious, repeated ***decisions not to take any action*** to prevent Google from accepting

the illegal advertisements from Canadian pharmacies."  *Id.* at 5.  These "decisions" purportedly

"occurred on multiple occasions following plaintiffs' stock purchases, including, for example, each

time defendants received warnings that Google's practice of accepting these advertisements was

illegal."  *Id.* at 6 (citing 2008 Califano and NABP letters).

      Plaintiffs' characterization of the challenged conduct, however, is belied by their own

allegations.  In the Complaint, plaintiffs describe the alleged misconduct as a "[b]usiness

[s]trategy" or "policy" commencing in 2003 and which purportedly was "put . . . into practice" in

2004. AC at 9; ¶46.[4]  Thus, the challenged "policy" and/or "practice" allegedly was implemented

long before the first purchase of Google stock by any of the plaintiffs.  *See* Fed. R. Civ. P. 23(b)(1)

(shareholder plaintiff seeking to maintain a derivative action must allege that he was a shareholder

---

    [3] Plaintiffs' contention that the allegations in the Complaint regarding conduct in 2003, 2004, and pre-May 2005 are included solely for purposes of establishing demand futility (Opp. at 7) separately fails for the reasons set forth in Section II, *infra*.

    [4] *See* ¶46 ("***In 2004***, despite knowing that Canadian pharmacies were illegally advertising and the NABP's warnings and widespread criticisms, Google announced that its policy was to permit Canadian pharmacies to advertise through AdWords . . . and ***Google put this policy into practice*** through its retention of a third-party verification service . . . that . . . had a very low standard for approval of pharmacies.") (emphasis added); *see also* Opp. at 7 (referring to pre-2005 allegations as "demonstrat[ing] defendants' ***pattern and practice*** of permitting Google to accept illegal advertisements") (emphasis added).

1  "*at the time of the transaction complained of*") (emphasis added); *In re Bank of New York Deriv.*

2  *Litig.*, 320 F.3d 291, 298 (2d Cir. 2003) ("a proper plaintiff must have acquired his or her stock in

3  the corporation *before the core of the allegedly wrongful conduct transpired*") (emphasis added).

4      Plaintiffs' attempt to convert their allegations of illegal advertising into a series of artificial

5  "transactions" or "decisions" is unavailing.  Opp. at 6-7.  Unlike the stock option backdating cases

6  upon which plaintiffs rely, plaintiffs here do not identify any discrete "transactions" and/or

7  affirmative decisions by the Google Board *after* the plaintiffs purchased Google stock.  *See, e.g.*,

8  Opp. at 5; *Desimone v. Barrows*, 924 A.2d 908, 926 (Del. Ch. 2007) (stock option grants constitute

9  "discrete" transactions); *In re Zoran Corp. Deriv. Litig.*, 511 F. Supp. 2d 986, 1009, 1010 (N.D.

10  Cal. 2007) ("each grant of backdated stock options was an integrated transaction unto itself";

11  plaintiff only had standing to challenge directors' option grant that occurred after his purchase);

12  *DiLorenzo v. Norton*, No. 07-144 (RJL), 2009 WL 2381327, at *3-4 (D.D.C. July 31, 2009)

13  (alleging that the defendant directors either received or granted backdated options; plaintiff lacked

14  standing to challenge option grants prior to his purchase of stock).

15      Nor can an allegedly ongoing failure to take action be considered a series of separate

16  "decisions" as plaintiffs suggest.  Opp. at 5-6.  The mere fact that the challenged conduct continued

17  over time does not establish independent "transactions" for purposes of Rule 23.1.  *Cf. Cadle v.*

18  *Hicks*, 272 F. App'x 676, 678-79 (10th Cir. 2008) (rejecting contention that ongoing

19  indemnification payments made pursuant to past authorization constituted independent acts of

20  wrongdoing for purposes of contemporaneous ownership).

21      In sum, because the primary conduct of which plaintiffs complain commenced long before

22  any of the plaintiffs purchased their Google shares, none of the plaintiffs owned shares "throughout

23  the entire period of Defendants' alleged wrongdoing," and the Complaint should be dismissed.  *See*

24  *In re Accuray, Inc. S'holder Deriv. Litig.*, 757 F. Supp. 2d 919, 926 (N.D. Cal. 2010).

25

26

27

28

## II. THE COMPLAINT SHOULD BE DISMISSED BECAUSE DEMAND IS NOT EXCUSED

### A. The Complaint Fails to Raise a Reasonable Doubt that Any Director Is Disinterested

#### 1. Plaintiffs' Persistent Lack of Particularity Fails to Meet the Order's Requirements

Defendants showed that even with the benefit of amendment, the AC's confusing, conclusory allegations make it impossible to discern who allegedly knew of corporate wrongdoing, when, and how each director responded. DOB12-14. Plaintiffs' Opposition provides no clarity. First, it continues to lump all director defendants together.[5] Second, despite counsel's concession that Google's actions cannot be imputed to Board members (HT, Ex. 1 at 18:14-16), the Opposition repeatedly refers to Google's actions.[6] Third, the Opposition leaves unclear whether outside directors allegedly learned of corporate misconduct directly from inside directors or based on inferences from the existence of internal controls.[7] The allegations defy the Court's Order requiring particularized allegations against each of the directors, DOB12 (citing Order at 10, 11; HT, Ex. 1 at 14:16-18), and are insufficient. *See Potter v. Hughes*, 546 F.3d 1051, 1058, 1059 (9th Cir. 2008) ("'the court must be apprised of facts specific to each director'"; "[t]he complaint contains few details about the members of the Board") (citation omitted).[8]

---

[5] *See* Opp. at 1 ("defendants affirmatively implemented . . . the policy by relying on" deficient verification services); *id.* at 4 ("defendants had made a conscious decision to allow Canadian pharmacies to post the illegal advertisements"); *id.* at 27 n.18 ("defendants made a deliberate decision to do nothing and permit the wrongdoing to continue").

