UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: GOOGLE, INC. SHAREHOLDER DERIVATIVE LITIGATION<br>_____/ | No. C 11-4248 PJH<br><br>**ORDER GRANTING MOTION TO DISMISS** |

Defendants' motion to dismiss plaintiffs' amended verified consolidated shareholder derivative complaint came on for hearing before this court on July 3, 2013. Plaintiffs Patricia H. McKenna, Avrohom Gallis, and James Clem (collectively "plaintiffs") appeared through their counsel, Benny Goodman, Travis Downs, and Shane Sanders. Individual defendants and nominal party Google, Inc. (collectively "defendants") appeared through their counsel, Boris Feldman and Elizabeth Peterson. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendants' motion as follows.

## BACKGROUND

This is a shareholder derivative action on behalf of nominal defendant Google, Inc. ("Google"), against eight members of Google's Board of Directors.[1] Plaintiffs allege that defendants allowed certain Canadian pharmacies to advertise via Google's search engine for the sale of prescription medications to be imported into the United States, which advertisements were unlawful, and which resulted in the entry of a non-prosecution agreement ("NPA") between Google and the United States Department of Justice ("DOJ"), and the payment by Google of a $500 million fine. See generally Amended Verified

---

[1] The specific named individual defendants who form a part of Google's Board of Directors are: Larry Page ("Page"); Sergey Brin ("Brin"); Eric E. Schmidt ("Schmidt"); L. John Doerr ("Doerr"); John L. Hennessy ("Hennessy"); Paul S. Otellini ("Otellini"); K. Ram Shriram ("Shriram"); and Shirley M. Tilghman ("Tilghman") (all collectively "defendants").

Consolidated Shareholder Derivative Complaint ("Amended Complaint" or "AC").

Plaintiffs allege that Google, who is best known for its widely used Internet search engine, has advertising as one of its primary revenue drivers. See Amended Complaint, ¶ 5. Google's advertising services are closely linked to its search technology in that customers submit their advertisements and relevant contact information to Google, and Google displays those advertisements above and next to search results that are based on queries relevant to the advertiser. See id. Plaintiffs further allege that displaying the ads near search results relevant to the advertiser provides Google with an effective way to target consumers most likely to be interested in the products being advertised. Id.

Plaintiffs allege that the Food, Drug and Cosmetic Act ("FDCA") prohibits pharmacies outside the United States from introducing or delivering for introduction any prescription drug into interstate commerce. Similarly, plaintiffs allege that the Controlled Substances Act prohibits such conduct with regard to controlled substances. Plaintiffs further allege that compliance with both Acts is both mandatory, and a legal duty generally known to sophisticated executives of U.S. companies who conduct business internationally. Amended Complaint, ¶ 6.

Plaintiffs allege that, as corporate directors and officers of the Company, defendants owe Google certain fiduciary duties: specifically, the duty of loyalty, and the duties of candor and good faith. Amended Complaint, ¶ 7. Notwithstanding these duties, however, plaintiffs allege that Google's directors and officers caused Google to facilitate the illegal importation of prescription drugs by Canadian pharmacies for at least six years, and until Google became aware of an investigation by the DOJ into such practices. Amended Complaint, ¶ 8. Plaintiffs assert that, although facilitating improper advertisements temporarily helped Google secure millions in profits, the Company violated the aforementioned Acts by doing so and has now been exposed to significant damages. Id.

Plaintiffs further allege that even though Google purposely used third party verification services – like Square One and PharmacyChecker – ostensibly in order to prevent the unlawful solicitation of consumers for illegal pharmacy mailings, such third party

verification services were essentially a sham. Plaintiffs allege that Google's directors were aware that these services were ineffectual.

Specifically, and on August 24, 2011, plaintiffs allege that it was announced that Google had settled with the DOJ and entered into a non-prosecution agreement in which the Company agreed to forfeit $500 million as a fine for facilitating the placement of advertisements from online Canadian pharmacies that resulted in the unlawful importation of controlled and non-controlled prescription drugs into the United States. Amended Complaint, ¶ 9. Plaintiffs allege that the $500 million fine is one of the largest fines ever levied against a United States company. Id.

