Darren T. Kaplan, admitted *pro hac vice*
CHITWOOD HARLEY HARNES LLP
1350 Broadway, Suite 908
New York, New York 10018
Tel.: (917) 595-4600
Fax: (404) 876-4476
DKaplan@chitwoodlaw.com

Peter Koenig (CA SBN 132437)
WALKER, HAMILTON & KOENIG LLP
50 Francisco Street, Suite 460
San Francisco, CA 94133
Tel.: (415) 986-3339
Fax: (415) 986-16180.
Email: peter@whk-law.com

*Attorneys for Intervenor Plaintiff
DeKalb County Pension Fund*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: GOOGLE, INC., SHAREHOLDER DERIVATIVE LITIGATION<br><br>This Document Relates to:<br><br>All Actions | Case No.: 11-cv-4248-PJH<br><br>**PLAINTIFF DEKALB COUNTY PENSION FUND'S REPLY IN FURTHER SUPPORT OF MOTION FOR LEAVE TO INTERVENE AND TO BE EXCEPTED FROM SEPTEMBER 19, 2011 ORDER APPOINTING LEAD COUNSEL**<br><br>Date: December 4, 2013<br>Time: 9:00 a.m.<br>Judge: The Honorable Phyllis J. Hamilton |

| | |
|---|---|
| 1 | Plaintiff DeKalb County Pension Fund ("the Fund") respectfully submits this reply |
| 2 | memorandum ("Reply") in further support of its October 24, 2013 motion for leave to intervene as |
| 3 | a plaintiff in the above-captioned action and to be excepted from the portion of the Stipulation and |
| 4 | Order Consolidating Actions and Appointing Lead Counsel, entered by this Court on September |
| 5 | 19, 2011, that relates to the appointment of lead counsel for the plaintiffs [Doc. #88] ("Motion to |
| 6 | Intervene" or "Motion"). The Reply is submitted in response to Defendants' Opposition to |
| 7 | DeKalb County Pension Fund's Motion for Leave to Intervene and to be Excepted from September |
| 8 | 19, 2011 Order Appointing Lead Counsel [Doc. #93] ("Defs.' Opp.") and Plaintiffs' Memorandum |
| 9 | of Law in Opposition to Motion of Plaintiff DeKalb County Pension Fund for Leave to Intervene |
| 10 | and to be Excepted from September 19, 2011 Order Appointing Lead Counsel [Doc. #94] ("Pls.' |
| 11 | Opp."). |

## Background

As set forth in its opening brief, the Fund undertook a § 220 books and records action in Delaware beginning on September 12, 2011 and culminating on June 29, 2012, under which the Fund obtained almost a thousand pages of non-public documents notwithstanding extraordinary intransigence and delay by Google, Inc. ("Google"). Drawing on these documents, the Fund crafted a complaint, filed under seal in Delaware on July 12, 2012 (and filed publicly with varying degrees of redactions on July 16, 2012 and February 27, 2013), alleging that Google's top officers and directors knowingly and deliberately breached their fiduciary duties and specifically demonstrating that demand upon Google's Board of Directors to take remedial action for Google against those officers and directors would be futile.

On October 24, 2013, the Fund filed its [Proposed] Verified Shareholder Derivative Complaint in Intervention [Doc. #88-2] ("Intervention Complaint") in this Court simultaneously with its Motion to Intervene. On November 1, 2013, plaintiffs filed their fourth complaint, Plaintiffs' Second Amended Verified Consolidated Shareholder Derivative Complaint [Doc. #92] ("Second Amended Complaint"). As defendants and plaintiffs point out, the "allegations based on documents [the Fund] received from Google as a result of its demand to inspect Google's books

and records pursuant to 8 Del. Corp. Code §220" (Pls.' Opp. at 2, 3), which can be found in the Fund's Intervention Complaint, have also been added to Plaintiffs' Second Amended Verified Consolidated Shareholder Derivative Complaint [Doc. #92] ("Second Amended Complaint"). *See also* Defs.' Opp. at 9.

