ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
– and –
BENNY C. GOODMAN III (211302)
ERIK W. LUEDEKE (249211)
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
bennyg@rgrdlaw.com
eluedeke@rgrdlaw.com

Counsel for Plaintiffs Patricia H. McKenna,
Avrohom Gallis and James Clem

ABRAHAM, FRUCHTER
  & TWERSKY, LLP
JEFFREY S. ABRAHAM
MITCHELL M.Z. TWERSKY
One Penn Plaza, Suite 2805
New York, NY  10119
Telephone:  212/279-5050
212/279-3655 (fax)
   – and –
IAN D. BERG
TAKEO A. KELLAR
12526 High Bluff Drive, Suite 300
San Diego, CA  92130
Telephone: 858/792-3448
858/792-3449 (fax)

Counsel for Plaintiff City of Orlando Police
Pension Fund

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re GOOGLE INC. SHAREHOLDER DERIVATIVE LITIGATION | ) ) ) |
| This Document Relates To: | ) ) ) |
| ALL ACTIONS. | ) ) |
| CITY OF ORLANDO POLICE PENSION FUND by Its Trustees, derivatively on behalf of GOOGLE INC., | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) |
| LAWRENCE E. PAGE, et al., | ) ) |
| Defendants. | ) ) |
| and | ) ) |
| GOOGLE INC., a Delaware corporation, | ) ) ) |
| Nominal Defendant. | ) ) |

Master File No. CV-11-04248-PJH

Case No. CV-13-02038-PJH

NOTICE OF MOTION AND MOTION FOR
FINAL APPROVAL OF DERIVATIVE
SETTLEMENT AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT
THEREOF

DATE:       January 21, 2015
TIME:        9:00 a.m.
CTRM:      3

989945_1

1

**TABLE OF CONTENTS**

2

**Page**

3 I.    INTRODUCTION ..................................................................................2

4 II.   THE LITIGATION ...............................................................................4

5      A.   Overview of the Actions and Procedural History ......................4

6           1.   Commencement and Consolidation of the Demand Futility Action...........4

7           2.   The Motion to Dismiss the Consolidated Complaint...................................5

8           3.   The Motion to Dismiss the Amended Consolidated Complaint .................5

9           4.   The Motion to Dismiss the Second Amended Complaint .........................6

10          5.   The City of Orlando Police Pension Fund Makes a Demand on Google's Board ........................7

11
12          6.   Formation of the Independent Special Committee and Rejection of the Demand ........................7

13          7.   The Motion to Dismiss the Demand Refused Complaint ...........................8

14          8.   The Motion for Summary Judgment ..................................9

15     B.   Settlement Negotiations ............................................................9

16     C.   Approval of the Settlement by a Committee of Independent Google Directors........................10

17
18     D.   Preliminary Approval and Notice to Shareholders ...............10

19 III.  THE STANDARDS FOR JUDICIAL APPROVAL OF A DERIVATIVE SETTLEMENT..........................11

20 IV.   THE SETTLEMENT IS AN OUTSTANDING RESULT FOR GOOGLE AND SHOULD BE APPROVED .......................12

21     A.   The Settlement Confers a Substantial Benefit upon Google ................................12

22     B.   The Risks of Establishing Liability.......................................14

23     C.   The Settlement Was Negotiated by the Parties with a Thorough Understanding of the Strengths and Weaknesses of the Parties' Respective Positions........................17

24
25     D.   The Complexity, Expense, and Duration of Continued Litigation ......................18

26     E.   The Experience and Views of Counsel Favor Approval ......................19

27 V.    THE NEGOTIATED AMOUNT OF ATTORNEYS' FEES AND EXPENSES SHOULD BE APPROVED ......................19

28

989945_1

NOTICE OF MOT AND MOT FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF - CV-11-04248-PJH AND CV 13-02038-PJH        - i -

1

2                                                                                               **Page**

3
VI.     CONCLUSION...............................................................................................................21
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOT AND MOT FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND
MEMORANDUM IN SUPPORT THEREOF - CV-11-04248-PJH AND CV 13-02038-PJH

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*Aronson v. Lewis*,
473 A.2d 805 (Del. 1984) .......................................................................................15

5

6

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610 (N.D. Cal. 1979) ........................................................................17

7

*Brazen v. Bell Atl. Corp.*,
695 A.2d 43 (Del. 1997) .........................................................................................15

8

9

*City of Westland Police & Fire Ret. Sys. v. Stumpf*,
No. 3:11-cv-02369-SI, slip op.
(N.D. Cal. July 25, 2014) ..................................................................................13, 20

10

11

*Cohn v. Nelson*,
375 F. Supp. 2d 844 (E.D. Mo. 2005)................................................................11, 18

12

13

*Copeland v. Lane*,
No. 5:11-cv-01508 EJD, 2012 U.S. Dist. LEXIS 146815
(N.D. Cal. Oct. 10, 2012) ........................................................................................15

14

15

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*,
661 F.2d 939 (9th Cir. 1981) ...................................................................................12

16

17

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975)................................................................................14, 17

18

19

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) .................................................................................................20

20

21

*In re Extreme Networks, Inc. S'holder Derivative Litig.*,
No. C-07-02268-RMW, slip op.
(N.D. Cal. July 15, 2011) .........................................................................................20

22

23

*In re F5 Networks, Inc. Derivative Litig.*,
No. C06-794-RSL, slip op. (W.D. Wash. Jan. 6, 2011) ....................................20, 21

24

25

*In re KB Home S'holder Derivative Litig.*,
No. 2-06-cv-05148-FMC-CTx, slip op.
(C.D. Cal. Feb. 9, 2009).........................................................................................20

26

27

*In re KLA-Tencor Corp. S'holder Derivative Litig.*,
No. C-06-03445-JW, slip op.
(N.D. Cal. May 26, 2010) .......................................................................................20

28

NOTICE OF MOT AND MOT FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND
MEMORANDUM IN SUPPORT THEREOF - CV-11-04248-PJH AND CV 13-02038-PJH          - iii -

1

2                                                                                    **Page**

3

*In re McAfee, Inc. Derivative Litig.*,
    No. 5:06-cv-03484-JF, slip op.
    (N.D. Cal. Feb. 2, 2009).........................................................................................20

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ..........................................................................17, 18

*In re NVIDIA Corp. Derivative Litig.*,
    No. C-06-06110-SBA (JCS), 2009 U.S. Dist. LEXIS 24973
    (N.D. Cal. Mar. 18, 2009)..............................................................................11, 13

*In re NVIDIA Corp. Derivative Litig.*,
    No. C-06-06110-SBA (JCS), slip op.
    (N.D. Cal. Dec. 22, 2008) ....................................................................................13

*In re Oclaro, Inc. Derivative Litigation*,
    No. C-11-3176 EMC, 2014 U.S. Dist. LEXIS 132084
    (N.D. Cal. Sept. 19, 2014) ....................................................................................11

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ............................................................................14, 18

*In re Walt Disney Co. Derivative Litig.*,
    907 A.2d 693 (Del. Ch. 2005), *aff'd*,
    906 A.2d 27 (Del. 2006) .......................................................................................15

*Maher v. Zapata Corp.*,
    714 F.2d 436 (5th Cir. 1983) ................................................................................21

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970)...............................................................................................20

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ......................................................................... *passim*

*Scattered Corp. v. Chicago Stock Exch.*,
    701 A.2d 70 (Del. 1997) ........................................................................................15

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ............................................................................11, 12

*Unite Nat'l Ret. Fund v. Watts*,
    No. 04-cv-3603 (DMC), 2005 U.S. Dist. LEXIS 26246
    (D.N.J. Oct. 28, 2005).....................................................................................13, 20

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOT AND MOT FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND
MEMORANDUM IN SUPPORT THEREOF - CV-11-04248-PJH AND CV 13-02038-PJH
                                                                                    - iv