[6] *See* Opp. at 27 n.18 ("Google rejected NABP's recommendations"); *id.* at 29 ("Google received multiple warning letters from the NABP and CASA").

[7] *Compare* Opp. at 29 n.23 ("plaintiffs are entitled to the inference that Schmidt conveyed his knowledge to the other directors because Google has a system of governance procedures in place"), *id.* at 1, 27-28 (it is "reasonable to infer" that "information concerning a company's violations of law are . . . known to outside directors" through internal controls), *with id.* at 27 ("Schmidt, Page, and Brin knew about the illegal pharmacy ads and informed the rest of the Google Board of these issues as early as 2004.").

[8] *See In re ITT Corp. Deriv. Litig.*, 588 F. Supp. 2d 502, 511 (S.D.N.Y. 2008) (allegations must refer to individual defendants rather than group allegations such as the "'Board'" or "'Director Defendants'"; "Plaintiffs' conflation of all the directors into a single entity is insufficient under Rule 23.1").

**2.      Plaintiffs Concede that They No Longer Allege that the Outside Directors Are Interested or Approved Third Party Verification Providers**

Defendants showed that plaintiffs changed the theory of liability against the five outside director defendants. Whereas previously the Consolidated Complaint had asserted these five directors face a substantial likelihood of liability and affirmatively approved Google's third party verification providers, the AC has deleted these contentions, asserting them only against the inside directors – Messrs. Schmidt, Page, and Brin. DOB7-8; Ex. 2. Plaintiffs concede this fact. *See* Opp. at 8 (plaintiffs allege "that defendants Schmidt, Page and Brin face a substantial likelihood of liability").

**3.      Plaintiffs Do Not Adequately Plead that Any Inside Director Faces a Substantial Likelihood of Liability**

**Plaintiffs Fail to Address Their Mischaracterization of Mr. Schmidt's Senate Testimony.** Defendants showed that plaintiffs misrepresented Mr. Schmidt's Senate testimony. DOB9-12; Ex. 3. Plaintiffs did so by excluding the complete Senate report; selectively quoting bits and pieces from the testimony; and leaping to conclusions bereft of support in that record. *Id.* The Opposition never once acknowledges that Senator Cornyn himself expressed concern that Mr. Schmidt misunderstood the Senator's vague question and thus clarified his question, or that Mr. Schmidt's response never suggested that he knew of an "illegal ad strategy." Ex. 3 at 118-19. Instead, Mr. Schmidt described Google's policy to combat illegal ads. *Id.* at 119. The Opposition similarly fails to acknowledge that Mr. Schmidt never mentioned any defendant in this proceeding. Thus, he never stated that he or Messrs. Brin or Page hired third party verification providers who would certify Canadian pharmacies to run illegal ads; that he or any other defendant believed SquareTrade and PharmacyChecker were inadequate third party providers; or that he and any other defendant was a decision maker. *Id.* at 118-21.[9] Ignoring these facts, the Opposition perpetuates

---

[9] Mr. Schmidt testified that he did not remember seeing letters from the National Association of Boards of Pharmacy in 2003 and 2008, and made no suggestion that he distributed these letters to the Board. Ex. 3 at 121. The Opposition cites the letters, providing no explanation for how "defendants received warnings" from these letters. Opp. at 6, 29 n.23.

the Complaint's mischaracterizations.[10]

Having failed to present a fair or complete portrayal of Mr. Schmidt's Senate testimony in the first place, ***plaintiffs resort to pleas for pleading inferences, and indulgences as "officers of the court."*** Opp. at 11 (emphasis added). Even at the pleading stage, courts do not accept as true conclusory allegations that are contradicted by documents referenced in the complaint. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001) (affirming dismissal where arbitration award attached to complaint contained factual allegations fatally undermining claim) (citing *Steckman*, 143 F.3d at 1295-96).[11] Similarly, courts are "not required to indulge unwarranted inferences in order to save a complaint from dismissal." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064-65 (9th Cir. 2008) (citing *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996) ("'[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim'").[12] There is nothing "reasonable" or sensible (Opp. at 11) in interpreting the Senate testimony to conclude that Mr. Schmidt "knew about the illegal . . . ads and consciously chose to allow them to continue." *Id.*

From Mr. Schmidt's innocuous Senate testimony, the Opposition leaps to unsupported accusations against other defendants.[13] Plaintiffs argue:

---

[10] *See* Opp. at 4 ("Schmidt admitted that he knew about and sanctioned Google's illegal prescription drug advertising business since at least 2004"; "Schmidt acknowledged that the illegal advertising practices were 'certainly not [occurring] without my knowledge'"); *see infra*, n.13.