Plaintiffs allege that, had defendants complied with the Acts as their fiduciary duties required, they would not have allowed the improper advertisements to occur in the first place, and the unlawful activity would not have continued. Amended Complaint, ¶ 10. Ultimately, although the unlawful advertising increased Google's total revenues, plaintiffs allege that Google was damaged in a far greater amount. In addition to including the illicit profit Google received from Canadian pharmacies, the $500 million settlement includes the revenue the pharmacies gained from their sales through Google. Plaintiffs further allege that Google has been exposed to millions of dollars in investigative costs and expenses, and will likely incur additional legal and professional fees and expenses related to implementation of remedial measures designed to correct the problems arising from the Google Board's failure to prohibit illegal advertising by Canadian pharmacies. Amended Complaint, ¶ 11.

Although the Company has been injured, plaintiffs allege that defendants have not fared nearly so badly. Amended Complaint, ¶ 12. Plaintiffs allege that, during the relevant time period, defendants collectively pocketed millions in salary, fees, stock options, and other payments that were not justified in light of the violations of federal law that had occurred. Id. Plaintiffs further allege that these payments wasted valuable corporate assets and unjustly enriched defendants to Google's detriment. Id.

In response to the foregoing conduct, plaintiffs filed the original complaint in this

action on August 29, 2011. The operative amended complaint was filed on June 8, 2012.

The complaint alleges three causes of action (labeled "counts") against defendants: (1) breach of fiduciary duty of loyalty (including duties of candor and good faith); (2) corporate waste; and (3) unjust enrichment.

Nominal defendant Google, together with the individual defendants, now seek an order dismissing the complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 23.1 for failure to plead facts demonstrating demand futility, and for failure to state a claim.

**DISCUSSION**

A. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8.

Rule 8(a)(2) requires only that the complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are unnecessary – the statement need only give the defendant "fair notice of the claim and the grounds upon which it rests. Erickson v. Pardus, 551 U.S. 89, 93 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). All allegations of material fact are taken as true. Id. at 94. However, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and quotations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level. Id.

A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. See id. at 558-59. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

4

the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

In addition, when resolving a motion to dismiss for failure to state a claim, the court may not generally consider materials outside the pleadings. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). There are several exceptions to this rule. The court may consider a matter that is properly the subject of judicial notice, such as matters of public record. Id. at 689; see also Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986) (on a motion to dismiss, a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment). Additionally, the court may consider exhibits attached to the complaint, see Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and documents referenced by the complaint and accepted by all parties as authentic. See Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002).

Finally, in actions alleging fraud, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Under Rule 9(b), the complaint must allege specific facts regarding the fraudulent activity, such as the time, date, place, and content of the alleged fraudulent representation, how or why the representation was false or misleading, and in some cases, the identity of the person engaged in the fraud. In re GlenFed Sec. Litig., 42 F.3d 1541, 1547-49 (9th Cir.1994).

B.  Legal Analysis

The parties have set forth three issues to be decided: (1) whether plaintiffs adequately plead that they meet the ownership requirements of Rule 23.1, (2) whether plaintiffs adequately plead demand futility, and (3) whether plaintiffs adequately plead their claims for breach of fiduciary duty, waste of corporate assets, and unjust enrichment.

1.  Rule 23.1's ownership requirements

As a threshold matter, defendants challenge plaintiffs' standing under Rule 23.1, arguing that the AC does not adequately allege that the plaintiffs were shareholders "at the

5

time of the transaction complained of." Fed. R. Civ. P. 23.1(b). Defendants note that plaintiffs challenge conduct that allegedly began in 2003, even though Google did not become a publicly traded company until August 2004, and plaintiffs did not purchase stock until May 18, 2005. Plaintiffs concede that they cannot challenge conduct that occurred prior to their stock purchase, but argue that "each time defendants consciously decided not to take any action to block the illegal advertisements was a separate act."