### Argument

**1. The Fund's Motion to Intervene is Timely**

Defendants and plaintiffs apparently endorse the "race to the courthouse" approach that the Fund resisted, instead having conducted a full investigation which enabled it to assemble a substantive complaint which the Fund believes this Court will sustain. In fact, defendants and plaintiffs now point to the Fund's thorough approach as a basis for attacking its Motion to Intervene as purportedly two years too late. *See* Defs.' Opp. at 7 ("DeKalb's Two Year Delay Was the Product of Its Own Inaction"); Pls.' Opp. at 3 (Fund's Motion "untimely" because "over two years ago this Court considered Lead Plaintiffs' motion for consolidation and their appointment as Lead Plaintiffs[1]").

While plaintiffs in this action assert that they also conducted "thorough research and investigation" before filing their original complaints on August 29, 2011 (Pls.' Opp. at 1), their complaints were filed a mere 5 days after Google's Non-Prosecution Agreement with the Department of Justice was publicly announced on August 24, 2011. When the Fund was making a written demand upon Google for documents and information in mid-September of 2011, the plaintiffs were consumed with getting a counsel leadership order in place rather than pursuing discovery from Google. *See* September 9, 2011 Stipulation and [Proposed] Order Consolidating

---

[1] While plaintiffs now assert that the Stipulation and Order Consolidating Actions and Appointing Lead Counsel [Doc. #15] appointed "***Lead Plaintiffs***," it did not. Along the same lines, plaintiffs assert that "over two years ago this Court considered Lead Plaintiffs' ***motion for*** consolidation and their ***appointment as Lead Plaintiffs***" (emphasis added), when in fact, plaintiffs did not file a motion at all, but simply submitted a Stipulation and [Proposed] Order Consolidating Actions and Appointing Lead Counsel [Doc. #10], seeking appointment of ***lead counsel***. The only basis provided in the Stipulation to support the request for appointment as lead counsel was that counsel for plaintiffs "have met and conferred and agree that the firms the law firms of Robbins Geller Rudman & Dowd LLP, Robbins Umeda LLP and Pomerantz Haudek Grossman & Gross LLP should be appointed lead counsel for plaintiffs in the Actions." *See* Doc. #15. Defendants affirmatively took no position as to the appointment of lead counsel for the plaintiffs. *Id.*

Actions and Appointing Lead Counsel [Doc. #10] and September 19, 2011 Stipulation and Order Consolidating Actions and Appointing Lead Counsel [Doc. #15].  Five weeks after the Stipulation was entered, plaintiffs filed their second complaint, the Verified Consolidated Shareholder Derivative Complaint [Doc. #23].  Apparently disagreeing that plaintiffs had conducted "thorough research and investigation," on May 8, 2012, the Court dismissed the Verified Consolidated Shareholder Derivative Complaint with leave to amend, finding the "allegations are insufficiently particularized to establish demand futility on grounds that a majority of directors faced a 'substantial likelihood' of liability." [Doc. #50, p. 11].  One month later, on June 8, 2012, plaintiffs again filed another complaint, the Amended Verified Consolidated Shareholder Derivative Complaint [Doc. #52], which was dismissed on September 24, 2013 [Doc. #83].  This time, leave to amend was given solely because of the Fund's efforts and success in obtaining documents in Delaware ("However, at the hearing, plaintiffs notified the court that the records from a recent Delaware case, involving similar allegations, had been unsealed.  Thus, plaintiffs claim that, if given an opportunity to amend, they would be able to allege additional facts supporting their demand futility argument.  Based on that representation, the court does find that leave to amend is warranted.").

Regardless, defendants' characterization that the Fund has moved to intervene "after an inexcusable two year delay" is demonstrably false.  Defendants themselves narrate the extensive history of the Fund's efforts in Delaware to secure documents pursuant to 8 Del. C. § 220 from September 12, 2011 through June 29, 2012.  *See* Defs.' Opp. at 3-4 (subsections C and D).  Any delay during this process was a direct result of Google's obstructionist tactics, causing the Fund on multiple occasions to seek court assistance to compel production by Google.[2]  On July 12, 2012, less than two weeks after the § 220 proceedings concluded, the Fund filed its derivative complaint in Delaware using the discovery it had obtained.  The parties briefed and argued the defendants' motion to stay, with those proceedings culminating on February 18, 2013 with the Delaware

---

[2] Google chides the Fund for not moving to "expedite" the § 220 action (Defs.' Opp. at 10), however, a § 220 proceeding, by its very nature, "contemplates expedited discovery and a prompt hearing." *Cutlip v. CBA Int'l, Inc. I*, 14168 NC, 1995 WL 694422 (Del. Ch. Oct. 27, 1995).

court's denial of the Fund's motion for reargument. There was no "inaction" or "inexcusable delay" on the Fund's part.