1

2                                                                                              **Page**

3    **STATUTES, RULES AND REGULATIONS**

4    Federal Rules of Civil Procedure

5         Rule 23.1(c)..................................................................................................................11, 16

6         Rule 56(d) ......................................................................................................................9, 16

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOT AND MOT FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND
MEMORANDUM IN SUPPORT THEREOF - CV-11-04248-PJH AND CV 13-02038-PJH                    - v -

1    TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

2        PLEASE TAKE NOTICE that on January 21, 2015, at 9:00 a.m., or as soon thereafter as the

3    matter may be heard, Plaintiffs Avrohom Gallis, Patricia H. McKenna, James Clem, and the City of

4    Orlando Police Pension Fund (on behalf of themselves and derivatively on behalf of Google Inc.)

5    ("Plaintiffs"), will move the Honorable Phyllis J. Hamilton, United States District Judge, at the

6    United States District Court, Northern District of California, Oakland Division, 1301 Clay Street,

7    Courtroom 3, Oakland, California 94612, to grant final approval of the proposed settlement in *In re*

8    *Google Inc. Shareholder Derivative Litigation*, Master File No. CV-11-04248-PJH (the "Demand

9    Futility Action") and *City of Orlando Police Pension Fund v. Page, et al.*, Case No. CV-13-02038-

10   PJH (the "Demand Refused Action")[1], on the terms set forth in the August 7, 2014 Stipulation of

11   Settlement ("Stipulation" or "Settlement"), which was previously filed with the Court.  Dkt. No. 134.

12       The Motion is based on the following Memorandum of Points and Authorities in Support of

13   Motion for Final Approval of Derivative Settlement ("Memorandum"), the Stipulation, the Joint

14   Declaration of Benny C. Goodman III and Ian D. Berg in Support of Final Approval of Derivative

15   Settlement ("Joint Decl."), the Declaration of Ellen Gusikoff Stewart in Support of Final Approval

16   of Derivative Settlement ("Stewart Decl."), the Declaration of Layn R. Phillips in Support of

17   Derivative Settlement ("Phillips Decl."), the Joint Declaration of Benny C. Goodman III and Travis

18   E. Downs III Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Motion for

19   Final Approval of Derivative Settlement ("RGRD Decl."), the Declaration of Marc I. Gross Filed on

20   Behalf of Pomerantz LLP in Support of Derivative Settlement ("Pomerantz Decl."), the Declaration

21   of Felipe J. Arroyo Filed on Behalf of Robbins Arroyo LLP in Support of Motion for Final Approval

22   of Derivative Settlement ("Arroyo Decl."), the Declaration of Jeffrey S. Abraham Filed on Behalf of

23   Abraham, Fruchter & Twersky, LLP in Support of Derivative Settlement ("Abraham Decl."), and

24   such additional evidence or argument as may be required by the Court.

25

26

27   _____
[1]      Together the Demand Futility Action and the Demand Refused Action are referred to as the
28   "Actions."

NOTICE OF MOT AND MOT FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND
MEMORANDUM IN SUPPORT THEREOF - CV-11-04248-PJH AND CV 13-02038-PJH          - 1 -

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

This Memorandum is submitted in support of final approval of the Settlement of the derivative claims brought on behalf of Google Inc. ("Google" or the "Company") against certain of its current and former officers and directors.[2]  The Settlement represents an outstanding resolution of a highly complex case for Google, and is the product of Plaintiffs' vigorous prosecution of the Actions and arm's-length negotiations with Google, acting by and through the independent directors of the Google Board of Directors ("Independent Directors"), with the assistance of the Honorable Layn R. Phillips, United States District Court Judge (Ret.), a highly experienced mediator.

The Settlement confers a substantial benefit to Google, on whose behalf the Actions were brought.  First, upon final approval of the Settlement, Google shall adopt and implement the User Safety Initiative ("USI"), which is designed to disrupt the illegal and unsafe operations of rogue online pharmacies.  Stipulation, ¶2.2.  The USI will proactively leverage Google's expertise in policy enforcement, and through which the Company will work closely with the industry, non-profits, non-governmental organizations ("NGOs"), regulators, and law enforcement, to prevent the wrongful actions of rogue online pharmacies who abuse Google's advertising and related platforms to operate.

More particularly, under the USI's mission, Google shall focus on (i) building relationships with entities globally to take meaningful steps to frustrate business operations of rogue online pharmacy networks and expand the reach of drug abuse prevention messaging organizations; (ii) continuing to make proactive referrals to trusted partners and law enforcement entities best positioned to take meaningful action aimed at frustrating the operations of the largest rogue online pharmacy networks; (iii) improving visibility of relevant and reliable educational content regarding prescription drug abuse prevention and intervention, and to assist trusted organizations operating in these areas (*e.g.*, Drugfree.org) with marketing efforts; (iv) educating partners on best practices for collaborating with industry and law enforcement so as to holistically frustrate the business operations

---

[2]   All capitalized terms not defined herein shall have the same meaning as set forth in the Stipulation.

989945_1

NOTICE OF MOT AND MOT FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF - CV-11-04248-PJH AND CV 13-02038-PJH   - 2 -

1  of rogue online pharmacy networks; and (v) regularly testing policy enforcement systems to identify

2  and remedy potential ways rogue online pharmacies might seek to evade those systems. Stipulation,

3  ¶2.2.

4         Second, upon final approval of the Settlement, Google shall adopt and maintain certain

5  corporate governance reforms designed to enhance the Google Board of Directors' monitoring of

6  and response to legal and compliance issues and shareholder concerns relating to rogue online

7  pharmacies who potentially pose a threat to users of Google services. *Id.*, ¶¶2.3-2.6. Plaintiffs

8  respectfully submit that the Settlement is an outstanding result. In connection with the settlement of

9  the Actions, $250 million in funding will be provided for the USI and other measures designed to

10  frustrate rogue online pharmacies and enhance Google's monitoring of and response to legal and

11  compliance issues and shareholder concerns relating to rogue online pharmacies who potentially

12  pose a threat to users of Google services. *Id.*, ¶2.5.

13        As reflected by the resolutions of the independent Special Committee, the Settlement is also

14  firmly supported by the Independent Directors:

15        WHEREAS, the independent directors therefore believe the User Safety Initiative
        will substantially benefit Google and its shareholders, particularly with regard to
16        Google's endeavor to frustrate the efforts of certain parties who engage in illegal and
        dangerous online activities;

17                              *      *      *

18
        RESOLVED, that, in the exercise of their business judgment, the independent
19        directors approve the settlement, and each of its terms, including the attorneys' fees
        and expenses, as memorialized in the Stipulation as being in the best interests of
20        Google and its shareholders, and authorize and direct each of the officers of Google
        to take such actions as to cause the Settlement to receive final approval by the
21        Federal Court.

22  *See* Exhibit B to the Declaration of Elizabeth C. Peterson in Support of Settlement ("Peterson

23  Decl."), Dkt. No. 149; *see also* Peterson Decl., Ex. A (authorizing Special Committee "to review and

24  approve or reject the terms of any settlement of any shareholder claims in connection with the NPA"

25  on behalf of the Google Board). These substantial benefits conferred on Google support final

26  approval of the Settlement. After negotiating the material terms of the Settlement, Plaintiffs'

27  Counsel and Google, through its counsel, with the assistance of Judge Phillips, negotiated the

28  amount of attorneys' fees and expenses to be paid to Plaintiffs' Counsel. A committee comprised of

1   the Independent Directors thereafter approved all of the terms of the Settlement.[3]   As a result of

2   those negotiations, Google has agreed to pay Plaintiffs' Counsel $9.9 million in recognition of the

3   substantial benefits conferred upon the Company.  Stipulation, ¶5.1; Phillips Decl., ¶7.