[11] *See also In re VISX, Inc. Sec. Litig.*, No. C-00-0649-CRB, 2001 WL 210481, at *7 n.1 (N.D. Cal. Feb. 27, 2001) (rejecting allegation in complaint that company did not take appeal where exhibit reflects appeal) (citing *Steckman*, 143 F.3d at 1295-96), *aff'd*, 298 F.3d 893 (9th Cir. 2002); *Reyes v. Rodriguez*, No. 1:07-cv-00547-LJO, 2010 WL 3463946, at *1 n.1 (E.D. Cal. Sept. 1, 2010) (noting that exhibit contradicts allegation of facility where surgery was performed).

[12] *See In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (same). Nothing in the unpublished decision in *Lynch v. Rawls*, 429 F. App'x 641 (9th Cir. 2011) is to the contrary. The Court made clear that "'conclusory allegations are not considered as expressly pleaded facts or factual inferences.'" *Id.* at 644 (citation omitted).

[13] *See* Opp. at 4 ("Schmidt has admitted that defendants had made a conscious decision to allow Canadian pharmacies to post the illegal advertisements"); *id.* at 27 ("Schmidt, Page, and Brin knew about the illegal pharmacy ads and informed the rest of the Google Board of these issues as early as 2004.") (citing AC ¶¶47, 87).

[T]he only reasonable inference from the facts alleged [about Mr. Schmidt's Senate testimony] is that defendant Page became aware of Google's illegal Canadian advertising practice around the same time as defendant Schmidt.

Opp. at 11.  But given that Mr. Schmidt did not even mention Mr. Page or Mr. Brin, this is hardly a reasonable inference.  DOB9-12; Ex. 3.

**The Opposition Repeats Allegations About Mr. Page That the Court Explicitly Rejected.**  Plaintiffs again inexplicably invoke U.S. Attorney Neronha's statement that "Page 'knew what was going on.'"  Opp. at 11; AC ¶¶77, 86.  As defendants showed, ***the Court already expressly rejected this contention***.  DOB14 (citing Order at 12, 18) ("there are no supporting facts establishing precisely 'what' Page understood ***was*** going on").  Instead of grappling with the Court's holding on this precise point, the Opposition re-asserts yet another theory that the Court explicitly rejected.  *Compare* Opp. at 12 & n.8 (directors "were obligated by Google's Code of Conduct to inform the entire Board, including Brin"; under Google's bylaws, "'Eric, Larry and Sergey . . . consult extensively'"), *with* Order at 12 ("plaintiffs' reliance on general code of conduct and/or corporate governance maxims [is insufficient] for the court to impute notice").[14]

The Opposition ignores the absence of allegations specific to Mr. Brin.  DOB14.  Yet, plaintiffs continue to count Mr. Brin's voting shares to argue there is a control group.  Plaintiffs must plead facts to show Mr. Brin faces a substantial likelihood of liability but fail to do so.

Plaintiffs continue to take refuge in decisions (Opp. at 9-10, 15, 28-29) that defendants distinguished in the first dismissal motion.  As was the case then, plaintiffs' reliance on *In re Pfizer Inc. Shareholder Derivative Litigation*, 722 F. Supp. 2d 453 (S.D.N.Y. 2010), is misplaced, particularly where *Pfizer* involved "unique facts" not present here.  *Id.* at 461.  Pfizer paid $2.3 billion in criminal fines and penalties for illegal off-label marketing of certain drugs.  Because of prior settlements of similar misconduct by subsidiaries prior to Pfizer's acquisition, Pfizer was "acutely aware of the need to prevent such illegal practices."  *Id.* at 455.  The settlements resulted

---

[14] *See ITT*, 588 F. Supp. 2d at 515 (reciting descriptions of employee misconduct from the criminal case filings "combined with generalities about Board responsibilities[] is insufficient to meet a plaintiff's burden"; "Plaintiffs must plead specific facts . . . demonstrating what each Director knew and when, and specifically what action, if any, each Director took or failed to take in response").

in Pfizer's entry into successive and increasingly stringent corporate integrity agreements, approved by the board, requiring the board to "create and implement a compliance mechanism that would bring information about illegal marketing activities to the board's attention." *Id.* at 455, 461. The complaint cited "a large number of reports made to members of the board" – of the earlier settlements, FDA violation notices and warning letters, reports given to compliance personnel about continuing kickbacks and off-label marketing, and allegations of *qui tam* lawsuits. *Id.* at 460. This occurred at "the same time that the board was obligated" under the corporate integrity agreements "to pay special attention to these very problems." *Id.* at 460-61. The "wrongdoing . . . was committed in the face of the board's repeated promises to closely monitor and prevent such misconduct," and not to rely on management:

> These [corporate integrity agreements] imposed affirmative obligations on Pfizer's board that went *well beyond the basic fiduciary duties required by Delaware law* . . . . [T]his reporting requirement . . . *guarantee[d] that each member of the board was bombarded with allegations* of continuing misconduct of the very kind that the prior settlements looked to the board to prevent.

*Id.* at 461 (emphasis added).