In ruling on defendants' previous motion to dismiss, the court considered whether or not the challenged conduct was the result of an actual "business decision" by the board of directors, and ultimately determined that the complaint does not challenge any specific action by the board, and instead challenges its failure to act. See Dkt. 50 at 7-8 (citing Rales v. Blasband, 634 A.2d 927 (Del. 1993)). Though Rales was raised in the context of the demand futility analysis, the court also finds it relevant to this issue. Because plaintiffs do not challenge any specific act, but rather the board's failure to act, the court must look at whether any such failure to act occurred during the time period of plaintiffs' stock ownership. And in this case, even though the challenged conduct began in 2003, it is alleged to have continued until 2009. Thus, to the extent that defendants failed to act between May 2005 and 2009, plaintiffs do have standing under Rule 23.1. Moreover, two specific warning letters during this period identified by plaintiffs (the July 8, 2008 warning from CASA and the December 23, 2008 warning from NABP) provide additional foundation for their argument that defendants failed to act in response to specific warnings.

2. Demand futility

Aside from challenging plaintiffs' standing, defendants also seek to dismiss the amended complaint on grounds that plaintiffs failed to make a demand on Google's board of directors prior to commencing this action, and that the complaint fails to allege demand futility with particularity, as required by Rule 23.1.

Federal Rule of Civil Procedure 23.1 provides the procedural vehicle through which a shareholder derivative action may be pursued, as it applies where shareholders seek to "enforce a right of a corporation" when the corporation itself has failed to enforce a right

6

which could properly be asserted by it in court. Rule 23.1 requires that a shareholder seeking to file a derivative action allege that he or she made a pre-suit demand on the corporation's board of directors, or allege facts showing why such a demand would have been futile. The complaint must "allege with particularity" the efforts made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority, or the reasons for the plaintiff's failure to obtain the action or for not making the effort. Fed. R. Civ. P. 23.1.

Plaintiffs admit that they did not make a demand on Google's board prior to commencing the instant lawsuit. Thus, the only question is whether plaintiffs have adequately pled that demand was excused. Because Google is a Delaware corporation, Delaware law establishes the circumstances under which plaintiffs' failure to make a pre-suit demand on its board of directors is excused. In re Silicon Graphics Sec. Litig., 183 F.3d 970, 989-90 (9th Cir. 1999).

As explained above, the court has already found that the Rales test applies to plaintiffs' demand futility allegations. Under Rales, the court must determine whether the particularized factual allegations create a reasonable doubt that, as of the time the complaint was filed, a majority of the board as constituted at that time could have properly exercised its independent and disinterested business judgment in responding to the demand. 634 A.2d at 934. When the original complaint was filed, Google's board of directors consisted of nine members – so in order to show demand futility, plaintiffs' allegations must create a reasonable doubt that five of them could have exercised disinterested and independent business judgment. Plaintiffs urge the court to re-adopt its previous finding that the complaint sufficiently alleged that four of the outside directors (specifically, Hennessy, Shriram, Tilghman, and Doerr) lacked independence. However, given the differences between the previous complaint and the current amended complaint, the court will consider the Rales inquiry de novo.

As an initial matter, the parties dispute whether the court needs to find at least one "interested" director before considering the independence of the other directors.

7

Defendants argue that "where there is no director who is interested in the transaction, there is no need to consider the independence of the remaining directors." In re The Dow Chem. Co. Deriv. Litig., 2010 WL 66769 at *7 (Del. Ch. 2010). Plaintiffs cite to a footnote from the same case, where the Dow court noted that "independence may be dispositive without any director being interested," as long as "a majority or control stockholder exists." Id. at *7, n.36. Plaintiffs then argue that, "because Schmidt, Page and Brin possess over 65% of Google's shareholder voting power, demand may be deemed futile without the presence of an interested director." However, while plaintiffs are correct that futility can be found even without an interested director, the Dow court made clear that "the independence of directors is only relevant when there exists an interested person." Id. at *8, n.38 (emphasis added). In other words, a controlling shareholder may still trigger the independence analysis even if he or she is not a director, but the controlling shareholder still must be found to be "interested." The full quote from plaintiffs' cited footnote explains that "the majority or control shareholder may influence board members even if the controller is not on the board. In that case, independence may be dispositive without any director being interested. That individual will satisfy the interest hook." Dow at *7, n.36. Thus, in order for any directors' non-independence to be relevant, plaintiffs must identify interested persons (whether directors or not), and must show that other directors are not independent from those interested persons. In this case, plaintiffs allege that Schmidt, Page, and Brin – together – control the majority of Google stock. Thus, before reaching the "independence" analysis, the court will first look at whether plaintiffs have adequately alleged that Schmidt, Page, and/or Brin are "interested."