Similarly, plaintiffs argue that the Motion to Intervene was untimely because the Fund waited 10 months[3] after the Delaware action was stayed before moving. Pls.' Opp. at 3. During that period, however, the defendants' motion to dismiss the plaintiffs' Amended Complaint was already pending, and it would have been inefficient and disruptive for the Fund to attempt to interpose its own complaint while a motion to dismiss the plaintiffs' Amended Complaint was pending.[4] An ideal opportunity to request permission to intervene arose when this Court dismissed the Amended Complaint on September 26, 2013, particularly given that the only reason plaintiffs were afforded yet another chance to amend was because of representations by plaintiffs that the Fund had obtained discovery in Delaware that would help plaintiffs establish demand futility. While defendants and plaintiffs speculate that the Fund could have chosen to intervene earlier (*see* Defs.' Opp. at 7-8; Pls.' Opp. at 3), such speculation does not make the Fund's choice to move now less appropriate.

Defendants also argue the Fund's Motion is untimely because it "seeks to intervene at an advanced stage of these proceedings." Defs.' Opp. at 1, 6, 9. In reality, although over two years have passed, the California action has not advanced at all. Rather, it is entering the motion to dismiss stage for the third time (and for plaintiffs' fourth complaint) with no discovery having been taken so far – in sharp contrast to what the Fund has accomplished during the same time period. It is a perfect time for the Fund to intervene.

///

///

///

---

[3] The Fund does not know how the plaintiffs calculate a 10-month delay. The Fund's Motion and Intervention Complaint were filed on October 24, 2013 – the due date originally set by the Court for the filing of the plaintiffs' second amended complaint (which was later extended until November 1, 2013 by stipulation, *see* Doc. #86). This is approximately 8 months after the Fund's motion for reargument in Delaware was denied on February 18, 2013 and approximately one month after this Court granted Google's motion to dismiss on September 26, 2013.

[4] The defendants' motion to dismiss was ripe as of July 3, 2013, when the Court held oral argument.

### 2. Allowing the Fund to Intervene Would Not Result in Prejudice

#### a. Defendants Do Not Establish Prejudice

Defendants quote *Donahoe v. Arpaio* for the proposition that the "[proposed intervenor's] permissive intervention would cause undue delay because he seeks to reargue issues the Court has already decided." No. CV10-2756 PHX, 2012 U.S. Dist. LEXIS 93497, at *16 (D. Ariz. July 5, 2012). Defs.' Opp. at 9. Here, however, the Fund does not seek to reargue decided issues. Rather, the case is back at the pleading stage, and the Court will ultimately rule on a new motion to dismiss to be filed by defendants.

Defendants argue that allowing the Fund to intervene would force them "to needlessly expend resources defending against duplicate actions." Defs.' Opp. at 9. In reality, intervention by the Fund would not result in duplicate actions, but even if it did, defendants themselves describe the Fund's Intervention Complaint and the plaintiffs' Second Amended Complaint as "substantively identical."[5] *Id.* Defendants do not – because they cannot – establish how responding to "substantively identical" complaints would be prejudicial.