4          In sum, the Settlement confers substantial benefits upon Google and should be approved in

5   its entirety.

6   **II.      THE LITIGATION**

7          **A.      Overview of the Actions and Procedural History**

8          The Actions allege that Google allowed foreign online pharmacies to place advertisements

9   that violated federal laws on Google's advertising platform.  The Actions further assert that Google's

10  alleged violation of federal law regarding the foreign online pharmacy ads caused the Company to

11  enter into a Non-Prosecution Agreement (NPA) with the U.S. Department of Justice ("DOJ")

12  whereby Google allegedly admitted to wrongful conduct related to the placement of advertisements

13  by foreign online pharmacies on Google's advertising platform.   As a result of these alleged

14  advertising practices at Google, Plaintiffs allege that the Settling Defendants breached their fiduciary

15  duty of loyalty and/or duty of care owed to Google and its stockholders.  Joint Decl., ¶9.

16          **1.      Commencement and Consolidation of the Demand Futility
                    Action**
17

18          The first derivative action addressing the foreign pharmacy ads generated on Google's

19  advertising platform was filed on August 29, 2011, in the United States District Court for the

20  Northern District of California (the "Court").  Thereafter, two additional actions were filed in the

21  Court containing similar allegations.  All three actions alleged, among other things, that a pre-suit

22  demand upon the Google Board of Directors (the "Google Board") was futile and excused as a

23  matter of law.  On September 19, 2011, the Court issued an order consolidating these derivative

24  actions.  Joint Decl., ¶10.

25

26

27

28  [3]    The independent committee is comprised of Google directors Diane B. Greene and Ann Mather.

989945_1

NOTICE OF MOT AND MOT FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND
MEMORANDUM IN SUPPORT THEREOF - CV-11-04248-PJH AND CV 13-02038-PJH          - 4 -

2.      **The Motion to Dismiss the Consolidated Complaint**

On October 24, 2011, the Demand Futility Plaintiffs filed a Verified Consolidated Shareholder Derivative Complaint ("Consolidated Complaint").  In the Consolidated Complaint, the Demand Futility Plaintiffs asserted claims on behalf of Google against defendants Larry Page, Sergey Brin, Eric E. Schmidt, L. John Doerr, John L. Hennessy, Paul S. Otellini, K. Ram Shriram, Shirley M. Tilghman, Nikesh Arora, and Patrick Pichette (together, the "Individual Defendants") for breach of fiduciary duty, abuse of control, corporate waste, and unjust enrichment.  Joint Decl., ¶11.

On December 14, 2011, the Individual Defendants and Nominal Party Google filed a Motion to Dismiss the Consolidated Complaint.  In the Motion to Dismiss, the Individual Defendants and Google argued, among other things, that the Consolidated Complaint failed to adequately plead that a pre-suit demand upon the Google Board was futile.  They further argued that the Consolidated Complaint failed to state any actionable claim for relief under the applicable laws.  *Id.*, ¶13.

On February 14, 2012, the Demand Futility Plaintiffs filed an Opposition to the Motion to Dismiss the Consolidated Complaint.  In their opposition, the Demand Futility Plaintiffs argued, among other things, that the Consolidated Complaint pleaded, with particularity, facts sufficient to excuse a pre-suit demand upon the Google Board.  The Demand Futility Plaintiffs further argued that the facts alleged in the Consolidated Complaint stated actionable claims for relief against the Individual Defendants.  *Id.*, ¶15.

On May 8, 2012, after hearing oral argument, the Court issued an order granting the Motion to Dismiss the Consolidated Complaint.  The Court also granted the Demand Futility Plaintiffs leave to file an amended complaint.

3.      **The Motion to Dismiss the Amended Consolidated Complaint**

On June 8, 2012, the Demand Futility Plaintiffs filed an Amended Verified Consolidated Shareholder Derivative Complaint ("Amended Consolidated Complaint").   The Amended Consolidated Complaint included, among other things, additional facts alleging why a pre-suit demand upon the Google Board was futile and, therefore, excused.  The Amended Consolidated Complaint did not name Nikesh Arora or Patrick Pichette as defendants, but asserted claims on behalf of Google against defendants Larry Page, Sergey Brin, Eric E. Schmidt, L. John Doerr, John

1   L. Hennessy, Paul S. Otellini, K. Ram Shriram, and Shirley M. Tilghman (together, the "Demand

2   Futility Defendants") for breach of fiduciary duty and other claims.  Joint Decl., ¶18.

3          On July 6, 2012, the Demand Futility Defendants and Google filed a Motion to Dismiss the

4   Amended Consolidated Complaint.  In their dismissal motion, the Demand Futility Defendants and

5   Google argued that, despite the additional facts, the Amended Consolidated Complaint failed to

6   adequately allege that a pre-suit demand upon the Google Board was excused.  The Demand Futility

7   Defendants and Google further argued that, even if a pre-suit demand was futile, the Amended

8   Consolidated Complaint still must be dismissed for failure to state any actionable claim for relief.

9   *Id.*, ¶20.

10         On August 10, 2012, the Demand Futility Plaintiffs filed an Opposition to the Motion to

11  Dismiss the Amended Consolidated Complaint.  In their opposition, the Demand Futility Plaintiffs

12  argued, among other things, that the Motion to Dismiss the Amended Consolidated Complaint

13  should be denied because the Amended Consolidated Complaint set forth facts sufficient to excuse a

14  pre-suit demand upon the Google Board.  The Demand Futility Plaintiffs also articulated why the

15  Amended Consolidated Complaint stated actionable claims for breach of fiduciary duty and other

16  relief.  *Id.*, ¶21.

17         On July 3, 2013, the Court heard oral argument on the Motion to Dismiss the Amended

18  Consolidated Complaint.  On September 26, 2013, the Court issued an order granting the Motion to

19  Dismiss the Amended Consolidated Complaint with leave to amend.

20              **4.       The Motion to Dismiss the Second Amended Complaint**

21         On November 1, 2013, the Demand Futility Plaintiffs filed a Second Amended Verified

22  Consolidated Shareholder Derivative Complaint ("Second Amended Complaint").  The Second

23  Amended Complaint included additional facts concerning the reasons why a pre-suit demand upon

24  the Google Board was futile.  The Second Amended Complaint also asserted claims for relief against

25  the Demand Futility Defendants for, among other things, breach of fiduciary duty.  Joint Decl., ¶25.

26         On December 6, 2013, the Demand Futility Defendants and Google filed a Motion to

27  Dismiss the Second Amended Complaint.  In their Motion to Dismiss the Second Amended

28  Complaint, the Demand Futility Defendants and Google once again argued that the Demand Futility

Action must be dismissed because the Demand Futility Plaintiffs had not made a pre-suit demand upon the Google Board.  The Demand Futility Defendants and Google further argued that the Second Amended Complaint was defective because it failed to allege facts that stated any actionable claim for relief.  *Id.*, ¶26.

On January 16, 2014, the Demand Futility Plaintiffs filed an Opposition to the Motion to Dismiss the Second Amended Complaint.  In their opposition, the Demand Futility Plaintiffs argued that the particularized facts contained in the Second Amended Complaint excused a pre-suit demand upon the Google Board, and stated actionable claims for relief for breach of fiduciary duty, unjust enrichment, and corporate waste.  *Id.*, ¶27.

On March 5, 2014, the Court heard oral argument on the Motion to Dismiss the Second Amended Complaint.  At the conclusion of the hearing, the Court took the Motion to Dismiss the Second Amended Complaint under submission.  Following the March 5, 2014 hearing, the parties agreed to stay the proceedings to permit the parties to participate in private mediation.  *Id.*, ¶29.