The decision in *In re Abbott Laboratories Derivative Shareholders Litigation*, 325 F.3d 795 (7th Cir. 2003) is also markedly distinguishable. Abbott entered a consent decree with the FDA, paid a $100 million fine, and withdrew 125 types of medical diagnostic test kits from the market, following a six-year period in which the FDA found repeated regulatory violations in Abbott's diagnostic division which represented 22% of Abbott's sales. The FDA had conducted 13 separate inspections of two manufacturing facilities, sent Form 483s following discussion with company representatives, and issued four formal certified Warning Letters to the division president, three of which were also sent to Abbott's CEO/chairman and its successor CEO/successor chairman. The fourth Warning Letter was sent following a failed compliance plan between the FDA and Abbott, which plan the FDA terminated. The FDA met at least 10 times with company representatives, including the new CEO/chairman. Abbott also issued a press release reporting the FDA's continued disagreements with the company's compliance efforts. *Id.* at 799-800, 808. The court concluded that demand was excused where the board knew of the

violations of law and intentionally took no steps to prevent or remedy the situation. *Id.* at 809.[15]

The intense board involvement and knowledge evidenced in *Pfizer* and *Abbott* are markedly absent here.

In sum, none of the allegations singularly or as a whole plead with particularity that any director faces a substantial likelihood of liability. *See Oracle*, 2011 WL 5444262, at *5 (inadequate pleading that inside directors are interested, notwithstanding holdings in *qui tam* action sustaining allegations of prima facie fraud and violations of the False Claims Act, and fact of emails referring to the CEO office); DOB17-18 & nn.24, 25.

**B.  The Complaint Fails to Raise a Reasonable Doubt that Any Director is Independent**

As defendants showed, none of the directors is disqualified from considering demand on independence grounds.  First, despite amendment, plaintiffs have not pleaded that any inside director is interested.  Under Delaware law, the Court does not even reach the independence issue in this context.  *See* Section IIB.1, *infra*.  Second, the Court's ruling on the first motion to dismiss had the effect of shifting the burden to the outside directors to prove their independence.  In fact, it was plaintiffs' burden to plead that the university donations and investments were material to the directors, which precluded their independence.  Plaintiffs have never met their burden.  *See* Section IIB.2, *infra*.  Third, defendants respectfully request that the Court consider the powerful message

---

[15] Notably, courts have distinguished *Abbott* and plaintiffs' other authorities as turning on "a much more compelling collection of 'red flags'" and thus are "not persuasive." *In re Intel Corp. Deriv. Litig.*, 621 F. Supp. 2d 165, 176-78 & n.4 (D. Del. 2009); *In re Oracle Corp. Deriv. Litig.*, No. C10-3392 RS, 2011 WL 5444262, at *5 (N.D. Cal. Nov. 9, 2011) ("there was no real question in *Abbott* that the board . . . had actual, and detailed, knowledge of the alleged wrongdoing."). *Cf. In re SFBC Int'l, Inc. Sec. & Deriv. Litig.*, 495 F. Supp. 2d 477, 485-86 (D.N.J. 2007) (demand not excused where "misconduct related to the core of" company's clinical drug testing, including over 80 citations for unsafe conditions of primary testing facility and ultimate condemnation of site, located at company headquarters); *In re Veeco Instruments, Inc. Sec. Litig.*, 434 F. Supp. 2d 267, 272, 276-77 (S.D.N.Y. 2006) (demand excused where audit committee, despite meeting 27 times, slashed accounting staff instead of taking remedial action in response to significant acquisition, restated financials, admitted internal control deficiencies, and repeated export control violations); *McCall v. Scott*, 239 F.3d 808, 819-20, 822-24 (6th Cir.) (certain directors had managed the health care organizations acquired where violations had occurred, audit committee reports showed discrepancies from cost reports submitted to government, federal agents raided 35 facilities nationwide, New York Times investigated billing practices, and SEC filings described *qui tam* complaint's allegations of illegal billing practices), *amended*, 250 F.3d 997 (6th Cir. 2001); *In re Taser Int'l S'holder Deriv. Litig.*, No. CV-05-123-PHX-SRB, 2006 WL 687033, at *9, 10 (D. Ariz. Mar. 17, 2006) (defendants conceded three directors were interested and remaining outside directors sold large amounts of stock at suspicious times).

its prior ruling sends to both public companies and university presidents. The ruling suggests that the latter should not serve on public boards, despite the wealth of wisdom and judgment they offer. It will also have the effect of discouraging even immaterial donations to institutions of higher learning. Delaware law does not support the ruling, yet the ruling's unfortunate repercussions will ripple far beyond this one case involving Google.

### 1. Under Delaware Law, Without an Interested Director, the Independence of Remaining Directors Is Irrelevant

Under Delaware law, without an interested director to be dependent upon, directorial independence is irrelevant and not considered. DOB20-21. The Delaware Supreme Court has made this clear. *See Brehm v. Eisner*, 746 A.2d 244, 258 (Del. 2000) (the Court "need not reach or comment on the analysis of the Court of Chancery on the independence of the other directors for this purpose" where the CEO/Chairman was not shown to be interested); *cf. Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993) ("Having determined that the Rales brothers and Caplin would be interested in a decision on [plaintiff's] demand, we must now examine whether the remaining Danaher directors are sufficiently independent to make an impartial decision despite the fact that they are presumptively disinterested.").[16] The Delaware Court of Chancery fully discussed and followed this principle. *In re The Dow Chem. Co. Deriv. Litig.*, No. 4349-CC, 2010 WL 66769, at *7, 8 nn.38 & 44, 14 (Del. Ch. Jan. 11, 2010). Federal courts, including those within the Ninth Circuit, have as well. This includes Judge Seeborg in his recent decision in *Oracle*:

> In the absence of a showing that one or more board members is disqualified as interested, there is no reason to evaluate whether any remaining board member would be so beholden to that person or persons as to be unable to exercise independent judgment.