A director is "interested" if his or her loyalties are divided, or if the director will receive a personal financial benefit from a transaction that is not equally shared by the stockholders, or when a corporate decision will have a "materially detrimental impact" on a director but not the corporation or its stockholders. Rales, 634 A.2d at 936. As is particularly relevant here, a reasonable doubt as to a director's disinterestedness also exists where a director faces a "substantial likelihood" of liability for breaching his fiduciary

8

duty of loyalty (and good faith). See id. (where the potential for a director's liability is not "a mere threat" but instead rises to "a substantial likelihood," disinterestedness may be stated).

Plaintiffs first attempt to characterize Schmidt, Page, and Brin as "interested" using blanket allegations applicable to all three, arguing that "each were personally and directly involved in the acts of mismanagement" and "each approved the actions which are complained of." AC, ¶ 99. Thus, in plaintiffs' view, all three inside directors face a substantial likelihood of liability for breaching the fiduciary duty of loyalty, creating a reasonable doubt as to whether they are disinterested. Plaintiffs list a host of allegations in support of this argument, pointing to these facts: (1) the three inside directors were "Google's top executives" when Google settled the DOJ's claims; (2) the NABP warned Google in 2003 about the illegal ads; (3) Google blocked pharmacy ads from countries other than Canada; (4) two "high-level Google officials" testified that Google "guarded against advertisements by rogue pharmacies; (5) the NABP again warned Google in 2008 about the illegal ads; (6) the NPA states that Google was aware of the illegal ads in 2003; and (7) Google's code of conduct required the inside directors to "understand the major laws and regulations" that were applicable and to "obey the law." Dkt. 62 at 9-10. But these allegations do not identify any specific actions or knowledge on the part of either Schmidt, Brin, or Page. Instead, plaintiffs appear to argue that, because those three "operate the company collectively," they necessarily face a substantial likelihood of culpability for anything that happened on their watch. Plaintiffs' theory would eviscerate the "disinterested" prong of the Rales test, and would find any director involved in the day-to-day running of a company to be "interested" under any set of facts. Thus, the court finds these blanket allegations insufficient to create a reasonable doubt that either Schmidt, Brin, or Page were "disinterested."

However, in addition to these blanket allegations, plaintiffs also offer specific "interestedness" allegations as to defendant Schmidt. Specifically, plaintiffs point to Schmidt's testimony in a Senate Judiciary Committee hearing. See AC, ¶ 110. In that

1  hearing, during a discussion of the conduct that was the subject of the NPA (i.e., the
2  Canadian pharmacy ads), Schmidt was asked whether "it was the result of oversight or
3  inadvertence, or were there some employees in the company that were doing this without
4  your knowledge." Schmidt answered, "well, certainly not without my knowledge." Schmidt
5  also stated at that hearing that he "first learned of this issue" around 2004. Plaintiffs thus
6  argue that Schmidt's testimony shows that he was aware of the illegal Canadian pharmacy
7  ads since 2004 and consciously chose to allow them to run, which creates a substantial
8  likelihood of liability. Defendants argue that the question posed to Schmidt was unclear, in
9  that the questioner did not explain what he meant by "it" ("was it the result of oversight or
10 inadvertence...") and "this" ("were there some employees in the company that were doing
11 this without your knowledge"). However, defendants concede that the questioner
12 eventually clarified his question to specifically ask when Schmidt became aware of the
13 illegal Canadian pharmacy ads, to which Schmidt responded that, around 2004, he became
14 aware "that there were some potential issues to consider regarding pharmacies advertising
15 via AdWords, in violation of Google's policies." The court finds these allegations sufficient
16 to raise a reasonable doubt that Schmidt was "disinterested." Even without the clarified
17 question, it is evident from the context of the question that "it" and "this" refer to the
18 Canadian pharmacy ads. Schmidt's subsequent clarification only serves to strengthen
19 plaintiffs' argument.