#### b. The Plaintiffs Stand to Gain from Intervention by the Fund

Although plaintiffs assert that the Fund's Motion is "prejudicial" (Pls.' Opp. at 2), but for the Fund's efforts in Delaware, the plaintiffs' case would have been dismissed without leave to amend. Plaintiffs go so far as to assert that the Fund's "duplicative" Intervention Complaint "is identical in nearly every respect to the allegations that are and have been asserted by the Lead Plaintiffs here for more than two years." Pls.' Opp. at 3. An assertion that is flatly contradicted by the new allegations in Plaintiffs' Second Amended Complaint unapologetically cribbed from the Fund's Delaware Complaint and proposed Complaint in Intervention. *See*, *e.g.*, Plaintiffs' Second Amended Complaint ¶¶ 32-65. What is more, the Fund has alleged a *Caremark* claim that plaintiffs are not pursuing. *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996) ("only a sustained or systematic failure of the board to exercise oversight—such as an utter

---
[5] The Fund does not agree with the characterization that the complaints are "substantively identical."

failure to attempt to assure a reasonable information and reporting system exists—will establish the lack of good faith that is a necessary condition to liability").

While the plaintiffs cite a string of cases in which the proposed intervenor had failed to establish its interests would not be adequately protected by an existing party (Pls.' Opp. at 4), the fact that the plaintiffs' case would have been dismissed but for their attempt to appropriate the product of the Fund's efforts as their own conclusively demonstrates the need for the Fund to defend its own interests in this litigation. The Fund should be allowed to participate in defending the new allegations and claims that it has brought to the table.

### 3. The Fund Has Adequately Pleaded Jurisdiction

Paragraph 29 of the Intervention Complaint alleges: "This Court has jurisdiction over this Action pursuant to 28 U.S.C. § 1332 because [the Fund] and Defendants are citizens of different states and the amount in controversy exceeds $75,000." While defendants (Defs.' Opp. at 5 n.7) and plaintiffs (Pls.' Opp. at 2-3) challenge the basis of the Fund's allegation that it and defendants are diverse citizens, they do not assert non-diversity of citizenship among the parties to the Intervention Complaint.[6] As repeatedly emphasized in Plaintiffs' Opposition to Defendants' Motion to Dismiss Amended Verified Consolidated Shareholder Derivative Complaint [Doc. # 62] at 8,[7] 11[8] and 22,[9] the Court must accept as true all of the Intervention Complaint's allegations and the reasonable inferences that logically flow from them, including an allegation of jurisdiction. Jurisdiction is not an impediment to the Intervention Complaint.

---

[6] Regardless, the Fund can easily establish that its citizenship is diverse from defendants' as alleged. The Fund and its counsel represent that it is a citizen of Georgia. Nominal defendant Google and defendants Page, Brin, Schmidt, Hennessy, Shriram are citizens of the State of California. *See* Plaintiffs' Second Amended Complaint [Doc. #92] at ¶¶ 17-22, 24, 25. Defendant Tilghman is a citizen of New Jersey. *Id.* at ¶ 23. On information and belief, defendants Doerr, Otellini and Green are citizens of California, and defendant Mather is an English citizen. Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts. 28 U.S.C.A. § 1653.

[7] Plaintiffs cite *Brehm v. Eisner*, 746 A.2d 244, 255 (Del. 2000).

[8] Plaintiffs cite *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), *Lynch v. Rawls*, 429 Fed. Appx. 641, 644 (9th Cir. 2011), and *In re Taser Int'l S'holder Derivative Litig.*, No. CV-05-123-PHX-SRB, 2006 U.S. Dist. LEXIS 11554, at *23-*24 (D. Ariz. Mar. 17, 2006).

[9] Plaintiffs cite *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## CONCLUSION

For the reasons set forth herein and in the Fund's opening memorandum, the Fund respectfully requests that the Motion to Intervene be granted and that it be afforded the opportunity to defend the Intervention Complaint and/or any allegations derived therefrom.

Dated: November 14, 2013

**WALKER, HAMILTON & KOENIG LLP**

By:    */s/ Peter Koenig*
Peter Koenig (CA SBN 132437)
50 Francisco Street, Suite 460
San Francisco, CA 94133
Tel. (415) 986-3339
Fax: (415) 986-1618
Email: peter@whk-law.com

**CHITWOOD HARLEY HARNES LLP**

Darren T. Kaplan, admitted *pro hac vice*
1350 Broadway, Suite 908
New York, NY 10018
Tel: (917) 595-3600
Fax: (404) 876-4476
dkaplan@chitwoodlaw.com

*Attorneys for Intervenor Plaintiff*
*DeKalb County Pension Fund*