### 5. The City of Orlando Police Pension Fund Makes a Demand on Google's Board

On January 13, 2012, the City of Orlando Police Pension Fund ("Demand Refused Plaintiff" or "Orlando Pension Fund") by its attorneys Abraham, Fruchter & Twersky, LLP ("AF&T" or "Demand Refused Counsel"), served a written demand for action ("Demand") upon the Google Board.  In the Demand, the Orlando Pension Fund demanded, among other things, that the Google Board investigate and bring legal action against defendants Larry Page, Sergey Brin, Eric E. Schmidt and the other executives accountable for permitting foreign online pharmacies to place advertisements that violated federal laws on Google's advertising platform, which allegedly resulted in, *inter alia*, the Company entering into the NPA.  Joint Decl., ¶30.

### 6. Formation of the Independent Special Committee and Rejection of the Demand

On April 11, 2012, in response to the Demand, the Google Board established an independent Special Committee to conduct an investigation and consider the facts and circumstances of the allegations contained in the Demand.  The Google Board determined that Directors Diane B. Greene

1   and Ann Mather were capable of competently and impartially considering the Demand and

2   designated them as the members of the Special Committee.  Joint Decl., ¶31.

3        Between approximately May 2012 and December 2012, the Special Committee and its

4   retained counsel conducted an investigation into the matters set forth in the Demand.  On January 28,

5   2013, after considering the findings and conclusions of the investigation, counsel for the Special

6   Committee notified Orlando Pension Fund of the Google Board's decision to refuse the Demand,

7   and not to pursue any of the claims alleged in the Demand.  *Id.*, ¶32.

8                    **7.      The Motion to Dismiss the Demand Refused Complaint**

9        On May 2, 2013, the Orlando Pension Fund commenced an action in the United States

10  District Court for the Northern District of California with the filing of a shareholder derivative

11  complaint alleging, among other things, that Google's Board has improperly and unreasonably

12  refused the Demand (the "Demand Refused Complaint").  In the Demand Refused Complaint, the

13  Orlando Pension Fund asserted claims on behalf of Google against Larry Page, Sergey Brin, Eric E.

14  Schmidt, L. John Doerr, John L. Hennessy, Ann Mather, Paul S. Otellini, K. Ram Shriram and

15  Shirley M. Tilghman (together, the "Demand Refused Defendants") for breach of fiduciary duty in

16  connection with Google's acceptance of advertisements by foreign online pharmacies that did not

17  comply with certain federal laws.  Joint Decl., ¶33.

18       On May 22, 2013, Google and the Demand Refused Defendants filed a Motion to Dismiss

19  the Demand Refused Complaint.  In their Motion to Dismiss, the Demand Refused Defendants and

20  Google argued that the Demand Refused Plaintiff failed to allege either that the refusal was wrongful

21  or that the Google Board did not conduct its investigation of the claims in the Demand reasonably

22  and in good faith.  On June 21, 2013, the Demand Refused Plaintiff filed an Opposition to the

23  Motion to Dismiss the Demand Refused Complaint.  A hearing on the motion was conducted on July

24  24, 2013.  *Id.*, ¶34.

25       On September 26, 2013, the Court denied the Motion to Dismiss the Demand Refused

26  Complaint.

27

28

### 8.      The Motion for Summary Judgment

Google and the Demand Refused Defendants filed a Motion for Reconsideration, which they withdrew after a lengthy Case Management Conference with the Court, and then on November 1, 2013, Google and the Demand Refused Defendants filed a Motion for Summary Judgment.  On November 8, 2013, the parties met and conferred as to discovery topics and categories sought by the Demand Refused Plaintiff.  In response to the Demand Refused Plaintiff's requests, Google produced certain responsive documents, including relevant Board minutes and Special Committee documents.  Joint Decl., ¶¶36-37.

On December 18, 2013, the Demand Refused Plaintiff filed an Opposition to the Motion for Summary Judgment and, in the alternative, sought a continuance of the Court's ruling on the Motion for Summary Judgment until the Demand Refused Plaintiff had the opportunity to take sufficient discovery needed for opposing the summary judgment motion by filing of an affidavit pursuant to Federal Rule of Civil Procedure 56(d).  *Id.*, ¶38.

The Court heard oral argument on the Motion for Summary Judgment and on the Demand Refused Plaintiff's request for a continuance under Federal Rule of Civil Procedure 56(d) on January 29, 2014.  Following the hearing, the parties agreed to stay the proceedings to permit the parties to participate in private mediation.  *Id.*, ¶39.

### B.      Settlement Negotiations

Beginning in March 2014, representatives of the Settling Parties commenced negotiations regarding possible resolution of the Actions.[4]  Ultimately, the Settling Parties engaged in a formal mediation process before the Honorable Layn R. Phillips, United States District Court Judge (Ret.).  In advance of the mediation before Judge Phillips, the parties engaged in significant preparation in order to increase the likelihood of a productive session.  Among other things, the parties engaged in several pre-mediation conferences in an effort to narrow the open issues.  Plaintiffs' substantial research, including the significant pre-mediation conferences, ultimately led to the parties'

---

[4]    The parties previously mediated these actions on November 13, 2012 before Eric D. Green of Resolutions, LLC.  Joint Decl., ¶40.

preparation and exchange of mediation statements outlining each of their positions and goals for the mediation.

On May 21, 2014, Judge Phillips held an all-day, in-person mediation session in New York. As a result of arm's-length settlement negotiations, the Settling Parties reached an agreement-in-principle for the resolution of the Actions.

## C.      Approval of the Settlement by a Committee of Independent Google Directors

On August 4, 2014, the Independent Directors of the Google Board, Diane B. Greene and Ann Mather, in exercising their business judgment, unanimously approved the Settlement and each of its terms. The resolutions of the independent Special Committee reflecting the Independent Directors approval of the proposed Settlement states, in relevant part, as follows:

> WHEREAS, these independent directors have carefully reviewed the terms of the Settlement, as memorialized in the Stipulation, and have been advised regarding the same by independent counsel;
>
> *       *       *
>
> WHEREAS, the independent directors acknowledge that the User Safety Initiative is an innovative program aimed at disrupting the operations of rogue pharmacies online, by proactively leveraging Google's expertise in policy enforcement, and working closely with industry, non-profits, NGOs, regulators, and law enforcement, to increasingly and more holistically make it difficult for rogue online pharmacies who abuse Google's systems to operate;
>
> *       *       *
>
> RESOLVED, that, in the exercise of their business judgment, the independent directors approve the settlement, and each of its terms, including the attorneys' fees and expenses, as memorialized in the Stipulation as being in the best interests of Google and its shareholders, and authorize and direct each of the officers of Google to take such actions as to cause the Settlement to receive final approval by the Federal Court.

*See* Peterson Decl., Ex. B.

## D.      Preliminary Approval and Notice to Shareholders

On November 6, 2014, the Court granted preliminary approval of the Settlement, authorized Notice of Proposed Derivative Settlement ("Notice") to Google shareholders, and set January 21, 2015 as the hearing date for final approval of the Settlement. Dkt. No. 147. The Notice was filed with the SEC via Form 8-K on November 17, 2014 and posted on the Company's website along with

989945_1

NOTICE OF MOT AND MOT FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND
MEMORANDUM IN SUPPORT THEREOF - CV-11-04248-PJH AND CV 13-02038-PJH                   - 10 -

the Summary Notice.  The Summary Notice was published over the course of 30 days in *Investor's Business Daily* beginning on November 20, 2014.  *See* Stewart Decl., Ex. 9.

## III.   THE STANDARDS FOR JUDICIAL APPROVAL OF A DERIVATIVE SETTLEMENT

"There is a strong policy favoring compromises that resolve litigation, and case law in the Ninth Circuit reflects that strong policy."  *In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA (JCS), 2009 U.S. Dist. LEXIS 24973, at *6 (N.D. Cal. Mar. 18, 2009) (Stewart Decl., Ex. 1). The "'[s]ettlements of shareholder derivative actions are particularly favored because such litigation "is notoriously difficult and unpredictable.'"''  *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (citations omitted).