2011 WL 5444262, at *6 (citing *Rales*, 634 A.2d at 936). Judge Illston made a similar ruling:

> [B]ecause plaintiff has failed to show that any of Peet's directors is interested, it follows that he also cannot raise the requisite doubt as to any director's

---

[16] *See Guttman v. Huang*, 823 A.2d 492, 501-02 (Del. Ch. 2003) (court first considers whether any board member is interested and then "if so [considers] whether any of the other members of the board are compromised in their ability to act independently of the directors found to be interested").

'independence.' That is, there is no interested person or director to whom another director might be beholden.

*Nach v. Baldwin*, No. C 07-0740-SI, 2008 WL 410261, at *9 (N.D. Cal. Feb. 12, 2008).[17]

Plaintiffs argue that defendants have this "wrong." Opp. at 18. Plaintiffs ignore *Brehm*, misread *Rales* (*id.* at 8), and propose a tortured reading of *Dow*. Plaintiffs argue that footnote 36 in *Dow* allows for an exception where, without more, there is a majority or control shareholder. *Id.* at 18. *Dow's* footnote, however, makes crystal clear that the mere existence of a majority stockholder is not enough; the majority or control stockholder must still "satisfy the interest hook" and "influence board members." *Dow*, 2010 WL 66769, at *7 n.36. The *Dow* Court stated that "absent an interest hook, the Court need not consider the remaining directors' independence." *Id.* Plaintiffs cannot simply point to the inside directors' collective voting power; plaintiffs must show that at least one director faces a substantial likelihood of liability, and that he controls one of the outside directors. This plaintiffs have not done.[18]

### 2. The Burden Was Incorrectly Shifted to the Four Outside Directors to Prove Their Independence

It is not the outside directors' burden to prove their independence. It is plaintiffs' burden to "rebut the presumption of independence." *Beam*, 845 A.2d at 1051; *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 990 (9th Cir. 1999) ("*SGI*") ("At the pleading stage, Board independence . . . [is] presumed."). Thus, with respect to the university donations, Delaware law imposes **on plaintiffs the burden to plead**, **with particularized facts**, that the **contributions were**

---

[17] *See Fosbre v. Matthews*, No. 09-cv-0467-ECR, 2010 WL 2696615, at *7 (D. Nev. July 2, 2010) (similar), *aff'd sub nom. Israni v. Bittman*, No. 10-16726, 2012 WL 1074266 (9th Cir. Apr. 2, 2012); *King v. Baldino*, 648 F. Supp. 2d 609, 617 (D. Del. 2009) (similar), *aff'd*, 409 F. App'x 535 (3d Cir. 2010).

[18] Plaintiffs' reliance on *Benefore v. Cha*, C.A. No. 14614, 1998 Del. Ch. LEXIS 28 (Del. Ch. Feb. 20, 1998), belies their argument. Opp. at 18. That case involved "ongoing self-dealing" and usurpation of a corporate opportunity between the nominal defendant and its controlling shareholder, making the latter clearly interested. 1998 Del. Ch. LEXIS 28, at *1. The inside director was beholden to the interested, controlling shareholder. *Id.* at *10. *See Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984) (to be disinterested, one cannot engage in self-dealing), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

*material* to Stanford and Princeton, [19] and in turn, to Presidents Hennessy and Tilghman[20] and trustee Shriram.[21]

Plaintiffs did not even attempt to demonstrate why the alleged contributions would have been material to these directors. While the Court's Order noted the "concrete financial motivations that plaintiffs have alleged," Order at 15, at no time did plaintiffs plead that these "motivations" were material to defendants. Delaware law indisputably requires this showing. The effect of the Court's Order was to incorrectly shift the burden of proving immateriality – and thus independence – to the director defendants. In the Opposition, plaintiffs themselves acknowledge that the burden of proving immateriality was placed on defendants: the "Court rejected *defendants'* assertion that the donations and other benefits directly or indirectly provided to defendants Hennessy, Shriram, Tilghman and Doerr were *immaterial*." Opp. at 19 (emphasis added).

Publicly available official reports from Stanford University and Princeton University establish that the donations were not material to either university:

- Google's donations to Stanford from 2006-2010 represent only *0.31%* of the total amount that Stanford received. DOB23-24; Ex. 4 at 43, Ex. 5 at 50, Ex. 6 at 73.

- Mr. Schmidt's endowment gift to Princeton in 2009 constitutes only *0.20%* of Princeton's endowment in 2009. DOB25; Ex. 7 at 15.

---

[19] *See In re Fed. Nat'l Mortg. Ass'n Sec., Deriv. & ERISA Litig.*, 503 F. Supp. 2d 9, 20 (D.D.C. 2007) ("*plaintiffs have failed to meet their burden of alleging that these grants were material to either the organizations or the directors at issue*") (emphasis added), *aff'd sub nom. Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust ex rel. Fed. Nat'l Mortg. Ass'n v. Raines*, 534 F.3d 779 (D.C. Cir. 2008); *In re The Goldman Sachs Grp. Inc. S'holder Litig.*, No. 5215-VCG, 2011 WL 4826104, at *9, 10 (Del. Ch. Oct. 12, 2011) ("*The Plaintiffs do not provide the ratios* of the amounts donated by [the company], or [the company's foundation] to overall donations, or any other information demonstrating that the amount would be material to the charity.") (emphasis added); *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 822, 824 (Del. Ch. 2005) (no disqualification where "*plaintiffs provide only the dollar value, not the representative percentage*, of [bank's] contributions") (emphasis added), *aff'd*, 906 A.2d 766 (Del. 2006).