20        Plaintiffs then attempt to impute Schmidt's testimony of his own knowledge to the
21 other inside directors, arguing that "the only reasonable inference from the facts alleged is
22 that defendant Page became aware" of the challenged conduct "around the same time as
23 defendant Schmidt." Plaintiffs provide no support for this assertion, as Schmidt did not
24 mention Page in his testimony. Plaintiffs appear to assume that all of Schmidt's knowledge
25 was shared by Page, just by virtue of the fact that both of them were involved in running the
26 company. Plaintiffs also point to the statement by the Rhode Island U.S. Attorney that
27 Page "knew what was going on," but again, plaintiffs do not provide any substantive
28 support for their allegation that Page actually knew about the Canadian pharmacy ads. It is

10

true that the U.S. Attorney stated that his assertion was based on "documents [they] reviewed" and "witnesses [they] interviewed." However, in order to raise a reasonable doubt that Page was "disinterested," plaintiffs must do more than rely on those vague descriptions of evidence. They must provide actual factual allegations that Page was aware of the illegal ads. Because they have not done so, they have not shown that Page faced a substantial likelihood of liability, and thus they have not adequately alleged that Page was "interested."

Plaintiffs' allegations as to Brin are even thinner. Plaintiffs rely solely on the fact that Brin, together with Schmidt and Page, "operate the company collectively" and "consult extensively with each other." If those allegations were enough, then every inside director in every shareholder derivative case would be deemed "interested." Plaintiffs argue that Schmidt was "obligated by Google's code of conduct to inform the entire board, including Brin, about relevant issues that could detrimentally impact Google's customers and shareholders," but provide no reason to believe that Schmidt actually did inform Brin of the Canadian pharmacy issue.

Overall, plaintiffs have adequately alleged (for pleading purposes) that Schmidt was interested, but have not done so for either Brin or Page. And, in contrast to the original complaint, plaintiffs do not allege that any of the outside directors were interested. Thus, as to the "disinterested" prong of the demand futility analysis, plaintiffs have made adequate allegations as to only one of the nine board members. In order to show demand futility, they need to adequately allege that at least four of the directors were not independent.

A director is "independent" when his or her decision is based on "the corporate merits of the subject before the board" rather than on "extraneous considerations or influences." Aronson v. Lewis, 473 A.2d 805, 816 (Del. 1983). When lack of independence is charged, the plaintiff must allege particularized facts "show[ing] that the Board is either dominated by an officer or director who is the proponent of the challenged transaction or that the Board is so under his influence that its discretion is 'sterilize[d].'" Levine v. Smith,

11

591 A.2d 194, 205 (Del. 1991), overruled on other grounds, 746 A.2d 244 (Del. 2000). If a director is considered "controlled" by another, he or she is lacking in the independence necessary to consider the challenged transaction objectively.

A "controlled" director is one who is dominated by another party, whether through close personal or familial relationship or through force of will. A director may also be considered "controlled" if he or she is beholden to the allegedly controlling entity, as when the entity has the direct or indirect unilateral power to decide whether the director continues to receive a benefit upon which the director is so dependent or is of such subjective material importance that its threatened loss might create a reason to question whether the director is able to consider the corporate merits of the challenged transaction objectively. See Telxon Corp. v. Meyerson, 802 A.2d 257, 264 (Del. 2002).

Plaintiffs address the outside directors first, and argue that the court has already found that four of them (Hennessy, Shriram, Tilghman, and Doerr) lacked independence. See Dkt. 50. However, the court found only that the four directors were not independent from Page, Brin, and Schmidt taken together, and did not address whether the outside directors were independent from individual interested directors. In fact, the court previously found that plaintiffs had not adequately alleged that any of the inside directors were interested. But as discussed above, plaintiffs' amended complaint does now adequately allege that Schmidt was "interested." Thus, the next question is whether any of the outside directors were not independent of Schmidt.