Federal Rule of Civil Procedure 23.1 governs a district court's analysis of the fairness of a settlement of a shareholder derivative action.  Under Rule 23.1, a derivative action "may be settled, voluntarily dismissed, or compromised only with the court's approval.  Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders."  Fed. R. Civ. P. 23.1(c).

The Ninth Circuit has provided factors which may be considered in evaluating the fairness of a class action settlement, some of which are applicable to a derivative settlement:

> The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).  *See also In re Oclaro, Inc. Derivative Litigation*, No. C-11-3176 EMC, 2014 U.S. Dist. LEXIS 132084, at *4 (N.D. Cal. Sept. 19, 2014) ("A 'principal factor to consider' is the benefit to [the Company], on whose benefit the derivative suit was brought, 'as compared to the risks posed by derivative litigation.'") (citation omitted).  The Ninth Circuit, however, has cautioned that:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits.  Neither the trial court nor this court is to reach any ultimate

989945_1

NOTICE OF MOT AND MOT FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF - CV-11-04248-PJH AND CV 13-02038-PJH                - 11 -

1   conclusions on the contested issues of fact and law which underlie the merits of the
    dispute, for it is the very uncertainty of outcome in litigation and avoidance of
2   wasteful and expensive litigation that induce consensual settlements.  The proposed
    settlement is not to be judged against a hypothetical or speculative measure of what
3   ***might*** have been achieved by the negotiators.

4   *Officers for Justice*, 688 F.2d at 625 (emphasis in original).

5          The district court must exercise "sound discretion" in approving a settlement.  *Ellis v. Naval*

6   *Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi*,

7   8 F.3d at 1375.  Therefore, in exercising its discretion, "the court's intrusion upon what is otherwise

8   a private consensual agreement negotiated between the parties to a lawsuit must be limited to the

9   extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

10  overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

11  whole, is fair, reasonable and adequate to all concerned."  *Officers for Justice*, 688 F.2d at 625.

12  **IV.    THE SETTLEMENT IS AN OUTSTANDING RESULT FOR GOOGLE
            AND SHOULD BE APPROVED**
13
            **A.     The Settlement Confers a Substantial Benefit upon Google**
14
15         As a result of settlement negotiations among counsel for the Plaintiffs and Google, acting by

16  and through the Independent Directors, with the assistance of Judge Phillips, the Settling Parties

17  have agreed to a resolution that provides substantial benefits to Google.  The Settlement is

18  comprised of several elements, each of which provides a substantial benefit to Google, on whose

19  behalf the Actions were brought.

20         First, upon final approval of the Settlement, Google shall implement the USI, which is

21  designed to prevent harmful advertising from rogue internet pharmacies and will enhance Google's

22  monitoring of and response to legal and compliance issues and shareholder concerns relating to

23  rogue online pharmacies who potentially pose a threat to users of Google's services.  Stipulation,

24  ¶2.2.

25         Second, and just as significant, the Settlement provides that Google will also implement and

26  maintain for at least five years corporate governance and internal control measures that the parties

27  believe will increase the value of Google.  *Id.*, ¶¶2.3, 2.4, 2.6.  These corporate governance measures

28  are substantial procedural reforms relating to the monitoring of and response to legal and compliance

NOTICE OF MOT AND MOT FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND
MEMORANDUM IN SUPPORT THEREOF - CV-11-04248-PJH AND CV 13-02038-PJH        - 12

1   issues and shareholder concerns relating to rogue online pharmacies which potentially pose a threat

2   to users of Google's services and will prevent the recurrence of the type of conduct alleged in the

3   Actions.  *Id.*

4          In connection with the settlement of the Actions, $250 million in funding will be provided for

5   the USI and other measures designed to frustrate rogue online pharmacies and enhance Google's

6   monitoring of and response to legal and compliance issues and shareholder concerns relating to

7   rogue online pharmacies who potentially pose a threat to users of Google services.  *Id.*, ¶2.5.

8          Therefore, Plaintiffs not only resolved the rogue internet pharmacy advertising and sales

9   issues at Google, but also obtained significant reforms which leave Google with stronger internal

10  controls designed to police rogue internet pharmacies and the dangers they present to Google and its

11  users.

12         Corporate governance reforms that "serve to prevent and protect [the company] from the

13  reoccurrence of" alleged wrongdoing that resulted in material harm to the corporation confer a

14  substantial benefit on the corporation and its shareholders that warrants settlement approval.  *Unite*

15  *Nat'l Ret. Fund v. Watts*, No. 04-cv-3603 (DMC), 2005 U.S. Dist. LEXIS 26246, at *18 (D.N.J.

16  Oct. 28, 2005).  As Judge Armstrong noted in the *NVIDIA* derivative litigation, "[a]s corporate

17  debacles such as Enron, Tyco and WorldCom demonstrate, strong corporate governance is

18  fundamental to the economic well-being and success of a corporation" and "'[c]ourts have

19  recognized that corporate governance reforms such as those achieved here provide valuable benefits

20  to public companies.'"  *In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA (JCS), slip op.

21  at 4 (N.D. Cal. Dec. 22, 2008) (citation omitted) (Stewart Decl., Ex. 2); *see also City of Westland*

22  *Police & Fire Ret. Sys. v. Stumpf*, No. 3:11-cv-02369-SI, slip op. (N.D. Cal. July 25, 2014)

23  (J. Illston) (approving attorneys' fee provision separately negotiated by independent directors)

24  (Stewart Decl., Ex. 3).

25         The USI and other measures obtained through the Actions are substantial and will provide

26  ongoing benefits to the Company for years after the Settlement is approved.  In sum, the Settlement

27  confers substantial benefits upon Google and is an outstanding resolution for Google of a case of

28  substantial complexity and costs.  Peterson Decl., Ex. B; Joint Decl., ¶8.

989945_1

NOTICE OF MOT AND MOT FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND
MEMORANDUM IN SUPPORT THEREOF - CV-11-04248-PJH AND CV 13-02038-PJH          - 13 -

1     **B.      The Risks of Establishing Liability**

2          In assessing the fairness, reasonableness, and adequacy of a settlement, the court should

3     balance the benefits of the settlement against the continuing risks of litigation. *Girsh v. Jepson*, 521

4     F.2d 153, 157 (3d Cir. 1975); *Officers for Justice*, 688 F.2d at 625.  There is no question that

5     derivative actions are complex and fraught with risk.  Indeed, the Ninth Circuit, in affirming the

6     district court's approval of a settlement in a derivative action, noted that "the odds of winning [a]

7     derivative lawsuit [are] extremely small" because "derivative lawsuits are rarely successful." *In re*

8     *Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  This case was no different.  As Judge

9     Phillips noted, "[t]he Settling Parties took on a risky and complicated case regarding myriad

10    complex issues and achieved an outstanding result for this Company."  Phillips Decl., ¶6.