[20] *See Goldman*, 2011 WL 4826104, at *10, 11 ("*Plaintiffs' allegations do not provide information that [Brown's president] actively solicited this amount or how this or potential future donations would affect Simmons")* (emphasis added).

[21] Contrary to the Order's statement (Order at 15), Mr. Shriram does not have an "executive position" at Stanford. AC ¶27. Plaintiffs have never alleged that Mr. Shriram, a member of Stanford's Board of Trustees, solicited donations from Google or received any benefit from Google's donations to Stanford. *See Goldman*, 2011 WL 4826104, at *11.

Plaintiffs do not dispute these facts or address their merits. Opp. at 19-20. Instead, plaintiffs request that the Court side-step the materiality issue by asserting that these undisputed facts are "inappropriate at the motion to dismiss phase." *Id.* at 20 n.15. Plaintiffs further ignore their burden to show that Google's donations to Stanford **were at the behest of** Messrs. Page and Brin, or that Mr. Schmidt's 2009 contribution to Princeton has any impact on President Tilghman now, given that Mr. Schmidt's position as trustee ended years ago in 2008. *See* DOB22 & n.30; DOB25 & n.36.

Plaintiffs also evaded their burden with respect to Mr. Doerr, a general partner of Kleiner Perkins. Plaintiffs have never addressed how or whether Google Inc. influences the stock purchase decisions of Google Ventures, much less that Mr. Doerr solicited Google Inc. or Google Ventures to "invest" in the alleged companies for his financial benefit. Plaintiffs do not address what Mr. Doerr derived from Google Inc.'s or Google Ventures' purchases of shares in the same companies as Kleiner Perkins.[22]

In sum, plaintiffs have not overcome the presumption directors Hennessy, Shriram, Tilghman or Doerr are independent.[23]

### 3. The Inside Directors Are Not Dependent on One Another

The Opposition stubbornly ignores defendants' arguments about the inside directors' independence. As defendants showed, the presumed independence of the inside directors cannot be rebutted by claims of long-term friendship. DOB27-28. Instead, plaintiffs continue to aggregate the three insiders, asserting that the three together have a controlling position and are a "controlling triumvirate." Opp. at 20. Plaintiffs' aggregation makes no sense. The allegations

---

[22] *See Jacobs v. Yang*, No. 206-N, 2004 WL 1728521, at *6 (Del. Ch. Aug. 2, 2004) (rejecting as conclusory that an agreement is "crucial" to an outside director where there were no particularized facts detailing the terms of the agreement), *aff'd mem.*, 867 A.2d 902 (Del. 2005); *Jones ex rel. CSK Auto Corp. v. Jenkins*, 503 F. Supp. 2d 1325, 1339-40 (D. Ariz. 2007) ("Plaintiff has not alleged the extent of fees collected by Evercore or how Evercore's relationship with CSK affects Shutzer's compensation"); *Fed. Nat'l Mortg.*, 503 F. Supp. 2d at 22 n.8 (complaint "fails to allege that Fannie Mae's relationships . . . were in any way material to any of these entities or to those directors individually").

[23] *See Aronson*, 473 A.2d at 815; *SGI*, 183 F.3d at 990; *In re Autodesk, Inc., S'holder Deriv. Litig.*, No. C-06-7185-PJH, 2008 WL 5234264, *6 (N.D. Cal. Dec. 15, 2008).

themselves do not suggest that the three are culpable, such as by engaging in a self-dealing transaction which forms the basis of a complaint. Plaintiffs ignore that they have not described a single act of wrongdoing or knowledge of wrongdoing by Mr. Brin, a 28% shareholder.

Plaintiffs cite the fact that the three insiders have their principal employment at Google. Opp. at 21. This hardly establishes dependence on each other, particularly where each received *salaries of just $1 per year* from 2005 through 2010, with no stock awards. Ex. B at 31; Ex. C at 47; Ex. D at 49; Ex. E at 54; Ex. F at 59; Ex. G at 45.

The Opposition repeats the argument that NASDAQ listing rules should be coterminous with demand futility common law. Opp. at 20. This proposal flies in the face of Delaware law, which requires that demand futility be evaluated pursuant to a "[c]ontextual inquiry" and "fact specific determination." *Beam*, 845 A.2d at 1049-50; DOB28-29.[24]

### 4. The Law of the Case Doctrine Is Inapplicable

Plaintiffs argue that the Court may not consider the foregoing arguments under the law of the case doctrine. Opp. at 17-18. This is erroneous. Ninth Circuit law is clear that law of the case does not apply to interlocutory orders. *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001) ("The doctrine simply does not impinge upon a district court's power to reconsider its own interlocutory order provided that the district court has not been divested of jurisdiction"). Because the Court's May 8, 2012 Order dismissing the complaint with leave to amend is an interlocutory order, the Court is free to revisit its ruling.[25]

---

[24] *Cf. In re Countrywide Fin. Corp. Deriv. Litig.*, 554 F. Supp. 2d 1044, 1080-81 (C.D. Cal. 2008) (*defendants conceded* officers were not independent; court cited no law in support of proposition that proxy statements are dispositive for the separate purpose of demand futility).