As to Hennessy and Shriram, the court's previous finding of non-independence was based on the fact that they "have executive positions at Stanford University," where Page and Brin are alumni, and that "Stanford has received over $14.4 million from Google since 2006." While that would be sufficient to raise a reasonable doubt that Hennessy and Shriram were independent from Page and Brin, it is not enough to raise a reasonable doubt that Hennessy and Shriram were independent from Schmidt, the only interested director. Thus, for demand futility purposes, plaintiffs have not adequately alleged that Hennessy and Shriram were controlled by an interested director, and thus they are considered

12

"independent."

As to Doerr, the court's previous finding of non-independence was based on his having "obtained investments from Google for private companies in which his own venture capital firm is a major investor, which relationship has resulted in actual profits for Doerr's venture capital firm." Dkt. 50 at 15. Because Brin, Page, and Schmidt – taken together – had the ability to withhold further investments, the court found that plaintiffs had raised a reasonable doubt that Doerr was independent from them. However, plaintiffs have provided no reason why Doerr would lack independence from Schmidt individually. Thus, plaintiffs have not adequately alleged that Doerr was controlled by an interested director, and he is considered "independent" for demand futility purposes.

As to Tilghman, the court's previous finding of non-independence was based on her position as president of Princeton University, where Schmidt is an alumnus "who created a $25 million endowment fund, and was a former trustee who exercised control over Tilghman's compensation and employment." Dkt. 50 at 15. Thus, plaintiffs have adequately raised a reasonable doubt that Tilghman was independent from an interested director.

Aside from the allegations related to the outside directors, plaintiffs also claim that the three inside directors (Page, Brin, and Schmidt) lack independence. Plaintiffs appear to argue that all three lack independence from each other "because of their controlling position at the company." Plaintiffs also point to the NASDAQ listing rules, which state that Schmidt, Page, and Brin are not independent. However, those NASDAQ rules define "independent" completely differently, and characterize any officer or employee of a company as "not independent." In other words, under the NASDAQ standard, any inside director would be considered "not independent." This is not the applicable standard for analyzing demand futility. And as before, the only relevant question here is whether Page and Brin are independent from Schmidt, as Schmidt is the only director who can be considered "interested." As explained above, Schmidt owns only 9.5% of the company, whereas Page and Brin together own over 50%. While it may be true that Schmidt is not

13

independent from Page and Brin, these holdings provide no basis to believe that Page and Brin are not independent from Schmidt. Plaintiffs essentially concede this argument, and base their independence allegations on the fact that Page and Brin, together, own a controlling share of the company. But, since Page and Brin are not sufficiently "interested," Schmidt's lack of independence is irrelevant. Thus, the court finds that plaintiffs have not adequately alleged that any of the inside directors are "not independent" for demand futility purposes.

In all, the court finds plaintiffs' allegations to be sufficient to show that one director (Schmidt) is "interested," and one director (Tilghman) lacks independence. Plaintiffs thus fall short of creating a reasonable doubt that a majority (i.e., five) of the directors could have exercised its disinterested and independent business judgment in responding to a demand. Accordingly, plaintiffs cannot establish demand futility, and defendants' motion to dismiss is GRANTED. The court does not reach the merits of plaintiffs' three causes of action.

However, at the hearing, plaintiffs notified the court that the records from a recent Delaware case, involving similar allegations, had been unsealed. Thus, plaintiffs claim that, if given an opportunity to amend, they would be able to allege additional facts supporting their demand futility argument. Based on that representation, the court does find that leave to amend is warranted.

C.  Conclusion

For all the foregoing reasons, defendants' motion to dismiss is GRANTED. Leave to amend is also granted, with respect to the deficiencies specifically enumerated herein. No new claims or parties may be added without leave of court. Plaintiffs' amended complaint shall be filed no later than **October 24, 2013**, and defendants' response thereto shall be filed no more than 28 days thereafter.

Defendants' corresponding request for judicial notice is also GRANTED.

**IT IS SO ORDERED.**

Dated: September 26, 2013

_____
PHYLLIS J. HAMILTON
United States District Judge