11         Plaintiffs believe that the claims asserted in the Actions were meritorious, but liability was by

12    no means assured.  As the Court is aware, the parties conducted several rounds of briefing on

13    motions to dismiss the Actions as well as a summary judgment motion in the Demand Refused

14    Action.  The Court twice granted the Demand Futility Defendants' motions to dismiss the Demand

15    Futility Action and their most recent motion to dismiss that action was pending.  Similarly, the

16    Demand Refused Action was facing Demand Refused Defendants' pending summary judgment

17    motion.  While Plaintiffs believe the Actions would successfully overcome the pending motions, it

18    was only through Plaintiffs' vigorous prosecution of their derivative claims that Google will realize

19    the substantial benefits achieved through the Settlement.  Additionally, with continued litigation,

20    there was a risk that Plaintiffs would not have been successful in responding to Google's and/or the

21    Individual Defendants' pre-trial motions designed to eliminate or curtail the derivative claims.  Joint

22    Decl., §IV.B.

23         Even if Plaintiffs successfully overcame Individual Defendants' dispositive motions,

24    continued litigation would be extremely complex, costly, and of substantial duration.  Document

25    discovery would need to be completed, depositions would need to be taken, experts would need to be

26    designated, and expert discovery conducted.  Individual Defendants' expected motions for summary

27    judgment at the end of discovery would have to be briefed and argued and a trial would have to be

28    held.  Indeed, significant risks remained in getting past Individual Defendants' motions for summary

1   judgment (pending in the Demand Refused Action and anticipated in the Demand Futility Action)

2   and obtaining a favorable judgment after trial.  *Id.*

3          Further, to prevail at trial, Plaintiffs would have to overcome the Individual Defendants'

4   arguments that the protections afforded the Individual Defendants under the so-called "business

5   judgment rule" applied.  Undoubtedly, the Individual Defendants would have sought the application

6   of the business judgment rule's protections with respect to many of the acts challenged by Plaintiffs.

7   *See Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984).  Although referred to as a "rule," the idea of

8   "business judgment protection" for directors is more akin to a broad doctrine or concept, and it is

9   perhaps, the fundamental precept of corporate law.  *See generally In re Walt Disney Co. Derivative*

10  *Litig.*, 907 A.2d 693 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006).  While the business judgment

11  rule (and the protections it affords directors) has been articulated in slightly varied ways (and has

12  taken varied forms), it essentially stands for the proposition that there is a strong presumption that, in

13  making a disinterested business decision, the directors of a corporation acted on an informed basis,

14  in good faith, and with the honest belief that the action taken was in the best interests of the

15  corporation.  *Id.* at 746-47.

16         Moreover, had the Demand Futility Plaintiffs been able to overcome demand futility, Google

17  would almost certainly bring a motion to terminate the case, based on the resolution of the Google

18  Board.  Google would then argue that, under Delaware law, the sole issue to decide is one of

19  process, *i.e.*, in deciding to dismiss claims against Google officials, did the directors "act[] in an

20  informed manner and with due care, and in a good faith belief that their [motion] was in the best

21  interest of the corporation."  *Copeland v. Lane*, No. 5:11-cv-01508 EJD, 2012 U.S. Dist. LEXIS

22  146815, at *14 (N.D. Cal. Oct. 10, 2012); *Scattered Corp. v. Chicago Stock Exch.*, 701 A.2d 70, 75-

23  77 (Del. 1997).  Google would also claim that, under Delaware law, the Google Board's decision to

24  terminate the litigation was presumptively valid under the business judgment rule.  *Brazen v. Bell*

25  *Atl. Corp.*, 695 A.2d 43, 49 (Del. 1997).

26         Plaintiffs believe that they have strong arguments to overcome the protections afforded by

27  the business judgment rule with respect to the acts challenged in the Actions, but the prospect that

28

989945_1

NOTICE OF MOT AND MOT FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND
MEMORANDUM IN SUPPORT THEREOF - CV-11-04248-PJH AND CV 13-02038-PJH

- 15 -

1  the Individual Defendants could have been shielded by these protective umbrellas made establishing

2  liability in the Actions uncertain.  Joint Decl., ¶53.

3       Although Demand Refused Plaintiff had been able to overcome a motion to dismiss,  Google

4  and the Demand Refused Defendants promptly moved for summary judgment based upon the

5  Special Committee Report (the "Report"), which had not been part of the record in deciding the

6  motion to dismiss.  The Demand Refused Defendants argued that the Demand Refused Plaintiff

7  could not establish a reasonable doubt that demand had been wrongfully refused once the Report and

8  its findings were taken into account.  Demand Refused Plaintiff argued that having surmounted the

9  hurdle of an initial Rule 23.1 motion, it no longer had to establish a reasonable doubt that demand

10 had been wrongfully refused.  Rather, under Delaware law, the inquiry became whether the Demand

11 Refused Defendants had, in fact, breached the fiduciary duties they owed to Google.   Demand

12 Refused Plaintiff also argued that even on the expanded record, there was reason to doubt the good

13 faith nature and completeness of the Report and its conclusions; or, in the alternative, for additional

14 discovery to establish those facts as allowed by Fed. R. Civ. P. 56(d).

15       The Court took the Motion for Summary Judgment and Demand Refused Plaintiff's cross-

16 motion for additional discovery under submission after oral argument.  An adverse result could have

17 resulted in dismissal of Demand Refused Plaintiff's claims.  However, even if the Court had adopted

18 Demand Refused Plaintiff's positions, it would have had to prove that the Demand Refused

19 Defendants breached their fiduciary duties, rather than simply establishing infirmities in the manner

20 in which the Special Committee had investigated the underlying claims, in order to prevail on its

21 claims.  The Demand Refused Defendants would vigorously contest the merits of these claims, and it

22 is possible that Demand Refused Plaintiff would not be able to meet its high burden of proof.

23       Based upon the record and applicable law, it is clear that there were serious risks in

24 overcoming potential defenses and in establishing liability.  Thus, as opposed to the risk of no

25 recovery at all for the Company, the Settlement guarantees an outstanding result with the creation of

26 the USI and the implementation of valuable corporate governance enhancements that could not have

27 been obtained if the Actions proceeded to trial.  Accordingly, the Settlement is likely the best

28 possible result and provides a substantial benefit to the Company that could not be achieved at trial.

C.    **The Settlement Was Negotiated by the Parties with a Thorough Understanding of the Strengths and Weaknesses of the Parties' Respective Positions**

The stage of the proceedings and the amount of discovery completed is another factor which courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *Officers for Justice*, 688 F.2d at 625; *Girsh*, 521 F.2d at 157; *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979).  Despite being over three years since the first action was commenced, the Settlement comes at a relatively early stage in the proceedings, thus avoiding the potential for the expense of protracted discovery and trial preparation, the cost of time and attention diverted from the day-to-day business operations of the Company, and of course the burden to the Court of protracted and complex litigation.  Ninth Circuit law is quite clear that "'"formal discovery is not a necessary ticket to the bargaining table" where the parties have sufficient information to make an informed decision about settlement.'"  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (citations omitted).  Nevertheless, both the knowledge of Plaintiffs' Counsel and the proceedings themselves have reached a stage where an intelligent evaluation of the Actions and the propriety of settlement can be made.

Before the filing of the first complaint and continuing thereafter, Plaintiffs' Counsel conducted an investigation of the allegations asserted in the Actions.  Plaintiffs' Counsel consulted with experts having specialized knowledge in the areas of corporate governance; reviewed and analyzed various documents, including DOJ documents regarding its NPA with Google, financial reports, press releases, and SEC filings concerning Google's advertising practices; and reviewed and analyzed documents regarding Google's hosting of the rogue pharmacy advertisements that were produced by defendants during the proceedings.  In addition, "[t]he mediation process involved extensive analysis of the parties' positions including the merits of plaintiffs' breach of fiduciary duty claims, the individual defendants' and Google's potential defenses, and the internal investigation conducted by Google's Board of Directors."  Phillips Decl., ¶4; Joint Decl., ¶5.

Here, Plaintiffs' Counsel's investigation, which included the review of internal Google documents, the arm's-length settlement discussions, and counsel's past experience in litigating complex derivative actions, provided Plaintiffs with a clear picture of the strengths and weaknesses

1   of the Actions, but also of the sufficiency of the legal and factual defenses that the Individual

2   Defendants would raise if litigation were to continue.  Having enough information to properly

3   evaluate the claims and defenses to be asserted, Plaintiffs have managed to resolve the Actions on a

4   highly favorable basis to the Company and its shareholders without the substantial expense, risk,

5   delay, and uncertainty of continued litigation.  Thus, the Settling Parties reached an agreement to

6   settle the Actions at a point when they had an adequate understanding of the legal and factual issues

7   surrounding the case.  *Mego Fin.*, 213 F.3d at 459.