[25] *See In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1098 (S.D. Cal. 2010) (law of the case is not a bar to altering an interlocutory order prior to final judgment; court revised holding on earlier motion to dismiss and dismissed claim) (citing *City of Los Angeles*, 254 F.3d at 888); *Goodrich & Pennington Mortg. Fund, Inc. v. Chase Home Fin., LLC*, No. 05cv636 JLS, 2008 WL 698464, at *5 (S.D. Cal. Mar. 14, 2008) (law of the case does not apply to interlocutory orders); *Rocky Mountain Farmers Union v. Goldstene*, 843 F. Supp. 2d 1042, 1060 (E.D. Cal. 2011) (court may revisit legal conclusions in earlier dismissal order); *Dupris v. McDonald*, No. 08-8132-PCT-PGR, 2011 WL 2533696, at *2-3 (D. Ariz. June 27, 2011) (law of the case does not preclude dismissal where earlier order allowed for amendment); *Phillips v. New Century Fin. Corp.*, No. SACV050692DOCRNBX, 2006 WL 517653, at *1 (C.D. Cal. Mar, 1, 2006) (court has authority to alter earlier dismissal order "at its discretion").

1  Plaintiffs' theory of demand futility against the outside directors has substantially changed:

2  Plaintiffs no longer allege that the outside directors face a substantial likelihood of liability, or

3  affirmatively approved Google's third party verification providers.  The sole theory of demand

4  futility rests on allegations that university donations and co-investments rendered certain outside

5  directors not independent.  Courts are not bound by law of the case where, as here, the complaint is

6  amended.  *See Sony*, 758 F. Supp. 2d at 1098 (amended complaint superseded the previous

7  complaint, and allows for new dismissal motion and new ruling).[26]

8      Even under the law of the case doctrine, a court is not bound where the first decision was

9  clearly erroneous or there is substantially different evidence.  *Gonzalez v. State of Ariz.*, 677 F.3d

10  383, 389 n.4 (9th Cir. 2012) (*en banc*) (examining an earlier decision of appellate court).  As

11  discussed, plaintiffs never attempted to meet their burden of demonstrating that university

12  donations and investments with Kleiner Perkins were material.  This doctrine would not apply.

13  **III.    THE COMPLAINT FAILS TO STATE A CLAIM**

14      This Court previously dismissed the claims against all defendants.  Rather than strengthen

15  the claims, the Amended Complaint has substantially weakened them by abandoning all

16  contentions that the outside directors participated in any affirmative acts of wrongdoing.  The

17  claims against the inside directors have deteriorated as well, made manifest in two ways.  First,

18  plaintiffs simply repeat allegations that this Court previously expressly rejected, thereby revealing

19  that they have nothing better.  Second, the primary new "factual" allegation based on Mr.

20  Schmidt's Senate testimony is a distortion of that record, including that plaintiffs omitted the fact

21  of the Senator's self-expressed need for clarifications and Mr. Schmidt's responses.  Plaintiffs

22  cannot bootstrap their inadequate allegations of demand futility and argue that they necessarily

23  state claims against the defendants based on lower pleading standards.  Opp. at 24, 21-23.

24      Predictably, plaintiffs resist application of Rule 9(b) to the Complaint, despite allegations

25

26  _____

27  [26] *See Goodrich*, 2008 WL 698464, at *5 (court was not bound by earlier dismissal order in reviewing amended complaint); *Levitt v. Yelp! Inc.*, No. C-10-1321 EMC, 2011 WL 5079526, at *4 (N.D. Cal. Oct. 26, 2011) ("[t]o the extent [p]laintiffs add new allegations to the [Complaint] that [a]ffect all claims, the law of the case doctrine would not apply").

28

of intentional illegal conduct and duplicity.[27] Plaintiffs do not have to use the word "fraud" (Opp.

at 22) to have a claim sound in fraud. *See Vess v. Ciba-Geigy Corp. USA.*, 317 F.3d 1097, 1103-04

(9th Cir. 2003); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009); *Accuray*, 757

F. Supp. 2d at 934 (applying Rule 9(b) to seven state law claims). Rule 9(b) "requires that the

complaint differentiate the allegations and inform each defendant separately of the allegations

surrounding his alleged participation in the fraud." *Hiraide v. Vast Sys. Tech. Corp.*, No. C-08-

04714 RMW, 2009 WL 2390352, at *8 (N.D. Cal. Aug. 3, 2009) (citation omitted). Plaintiffs'

failure to plead specific facts as to any defendant violates Rule 9(b). *Id.* at *8-10; *In re Cray Inc.*

*Deriv. Litig.*, 431 F. Supp. 2d 1114, 1130 (W.D. Wash. 2006) (state claims dependent on

averments of fraud do not meet Rule 9(b)'s particularity requirements where there is no

explanation why officers stopped concluding that company's procedures were effective or "how or

when the other Individual Defendants would have learned of this information"); *In re VeriSign,*

*Inc. Deriv. Litig.*, 531 F. Supp. 2d 1173, 1219 (N.D. Cal. 2007) (constructive fraud claim fails

under Rule 9(b); plaintiffs do not plead "elements as to each specific defendant," who and when

stock options were approved, or facts of grants allegedly backdated). With or without heightened

pleading requirements, the claims still do not pass muster.