8           **D.      The Complexity, Expense, and Duration of Continued Litigation**

9           Another factor militating in favor of the Settlement is the complexity, expense, and likely

10  duration of the litigation.  *Officers for Justice*, 688 F.2d at 625; *Cohn*, 375 F. Supp. 2d at 859.

11  Shareholder derivative actions are notoriously complicated actions that involve convoluted legal and

12  factual issues that can be litigated to a conclusion on the merits only at great expense over an

13  extended period of time.  *Pac. Enters.*, 47 F.3d at 378 ("[T]he odds of winning the derivative lawsuit

14  were extremely small.  California's statute of limitations for breach of fiduciary duty and the Special

15  Litigation Committee's recommendation not to pursue the derivative lawsuit may have adversely

16  terminated the litigation before trial.  Even if it had gone to trial, derivative lawsuits are rarely

17  successful.").  The Actions would not have been an exception to this rule.

18          If not for this Settlement, the Actions would have continued to be fiercely contested by the

19  parties.  The alleged wrongdoing took place beginning in 2003.  The scope of discovery and relevant

20  witnesses with contemporaneous knowledge of the facts would have proved difficult.  Continued

21  litigation would be complex, costly, and of substantial duration.  Although Plaintiffs obtained

22  information during the early stages of the litigation, additional formal document discovery would

23  need to be commenced and completed, depositions would have to be taken, experts would need to be

24  designated and expert discovery conducted, Individual Defendants' expected motions for summary

25  judgment would have to be briefed and argued, and a trial could occupy attorneys on both sides and

26  the Court for weeks.  Moreover, any judgment favorable to Plaintiffs would likely be the subject of

27  post-trial motions and appeal, which would prolong the case for years with the ultimate outcome

28  uncertain.

1    The Settlement provides immediate and substantial benefits to Google and avoids years of

2    delay, added expense, and uncertainty.  A prolonged period of pretrial proceedings and a lengthy and

3    uncertain trial would not serve the interest of the Company and its shareholders in light of the

4    substantial benefits provided by the Settlement.  Thus, the prospect of continued protracted

5    expensive and uncertain litigation strongly supports approval of the Settlement.

6    **E.    The Experience and Views of Counsel Favor Approval**

7    Significant weight should be attributed to the belief of experienced counsel that settlement is

8    in the best interest of those affected by the settlement – here, Google.  *Officers for Justice*, 688 F.2d

9    at 625.  Plaintiffs and Google, acting by and through the Independent Directors, and the counsel for

10   each, have independently considered the Settlement and all agree that it is in the best interest of

11   Google and its shareholders.  Stipulation, ¶2.1; Peterson Decl., Ex. B.

12   With respect to the well-informed, arms-length negotiations, Plaintiffs' Counsel have been at

13   the forefront of prosecuting claims on behalf of injured corporations against wayward corporate

14   fiduciaries.  Joint Decl., ¶61.  As a result of counsel's experience in these types of cases, counsel for

15   Plaintiffs have a unique insight into the legal and factual issues presented.  Counsel used that

16   expertise and experience to effectively and efficiently prosecute the Actions and reach an

17   outstanding result for Google and its shareholders.  *Id.*

18   **V.    THE NEGOTIATED AMOUNT OF ATTORNEYS' FEES AND EXPENSES**
     **SHOULD BE APPROVED**

19

20   Plaintiffs' Counsel's efforts in prosecuting the Actions on behalf of the Company and

     negotiating the Settlement have conferred a substantial benefit upon Google.  In recognition of these

21   substantial benefits, Google, acting by and through the Independent Directors, has agreed to pay $9.9

22   million in cash for Plaintiffs' Counsel's attorneys' fees and expenses.  Stipulation, ¶5.1.

23   Plaintiffs' Counsel and Google agreed to such an amount only after the principal terms of the

24   Settlement were agreed upon.  As detailed in the Phillips Declaration, "[a]fter the parties reached

25   agreement on the terms of the settlement, counsel for plaintiffs and counsel for Google negotiated

26   attorneys' fee and expenses.  I served as the mediator for these negotiations as well.   After much

27   negotiation at arm's-length among the parties and with my assistance, I ultimately recommended an

28

1   amount of attorneys' fee[s] and expenses to be paid to plaintiffs' counsel in the Actions and the

2   parties separately accepted my recommendation."  Phillips Decl., ¶7.

3         The United States Supreme Court has endorsed this type of consensual resolution of

4   attorneys' fees issues as the ideal toward which litigants should strive.  *Hensley v. Eckerhart*, 461

5   U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation.

6   Ideally, of course, litigants will settle the amount of a fee.").  Applying these principles to derivative

7   settlements, courts within the Northern District of California (and elsewhere) have approved

8   separately negotiated attorneys' fees provisions and deferred to corporate directors' business

9   judgment as to the amount of attorneys' fees to be paid to plaintiffs' counsel based upon the

10  substantial benefits conferred upon the corporation.  *See, e.g.*,  *City of Westland*, slip op., ¶¶5, 9

11  (approving attorneys' fee provision separately negotiated by independent directors); *In re KLA-*

12  *Tencor Corp. S'holder Derivative Litig.*, No. C-06-03445-JW, slip op., ¶¶5, 10 (N.D. Cal. May 26,

13  2010) (same); *In re Extreme Networks, Inc. S'holder Derivative Litig.*, No. C-07-02268-RMW, slip

14  op., ¶¶5, 9 (N.D. Cal. July 15, 2011) (same); *In re F5 Networks, Inc. Derivative Litig.*, No. C06-794-

15  RSL, slip op., ¶¶5, 8 (W.D. Wash. Jan. 6, 2011) (same); *In re McAfee, Inc. Derivative Litig.*, No.

16  5:06-cv-03484-JF, slip op., ¶¶5, 8 (N.D. Cal. Feb. 2, 2009) (same); *In re KB Home S'holder*

17  *Derivative Litig.*, No. 2-06-cv-05148-FMC-CTx, slip op., ¶¶5, 8 (C.D. Cal. Feb. 9, 2009) (same).

18  Stewart Decl., Exs. 3-8.

19        Moreover, under the "substantial benefit" doctrine, counsel who prosecute a shareholders'

20  derivative case which confers benefits on the corporation are entitled to an award of attorneys' fees

21  and costs.  In *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970), the United States Supreme Court

22  stated that "an increasing number of lower courts have acknowledged that a corporation may receive

23  a 'substantial benefit' from a [stockholders' action], justifying an award of counsel fees, regardless

24  of whether the benefit is pecuniary in nature," and that "regardless of the relief granted, private

25  stockholders' actions of this sort 'involve corporate therapeutics,' and furnish a benefit to all

26  shareholders by providing an important means of enforcement of the proxy statute."  *Id*. at 395-96

27  (citations omitted); *Unite Nat'l*, 2005 U.S. Dist. LEXIS 26246, at *18 (awarding $9.2 million based

28  on "the great benefit conferred upon [the company] as a result of the new corporate governance

NOTICE OF MOT AND MOT FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND
MEMORANDUM IN SUPPORT THEREOF - CV-11-04248-PJH AND CV 13-02038-PJH                - 20 -

1  principles provided for in the settlement agreement"); *F5 Networks*, slip op., ¶¶5-7 (same) (Stewart

2  Decl., Ex. 6).

3          There is no question that the proposed Settlement and the $250 million in funding for the

4  safety initiative and other measures is the direct  result of Plaintiffs' Counsel's vigorous efforts and

5  provides substantial benefits to Google.  Stipulation ¶¶2.1, 2.2-2.5.  Plaintiffs' Counsel also achieved

6  important governance reforms designed to enhance the Google Board's responsiveness in addressing

7  the risks and costs associated with the issues that gave rise to the derivative claims.  *Id*., ¶¶2.3, 2.6;

8  *see also Maher v. Zapata Corp.*, 714 F.2d 436, 461 (5th Cir. 1983) ("effects of the suit on the

9  functioning of the corporation may have a substantially greater economic impact on it, both long-

10  and short-term, than the dollar amount of any likely judgment").