   **No Claim for Breach of Fiduciary Duty**. This Court found the predecessor complaint's

allegations:

> are in many parts stated against all defendants in a collective and general fashion,
> and contain no particularized allegations stating which particular director or
> directors had knowledge of unlawful advertising by Canadian pharmacies on
> Google's search engine.

Order at 11. As to Mr. Page, the Court found no "allegations identifying what, exactly, Page was

supposed to know, when he knew it, or what actions he did or did not take in response thereto." *Id.*

at 18. Similarly, the Court found no supporting allegation "that would suggest that Schmidt's

---

   [27] *See* AC ¶¶3, 8 ("Despite knowing that such advertisements were in violation of the Acts, defendants caused the Company to continue to accept and promote these illegal advertisements for over five years."); ¶47 ("[t]hese duplicitous decisions reflect defendants' knowledge"; "defendants made a conscious decision to allow Canadian pharmacies to post the illegal advertisements"); ¶45 ("Individual Defendants[] instruct[ed] that the Company break the law").

individual conduct was unlawful and in violation of his duty of loyalty to Google." *Id.* Because there was no pleading of "particularized knowledge" for any director, the Court dismissed the claims. *Id.*

The Opposition again offers only inferences, rather than supporting fact. These inferences cannot cure the defects this Court found in the predecessor complaint.

- "[P]laintiffs are entitled to the inference that Schmidt conveyed his knowledge to the other directors because Google has a system of governance procedures in place." Opp. at 29 n.23.

- Where "proper internal controls are in place . . . it is reasonable to infer . . . that information . . . [is] communicated . . . to outside director[s]." *Id.* at 27-28.

- Officers of a Delaware corporation "are duty bound to keep directors apprised." *Id.* at 29 n.23.

- The entire Board was "aware of the violations by virtue of their duties 'to familiarize themselves with any risks' . . . and the management reporting processes in place at Google." *Id.* at 29 (citations omitted).

- It is "appropriate to infer that the entire Board was aware of Google's violations of law." *Id.* at 29.

These inferences do not plead any director's knowledge, the "'precise roles that the directors played at the company,'" or that defendants "'intentionally act[ed] . . . with the intent to violate applicable positive law.'" Order at 10, 17 (citations omitted). The Amended Complaint is no more effective in stating a claim against any defendant than was the predecessor complaint.[28]

**No Claim for Waste**. The Amended Complaint does not explain what acts purportedly constitute waste; nor did the plaintiffs provide any new facts for the claim. AC ¶¶132-134. The Court previously held:

> As defendants correctly contend, plaintiffs here have not alleged facts that rise to the level of establishing an exchange that is "unconscionable." There are no allegations as to the amounts that constitute corporate waste specifically, and more

---

[28] Plaintiffs again rely (Opp. at 25) on a decision involving a motion for preliminary injunction seeking to prevent Alpha Natural Resources from acquiring Massey Energy Company, "a coal mining corporation with a controversial reputation." *In re Massey Energy Co. Deriv. & Class Action Litig.*, C.A. No. 5430-VCS, 2011 WL 2176479, at *1-2 (Del. Ch. May 31, 2011). Unlike the case at bar, a court-approved settlement in an earlier derivative action required that "Massey had to form a new Board committee, the Safety and Environmental Committee, that was required to, among other things, give quarterly reports and safety updates to the Board on Massey's compliance with all applicable mine safety laws and regulations." *Id.* at *6.

fundamentally – no allegations that the alleged waste amounts cannot be attributed
to any rational business purpose.

Order at 19.  The Opposition at 30 does not elucidate the waste claim, and asserts only that the bad acts cost Google more than it received.  These vague allegations fail to satisfy the "rigorous test for waste." *Accuray*, 757 F. Supp. 2d at 935 (dismissing where "legal liability and costs allegation is too vague and speculative to satisfy the requirements of a waste claim"); *Cray*, 431 F. Supp. 2d at 1135 (dismissing where waste allegation is unsupported).

**No Claim for Unjust Enrichment**.  The Court dismissed the unjust enrichment claim, finding plaintiffs did not plead facts "establish[ing] how each individual defendant was enriched," how Google was impoverished as a result, or the lack of justification.  Order at 19.  The Complaint simply repeats the former allegation that "salary, fees, stock options and other payments" are the basis of the claim.  AC ¶136.  Plaintiffs recognize that this contention fails, where Messrs. Schmidt, Page, and Brin received *salaries of just $1 per year* from 2005 through 2010, with no cash bonus payment or stock award during that time.  DOB31 & n.44.  The Opposition at 31 thus now argues only that the value of Google stock increased "in part due to the illegal business activity."  Even if so, this fails to demonstrate how Google was impoverished by a rising stock price, which would benefit all shareholders.  This claim fails.

### CONCLUSION

For the reasons stated, the Complaint should be dismissed with prejudice.

Dated:  September 5, 2012                              Respectfully submitted,

                                                      WILSON SONSINI GOODRICH & ROSATI
                                                      Professional Corporation
                                                      650 Page Mill Road
                                                      Palo Alto, CA  94304-1050

                                                      By: /s/ Boris Feldman
                                                           Boris Feldman
                                                           Attorneys for Defendants
                                                           Larry Page, Sergey Brin,
                                                           Eric E. Schmidt, L. John Doerr, John L.
                                                           Hennessy, Paul S. Otellini, K. Ram Shriram,
                                                           Shirley M. Tilghman,
                                                           and Nominal Party Google Inc.