11          Accordingly, the attorneys' fee provision separately negotiated by the Independent Directors,

12  with the aid of counsel, should also be approved as well.[5]

13  **VI.      CONCLUSION**

14          Plaintiffs respectfully submit that the Settlement represents an outstanding result for Google

15  and should be approved in its entirety.

16  DATED:  December 9, 2014                    Respectfully submitted,

17                                              ROBBINS GELLER RUDMAN
                                                  & DOWD LLP
18                                              BENNY C. GOODMAN III
                                                ERIK W. LUEDEKE
19

20                                                      s/ Benny C. Goodman III
21                                                    BENNY C. GOODMAN III

22                                              655 West Broadway, Suite 1900
                                                San Diego, CA  92101-3301
23                                              Telephone:  619/231-1058
                                                619/231-7423 (fax)
24

25  [5]     Over the course of three years of litigation, Plaintiffs' Counsel expended 5,128 hours prosecuting
    the derivative claims from inception to settlement.  In prosecuting Google's derivative claims to
26  fruition, Plaintiffs' Counsel incurred time and expenses of $3,125,764.50 and $168,505.18,
    respectively.  *See* RGRD Decl.; Pomerantz Decl.; Arroyo Decl.; and Abraham Decl.  Although these
27  metrics were not a part of the attorneys' fees negotiations, they nevertheless confirm the vigor with
    which Plaintiffs' Counsel approached this task.  Once engaged, Plaintiffs' Counsel never wavered in
28  their duty to vindicate Google's interests, despite the risks present here.

989945_1

NOTICE OF MOT AND MOT FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND
MEMORANDUM IN SUPPORT THEREOF - CV-11-04248-PJH AND CV 13-02038-PJH                    - 21 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)

POMERANTZ LLP
MARC I. GROSS
JEREMY A. LIEBERMAN
600 Third Avenue
New York, NY  10016
Telephone:  212/661-1100
212/661-8665 (fax)

ROBBINS ARROYO LLP
BRIAN J. ROBBINS
FELIPE J. ARROYO
SHANE P. SANDERS
GINA STASSI
600 B Street, Suite 1900
San Diego, CA  92101
Telephone:  619/525-3990
619/525-3991 (fax)

LAW OFFICE OF ALFRED G.
  YATES, JR., P.C.
GERALD L. RUTLEDGE
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA  15219
Telephone:  412/391-5164
412/471-1033 (fax)

Counsel for Plaintiffs Patricia H. McKenna,
Avrohom Gallis and James Clem


 ABRAHAM FRUCHTER,
  & TWERSKY, LLP
 IAN D. BERG
 TAKEO A. KELLAR


            s/ Ian D. Berg
            IAN D. BERG

NOTICE OF MOT AND MOT FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND
MEMORANDUM IN SUPPORT THEREOF - CV-11-04248-PJH AND CV 13-02038-PJH          - 22 -

1                                        12526 High Bluff Drive, Suite 300

2                                        San Diego, California 92130
Tel: (858) 792-3448

3                                        Fax: (858) 792-3449

4                                        JEFFREY S. ABRAHAM
MITCHELL M.Z. TWERSKY

5                                        ATARA HIRSCH
PHILIP T. TAYLOR

6                                        One Penn Plaza, Suite 2805
New York, NY 10119

7                                        Telephone: 212/279-5050
212/279-3655 (fax)

8

9                                        Counsel for Plaintiff City of Orlando Police
Pension Fund

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I, Benny C. Goodman III, am the ECF user whose identification and password are being used to file the Notice of Motion and Motion for Final Approval of Derivative Settlement and Memorandum of Points and Authorities in Support Thereof.  In compliance with Local Rule 5-1(i)(3), I hereby attest that Ian D. Berg has concurred in this filing.

DATED:  December 9, 2014

s/ Benny C. Goodman III
<hr>
BENNY C. GOODMAN III

989945_1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 9, 2014, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 9, 2014.

                          s/ Benny C. Goodman III
                          BENNY C. GOODMAN III

ROBBINS GELLER RUDMAN
       & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:BennyG@rgrdlaw.com

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT
AND MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - CV-11-04248-PJH       - 1 -

# Mailing Information for a Case 4:11-cv-04248-PJH In re Google Inc. Shareholder Derivative Litigation

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jeffrey S. Abraham**
  jabraham@aftlaw.com

- **Felipe Javier Arroyo**
  farroyo@robbinsarroyo.com,notice@robbinsarroyo.com

- **Ian David Berg**
  iberg@aftlaw.com,tkellar@aftlaw.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Marshall Pierce Dees**
  mdees@holzerlaw.com

- **Travis E. Downs , III**
  travisd@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Boris Feldman**
  bbahns@wsgr.com

- **Michael I. Fistel , Jr**
  michaelf@johnsonandweaver.com

- **Benny Copeline Goodman , III**
  bennyg@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Marc Ian Gross**
  migross@pomlaw.com

- **Kathleen Ann Herkenhoff**
  kah@weiserlawfirm.com,jmf@weiserlawfirm.com,hl@weiserlawfirm.com

- **Darren T. Kaplan**
  dkaplan@chitwoodlaw.com

- **Peter John Koenig**
  peter@whk-law.com,serena@whk-law.com,beau@whk-law.com

- **Nicole Catherine Lavallee**
  nlavallee@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **Jeremy A Lieberman**
  jalieberman@pomlaw.com,lpvega@pomlaw.com

- **Erik William Luedeke**
  eluedeke@rgrdlaw.com

- **Elizabeth Catherine Peterson**
  epeterson@wsgr.com,vshreve@wsgr.com,sstrain@wsgr.com,bbahns@wsgr.com,dgavril@wsgr.com,dwalters@wsgr.com

- **Anthony David Phillips**
  aphillips@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **Brian J. Robbins**
  notice@robbinsarroyo.com

- **Darren Jay Robbins**
  e_file_sd@rgrdlaw.com

- **Shane Palmesano Sanders**
  ssanders@robbinsarroyo.com,notice@robbinsarroyo.com

- **Bryson Scott Santaguida**
  bsantaguida@wsgr.com

- **Gideon A. Schor**
  gschor@wsgr.com,ageritano@wsgr.com

- **Gina Stassi**
  gstassi@robbinsarroyo.com,notice@robbinsarroyo.com

- **Joseph J. Tabacco , Jr**
  jtabacco@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **Philip Taylor**
  PTaylor@aftlaw.com

- **Mitchell M.Z. Twersky**
  mtwersky@aftlaw.com

- **Diane Marie Walters**
  dwalters@wsgr.com,vshreve@wsgr.com

- **Tamar A Weinrib**
  taweinrib@pomlaw.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Marc              L Gross
Pomerantz Haudek Block Grossman & Gross LLP
100 Park Avenue
26th Floor
New York, NY 10017

R.                James Hogdson
Pomerantz Haudek Block Grossman & Gross LLP
100 Park Avenue
16th Floor
New York, NY 10017

Takeo             A. Kellar
Abraham Fruchter & Twersky, LLP
12526 High Bluff Drive,
Suite 300
San Diego, CA 92130

Fei-Lu            Qian
Pomerantz Haudek Grossman & Gross LLP
100 Park Avenue
16th Floor
New York, NY 10017
```